## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PRIMESOURCE BUILDING PRODUCTS, INC. )<br><br>Plaintiff, )<br><br>v. )<br><br>THE UNITED STATES, DONALD J. TRUMP, IN HIS )<br>OFFICIAL CAPACITY AS PRESIDENT OF THE )<br>UNITED STATES; WILBUR L. ROSS, JR., IN HIS )<br>OFFICIAL CAPACITY AS UNITED STATES )<br>SECRETARY OF COMMERCE;  UNITED STATES )<br>DEPARTMENT OF COMMERCE; MARK A. )<br>MORGAN, IN HIS OFFICIAL CAPACITY AS ACTING )<br>COMMISSIONER, UNITED STATES CUSTOMS AND )<br>BORDER PROTECTION; UNITED STATES )<br>CUSTOMS AND BORDER PROTECTION, )<br><br>Defendants. ) | Ct. No. 20-00032 |

### COMPLAINT

Plaintiff PrimeSource Building Products, Inc. ("PrimeSource"), by and through its counsel alleges as follows:

### I.    SUMMARY

1.    The procedural predicates to the President imposing tariffs under Section 232 of the Trade Expansion Act of 1962 ("Section 232") are unequivocal.  The President must first receive a report from the Secretary of the U.S. Department of Commerce (the "Secretary" or "Commerce") determining whether the article under investigation is being imported into the United States "in such quantities or under such circumstances as to threaten to impair the national security."  19 U.S.C. § 1862(b)(3)(A) (2018).

2.    The President must then, within 90 days of receipt of Commerce's report, "determine the nature and duration of the action that, in the judgment of the President, must be

taken to adjust the imports of the {subject} article <u>and its derivatives</u> so that such imports will not

threaten to impair the national security." <u>Id.</u> § 1862(c)(1)(A)(ii) (emphasis supplied).

3.      If the President concurs with Commerce's report and determines to take action, the

President is statutorily required to implement such action within 15 days of his decision.  See <u>id.</u>

§ 1862(c)(1)(B).   These deadlines are clearly stated, unambiguous, and unequivocal.   <u>See</u>

<u>Transpacific Steel LLC v. United States</u>, No. 19-00009, 2019 Ct. Intl. Trade LEXIS 142, at *9 (Ct.

Int'l Trade Nov. 15, 2019) ("The statute's clear and unambiguous steps—of investigation,

consultation, report, consideration, and action—require timely action from the Secretary of

Commerce and the President.").

4.      Proclamation No. 9980, titled <u>Adjusting Imports of Derivative Aluminum Articles</u>

<u>and Derivative Steel Articles Into the United States</u>, 85 Fed. Reg. 5,281 (Jan 29, 2020) (attached

as Ex. 1), is unlawful and unconstitutional for the following four reasons:

　　　　　a.  First, the imposition of duties in Proclamation 9980 is procedurally deficient under

　　　　　　　the plain terms of the statute and regulations because Commerce did not provide

　　　　　　　reasonable notice to PrimeSource nor hold public hearings whereby PrimeSource

　　　　　　　could present information and advice relevant to the investigation, as Commerce

　　　　　　　had in the investigation it conducted in 2017 related to steel and aluminum articles

　　　　　　　upon which Proclamation 9980 bases its statutory authority.   Commerce's

　　　　　　　regulations set forth the detailed procedures it must follow in the context of an

　　　　　　　investigation under Section 232.   <u>See</u> 15 C.F.R. pt. 705 (2019).   Commerce

　　　　　　　followed none of them in providing its "assessment" to the President that the

　　　　　　　HTSUS should be modified to subject derivative steel articles to an additional 25

　　　　　　　percent duty.   Commerce violated the rulemaking provisions of the Administrative

Procedures Act and its imposition of additional duties without a properly developed record is arbitrary and capricious.

b.  Second, as of the date of this complaint, it has been 754 days since the President received Commerce's report, 664 days since the 90-day window closed for the President to determine what action must be taken, and 649 days since the 15-day window to implement such action expired.  Nevertheless, on January 24, 2020, the President announced the imposition of tariffs of 25 percent and 10 percent on imports of steel- and aluminum-derivative products, respectively, 638 days after the period to adjust imports lapsed.  In light of the clear untimeliness of the President's action, the imposition of duties pursuant to Proclamation 9980, scheduled to become effective on February 8, 2020, violates the statutory procedural requirements that Congress duly enacted under Section 232 of the Trade Expansion Act of 1962.

c.  Third, the imposition of duties in Proclamation 9980 is both procedurally deficient under the plain terms of the statute and unconstitutional because Commerce did not provide reasonable notice to PrimeSource nor hold public hearings whereby PrimeSource could present information and advice relevant to the investigation.  In the 2017 investigation of steel and aluminum imports, Commerce decided that public input was appropriate and provided notice to interested parties regarding the potential imposition of duties, prescribed a procedure for interested parties to comment on whether steel and aluminum impact national security, and held public hearings.  By contrast, the President issued Proclamation 9980 without any notice to affected importers and failed to provide any administrative process for interested

parties to comment on the impact of such duties.  By failing to provide for its participation prior to imposing tariffs, PrimeSource was deprived of its Fifth Amendment due process rights.

d. In addition, Section 232 is unconstitutional because it represents an unlawful delegation of legislative authority from Congress to the President.  In particular, Congress improperly transferred its Constitutional authority "{t}o lay and collect {t}axes, {d}uties, {i}mposts and {e}xcises," U.S. CONST. art. 1, § 8, cl. 1., to the President without setting forth an intelligible limiting principle as required by J.W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 409 (1928).  Such an improper delegation of power violates the U.S. Constitution and separation of powers doctrine, which mandate that Congress, not the Executive, makes law.

## II.     JURISDICTION

5.      This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1581(i)(2), (4) and the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702, 704, 706 and 28 U.S.C. § 2631(i).

6.      28 U.S.C. § 1581 provides that "the U.S. Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandize for reasons other than the raising of revenue," 28 U.S.C. § 1581(i)(2), and "administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section." Id. § 1581(i)(4).

7.      The Commerce Department is a federal agency and in his official capacity, Secretary Wilbur Ross provided "assessments" to the President leading to the President's

imposition of duties on imports of derivative steel products in Proclamation 9980. This Court has jurisdiction over laws "providing for …tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." This action thus arises out of a law described in 28 U.S.C. § 1581(i)(2).

8.      U.S. Customs and Border Protection is a federal agency, and in his official capacity, Acting Commissioner Mark A. Morgan will enforce Proclamation 9980 by requiring additional import duties to be paid by importers for covered goods entering the United States on or after February 8, 2020. The Court has jurisdiction over U.S. Customs and Border Protection's implementation of duties under because implementation of duties under Section 232 constitutes "administration and enforcement" under 28 U.S.C. § 1581(i)(4).

9.      The Secretary of Commerce failed to follow its regulations in providing the "assessments" to the President, referenced in Proclamation 9980. The "assessments" recommended changes to the HTSUS to impose a 25 percent duty on derivative steel products. Changes to the HSTUS constituted a rulemaking outside the bounds of the regulations. The Court reviews such regulatory violations pursuant to the APA. The APA provides for broad judicial review of agency actions brought by "person{s} suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of the relevant statute." 5 U.S.C. § 702.

10.     Section 232 of the Trade Expansion Act of 1962 is a law, "providing for tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," as well as for "administration and enforcement with respect to" such tariffs, duties and fees. Therefore, this matter involves the administration and enforcement of matters referred to in, inter alia, 28 U.S.C. § 1581(i)(2), (4).

11.     On January 24, 2020, the President abruptly announced the imposition of new tariffs on imports of steel- and aluminum- derivative products, effective February 8, 2020. However, the statutory deadline for the President to determine what action to take as a result of Commerce's report was April 19, 2018, 90 days after receipt of Commerce's report.  Because "the President has violated an explicit statutory mandate" prescribed under 19 U.S.C. § 1862, this Court has jurisdiction to hear PrimeSource's challenge as established by case law of the Federal Circuit. See Silfab Solar, Inc. v. United States, 892 F.3d 1340, 1346 (Fed. Cir. 2018) (citing Motion Sys. Corp. v. Bush, 437 F.3d 1356, 1361 (Fed. Cir. 2006) (en banc)).

12.     This Court has jurisdiction to hear constitutional challenges to laws affecting imports and has recognized such jurisdiction under 28 U.S.C. § 1581(i)(2) and (i)(4) in other challenges to Presidential and agency actions under Section 232 of the Trade Expansion Act of 1962.  See, e.g., Am. Inst. for Int'l Steel, Inc. v. United States, __ CIT __, 376 F. Supp. 3d 1335 (2019).

13.     Proclamation 9980 does not constitute a determination reviewable under this Court's jurisdiction established at 28 U.S.C. § 1581(a)–(h).  Accordingly, the Court has subject matter jurisdiction of this action under 28 U.S.C. § 1581(i) and may order the relief requested pursuant to 28 U.S.C. § 2643.

### III.     PARTIES

14.     Plaintiff PrimeSource is a corporation organized under the laws of the State of Delaware, with its principal place of business in 1321 Greenway Drive, Irving, TX 75038-2504. PrimeSource is one of the largest purveyors of fasteners in the world, and imports and distributes various steel-derivative products affected by Proclamation 9980, including, for example, its exclusive Grip-Rite® steel nails sold nationwide.

15.     The Defendant United States of America is the federal government to which Section 232 tariff increases are paid and is the statutory defendant under 28 U.S.C. § 1581(i)(2), (4).

16.     Defendant Donald J. Trump is the President of the United States.  He issued Proclamation 9980 that is the subject of this Complaint.  He is sued in his official capacity only.

17.     Defendant U.S. Department of Commerce is the agency responsible for initiating and conducting investigations under Section 232 and for providing findings and recommendations to the President of the United States.

18.     Defendant Wilbur L. Ross, Jr. is the Secretary of Commerce.  He is sued in his official capacity only.

19.     Defendant U.S. Customs and Border Protection is the agency that administers and enforces tariffs imposed under Section 232, including the 25 percent tariffs ordered to be imposed on derivative steel products under Proclamation 9980.

20.     Defendant Mark A. Morgan is the Acting Commissioner of U.S. Customs and Border Protection.  He is sued in his official capacity only.

## IV.     STANDING

21.     Plaintiff brings this action challenging the President's unlawful imposition of tariffs under 19 U.S.C. § 1862, the Section 232 statute, based on violations of the APA, violations of Plaintiff's due process rights under the U.S. Constitution, violations of the Section 232 statute, and, in the alternative, a facial challenge to 19 U.S.C. § 1862 as an unconstitutional over-delegation of legislative power to the President.

22.     Plaintiff has statutory standing to bring this action under 28 U.S.C. § 2631(i), which provides "{a}ny civil action of which the Court of International Trade has jurisdiction… may be

commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5." 28 U.S.C. § 2631(i).

23.   Plaintiff has both constitutional and statutory standing to file this action as a U.S. importer and distributor of steel-derivative products named in Annex II to Proclamation 9980. Plaintiff has suffered actual and irreparable harm by virtue of the Secretary of Commerce's violations of the APA in bypassing all of the important investigative and consultative procedures outlined throughout 15 C.F.R. part 705.   Plaintiff was deprived of the right to provide written comments and in-person testimony regarding the imposition of 25 percent duties on its products at the present time, based on public notice provided to similarly situated importers of primary steel products more than two years ago in the investigation underlying Proclamation 9980.   In Gilda Industries, Inc. v. United States, the court reviewed a challenged to the composition of a retaliation list issued under Section 301 and found that "the failure to conduct review and revision of the list injured Gilda by depriving it of at least an opportunity to have those products removed."   Gilda Industries, Inc. v. United States, 446 F.3d 1271, 1279 (Fed. Cir. 2006).   Here, Plaintiff suffered similar injury due to the Secretary of Commerce's failure to follow its regulations and provide an opportunity for PrimeSource to make its case that steel nails should not be subjected to import duties under Section 232.   Such injury could be prevented by the issuance of injunctive relief to preserve the status quo.

24.   As importer of record, Plaintiff will have to pay millions of dollars of unexpected duties on derivative steel products.   Plaintiff calculates that the imposition of the 25 percent duties on HTS codes covered by Proclamation 9980 will increase Plaintiff's costs by approximately [          ] million over the next year.   Affidavit of PrimeSource Official at ¶ 8 (attached as Ex. 2). Plaintiff  expects  [                                                                              ]  under

Proclamation 9980. Id. at ¶ 10.  Plaintiff further has had to revise its business plans. Id. at ¶ 9. Plaintiff thus has a concrete and particularized injury that is actual and that injury is directly traceable to the unlawful action of the Secretary of Commerce and the President.  Such injury would not exist but for the unlawful government action.

25.  Plaintiff is a United States corporation, employing American citizens, with an interest in the national security of the United States.  Plaintiff therefore is within the zone of interests to be protected or regulated by Section 232 of the Trade Expansion Act of 1962 and its implementing regulations in 15 C.F.R. part 705.  As importer of record, Plaintiff will have to pay any import duties levied under Proclamation 9980.   In other words, the injury is traceable to the challenged conduct of the Defendants.  Specifically, the President and Secretary of Commerce failed to follow the law in concluding that derivative steel products of a type imported by Plaintiff pose a threat to national security and imposing 25 percent duties on such products, outside the statutory time limit, thereby causing harm to Plaintiff.

26.   Plaintiff has suffered irreparable harm that can be redressed by this Court. Specifically, Plaintiff was denied an opportunity to comment on the measures imposed by the President and its imports of items named in Annex II will result in imposition of 25 percent duties on such items.  Additionally, in the event that the Court does not enjoin the imposition of duties under Proclamation 9980, as an importer of products subject to such duties, Plaintiff has standing to seek recovery of unlawfully collected duties should the Court determine they were unlawfully required.  Recovery of duties that were unlawfully collected do not constitute "monetary damages" foreclosed in cases based on the APA.  See, e.g., Giorgio Foods, Inc. v. United States, __ CIT __, __, 804 F. Supp. 2d 1315, 1324 (2011) (citing Bowen v. Massachusetts, 487 U.S. 879, 893 (1988)).

27.    Plaintiff, therefore, qualifies as a "person" adversely affected or aggrieved by an agency action within the meaning of 5 U.S.C. § 702, and as an "individual" aggrieved by regulatory and statutory violations, as well as by the unconstitutionality of Section 232 under 28 U.S.C. § 2631(i).

## V.    TIMELINESS OF THIS ACTION

28.    This action has been filed within two years of January 24, 2020, the date the President issued Proclamation 9980.  This filing is therefore timely because it is filed within two years after the cause of action first accrued.  See 28 U.S.C. § 2636(i).

## VI.    STATEMENT OF FACTS

### A.    Section 232 of the Trade Expansion Act of 1962

29.    Section 232, titled "Safeguarding National Security," authorizes the President "to take action to adjust imports of an article and its derivatives" only if certain procedural requirements are met.

30.    First, a Section 232 action may only begin upon the request for such an investigation from "the head of any department or agency, upon application of an interested party" or on the Secretary's "own motion." 19 U.S.C. § 1862(b)(1)(A).

31.    Following such a request, the statute requires the Secretary immediately to initiate an investigation "to determine the effects on the national security of imports of {an} article." During such investigation, the Secretary of Commerce must consult with the Secretary of the Department of Defense and other U.S. officials, as appropriate, to determine the effects of the specified imports on the national security.  Id. § 1862(b)(2)(A)(i)-(ii).

32.     The Secretary of Commerce must also "if it is appropriate and after reasonable notice, hold public hearings or otherwise afford interested parties an opportunity to present information and advice relevant to such investigation."  Id. § 1862(b)(2)(A)(iii).

33.     Under the statute, the Secretary then has 270 days from the date the investigation was initiated, to submit a report to the President.  The report must contain "the findings of such investigation with respect to the effect of the importation of such article in such quantities or under such circumstances upon the national security and, based on such findings, the recommendations of the Secretary for action or inaction under th{e} section."  Id. § 1862(b)(3)(A).

34.     While Section 232 does not explicitly define "national security," it does provide a non-exhaustive list of factors that the Secretary and President must consider, including:

> domestic production needed for projected national defense requirements, the capacity of domestic industries to meet such requirements, existing and anticipated availabilities of the human resources, products, raw materials, and other supplies and services essential to the national defense, the requirements of growth of such industries and such supplies and services including the investment, exploration, and development necessary to assure such growth, and the importation of goods in terms of their quantities, availabilities, character, and use.

Id. § 1862(d).

35.     Upon receipt of Commerce's report, the President has 90 days – and no more – to both "determine whether the President concurs with the finding of the Secretary" and, if the President concurs, "determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security."  Id. § 1862(c)(1)(A)(ii).

36.     After reaching a determination, the President has 15 days – and no more – to implement the chosen action.  See id. § 1862(c)(1)(B).  Alternatively, under the statute, the President may "negotiat{e} … an agreement which limits or restricts the importation into, or the

11

exportation to, the United States of the article that threatens to impair national security…" Id. § 1862(c)(3)(A)(i).

37.    If the President chooses to negotiate an article-specific agreement, but either "no such agreement is entered into" within 180 days or the resulting agreement "is not being carried out or is ineffective," the President must "take such other actions as the President deems necessary to adjust the imports of such article so that such imports will not threaten to impair the national security." Id. § 1862(c)(3)(A)(ii) (emphasis added).

38.    Within 30 days after "the date on which the President makes any determinations," the President "shall submit to the Congress a written statement" explaining "why the President has decided to take action, or refused to take action." Id. § 1862(c)(2).

39.    The procedural predicates detailed above are unambiguously stated and must be duly followed for the President's actions to be lawful. See Transpacific Steel LLC, 2019 Ct. Intl. Trade LEXIS 142, at *14 (noting "after the time periods set by Congress {under Section 232} for Presidential action had passed, the President lacked power to take new action.").

**B.    Commerce's 2017 Investigation Under Section 232**

40.    On April 19, 2017, the Secretary initiated an investigation into the effects of aluminum and steel imports on the national security of the United States.

41.    On April 21, 2017, the Secretary published a notice inviting public comment on "imports of steel." Notice of Request for Public Comments and Public Hearing on Section 232 National Security Investigation of Imports of Steel, 82 Fed. Reg. 19,205 (Dep't Commerce Apr. 26, 2017) (attached as Ex. 3). That notice stated that the Secretary "is particularly interested in comments and information…related to the importation of steel." Id. at 19,206. The notice invited public testimony to "assist the Department in determining whether imports of steel threaten to

impair the national security." Id. The notice did not mention nails specifically, or any derivative articles generally. Id. None of the public comments advocated for the tariffs to be applied to, or exempted from, imported steel nails. See U.S. DEP'T OF COMMERCE, BUREAU OF INDUS. & SEC. OFFICE OF TECH. EVALUATION, The Effect of Imports of Steel on the National Security at app. G, (Jan. 11, 2018) ("Steel Report"), https://www.commerce.gov/sites/default/files/ the_effect_of_imports_of_steel_on_the_national_security_-_with_redactions_-_20180111.pdf (app. G directs to the Steel 232 Investigation Public Comments Library). The word "nails" does not appear anywhere in the transcript of the public hearing held on May 24, 2017. See U.S. DEP'T OF COMMERCE, BUREAU OF INDUS. & SEC. OFFICE OF TECH. EVALUATION, Steel 232 Investigation Public Hearing Transcript (May 24, 2017), https://www.bis.doc.gov/index.php/documents/section-232-investigations/232-steel-public-comments/1927-steel-232-investigation-public-hearing-transcript/file (attached as Ex. 4). No representatives from the domestic producers involved in the numerous nails antidumping/countervailing duty cases attended the hearing or filed comments, in contrast to numerous representatives of domestic steel producers who attended and testified of their history filing unfair trade cases on steel products. See generally U.S. DEPARTMENT OF COMMERCE, Section 232 Investigation on the Effect of Imports of Steel on U.S. National Security, https://www.commerce.gov/section-232-investigation-effect-imports-steel-us-national-security (last visited Feb. 4, 2020) (attached as Ex. 5).

42.    That steel nails and other derivative products were not considered in the 2017 Section 232 investigation leading to the January 11, 2018 Report is no surprise. Frequently Asked Question Number 1 on the Secretary of Commerce's website for its 2017/2018 Section 232 Steel investigation states:

> **What is the purpose of a Section 232 Investigation?**
> Section 232 investigations are initiated to determine the effects of imports of any articles on national security.  In this case, the Commerce Department is determining the effect of steel imports on the national security.  Generally, <u>steel products fall into one of the following five categories (including but not limited to):  Flat products, long products, pipe and tube products, semi-finished products, and stainless products</u>.

<u>Id.</u> (emphasis added).  Steel nails and other "derivative" products do not fall into any of those categories, a fact confirmed by the President and Secretary of Commerce's current challenged action to add Section 232 duties because those products were not included in the original investigation.

43.     On January 11, 2018 and January 17, 2018, the Secretary transmitted its reports to the President detailing its findings and recommendations with regards to steel and aluminum imports respectively.  <u>See</u> Steel Report; <u>see also</u> U.S. DEP'T OF COMMERCE, BUREAU OF INDUS. & SEC. OFFICE OF TECH. EVALUATION, The Effect of Imports of Aluminum on the National Security (Jan. 17, 2018), https://bis.doc.gov/index.php/documents/aluminum/2223-the-effect-of-imports-of-aluminum-on-the-national-security-with-redactions-20180117/file.

44.     In its reports, Commerce relied on an expansive definition of "national security," which incorporated the "general security and welfare of certain industries, beyond those necessary to satisfy national defense requirements, which are critical to minimum operations of the economy and government."  Steel Report at 1, 13-15.

45.     Concluding that the U.S. domestic steel industry was in decline, Commerce further concluded that "the present quantities and circumstance of steel imports are 'weakening our internal economy' and threaten to impair the national security as defined in Section 232."  <u>Id.</u> at 5. In its report, Commerce clearly emphasized the threat of raw steel imports, as opposed to steel products individually, stating "U.S. steel production capacity has remained flat since 2001, while

other steel producing nations have increased their production capacity, with China alone able to produce as much steel as the rest of the world combined." Id. at 16.

46.   Notably, the term "nails" appears only once in the 262-page report, in a list of civilian articles made from cold finished steel bar. Steel Report, app. F at 134. Part V of the report, the "Findings," refers to antidumping and countervailing duty actions on "unfairly traded steel products." Id. at 28. Appendix K to the Report lists the antidumping and countervailing duty cases on "steel" but does not include any of the numerous antidumping/countervailing duty cases on nails. Id., app. K at 1-4.

47.   Following its analysis, Commerce, in its Steel Report, recommended that the President take immediate action to adjust the level of steel imports through quotas or tariffs. Id. at 58-61. Commerce specifically proposed three actions, which would enable the U.S. steel industry to operate at an average capacity utilization rate of 80 percent or better. Id. One of the recommendations was a global tariff of 24 percent on "all imported steel products, in addition to any antidumping or countervailing duty collections applicable to any imported steel product." Id. at 59.

48.   On February 18, 2018, roughly one month after Commerce issued its Steel Report, the Secretary of Defense provided views on the impact of steel and aluminum on national security, stating "U.S. military requirements for steel and aluminum each only represent about three percent of U.S. production." Mem. from the Sec'y of Defense to Sec'y of Commerce re: Resp. to Steel and Aluminum Policy Recommendation at 1 (Feb. 18, 2018) (attached at Ex. 6). On this basis, the Secretary of Defense concluded that the "DoD does not believe that the findings in the reports {by Commerce} impact the ability of DoD programs to acquire the steel or aluminum necessary to meet national defense requirements." Id.

15

**C.     The 2018 Section 232 Proclamations On Steel and Aluminum**

49.     On March 8, 2018, the President issued Proclamations 9704 and 9705, which concurred with the Secretary of Commerce's findings, referred to the recommended global tariff of 24 percent, and determined to adjust the imports of steel and aluminum by subjecting such articles to 25 percent and 10 percent ad valorem tariffs, respectively.  See Proclamation No. 9704, Adjusting Imports of Aluminum Into the United States, 83 Fed. Reg. 11,619, 11,621 (Mar. 15, 2018) (attached as Ex. 7); see also Proclamation No. 9705, Adjusting Imports of Steel Into the United States, 83 Fed. Reg. 11,625, 11,626 (Mar. 15, 2018) (attached as Ex. 8).  The President exempted certain countries from the imposition of measures.  See Proclamation No. 9740, Adjusting Imports of Steel Into the United States, 83 Fed. Reg. 20,683, 20,685 (May 7, 2018) (exempting South Korea from steel tariffs announced in Proclamation 9705) (attached as Ex. 9); see also Proclamation No. 9894, Adjusting Imports of Steel Into the United States, 84 Fed. Reg. 23,987, 23,988 (May 23, 2019) (exempting Canada and Mexico from steel tariffs announced in Proclamation 9705) (attached as Ex. 10).

50.     Neither nails nor any other derivative steel article was listed in the annex of steel articles covered by the initial 2018 Section 232 action.  See Proclamation No. 9704, 83 Fed. Reg. at 11,629.

**D.     The 2020 Section 232 Proclamation on "Derivative" Steel and Aluminum Articles**

51.     On January 24, 2020, nearly two years after the initial Proclamations imposing tariffs on steel and aluminum, without notice, the President issued Proclamation 9980, imposing additional tariffs of 25 and 10 percent respectively on certain steel- and aluminum-derivative products.  See Proclamation No. 9980, Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles into the United States, 85 Fed. Reg. 5,281 (Jan 29, 2020) ("Proclamation

9980"). The President claimed that "domestic steel producers' utilization ha{d} not stabilized for an extended period of time at or above the 80 percent capacity utilization level" as the reason for imposing additional tariffs on imports of certain derivatives of steel and aluminum articles. Id. Proclamation 9980 did not cover imports from countries previously exempted from the 2018 Section 232 measures.

52.     Paragraph 1 of Proclamation 9980 states that its legal authority is based on the investigation conducted by Commerce in 2017, leading to the January 11, 2018 report by the Secretary of Commerce. See id. As noted above, that investigation and report did not include nails or any derivative steel or aluminum product.

53.     The Secretary of Commerce did not conduct a new investigation under the statute. The statute states that "the Secretary shall immediately provide notice to the Secretary of Defense," 19 U.S.C. § 1862(b)(1)(B), but the Secretary did not do so. The Secretary of Commerce did not consult with the Secretary of Defense as required by the statute. Id. § 1862(b)(2)(A)(i). The Secretary of Commerce did not "submit to the President a report on the findings of such investigation." Id. § 1862(b)(3)(A). Nor did the Secretary of Commerce publish a report in the Federal Register, as required by 19 U.S.C. § 1862(b)(3)(B).

54.     The Secretary of Commerce did not follow any of its regulations codified in 15 C.F.R. part 705, setting forth important investigative and consultative procedures and public comment opportunities that were duly followed in the original Section 232 investigation proceeding. The Secretary's resulting "assessment" to alter the HSTUS to impose 25 percent duties on imports of derivative steel products constitutes unlawful rulemaking.

55.     Neither the President nor the Secretary of Commerce solicited public comment from interested parties regarding whether steel- and aluminum-derivative products impact national

security, as was done during the initial 2017/18 Section 232 investigations on steel and aluminum imports.

56.    Instead, the President claimed that the Secretary of Commerce informed him that "certain derivatives of steel articles have significantly increased since the imposition of the tariffs and quotas" and the "net effect of the increase of imports of these derivatives has been to erode the customer base for U.S. producers of aluminum and steel and undermine the purpose of the proclamations adjusting imports of aluminum and steel articles to remove the threatened impairment of the national security." Proclamation 9980, 85 Fed. Reg. at 5,282. Not one of the legal and procedural requirements of Section 232 was met by the Secretary of Commerce in that he failed to conduct an investigation into new articles not covered by the 2017 investigation. To date, the Secretary of Commerce's communication "informing" the President that derivative articles impair the national security has not been released to the public.

57.    The President promulgated Proclamation 9980 638 days after the window to take action had lapsed, constituting a clear violation of the statutory constraints under Section 232. See Transpacific Steel, 2019 Ct. Intl. Trade LEXIS 142, at *11 ("the statute... cabins the President's power... procedurally, by setting the time in which to act.").

58.    On January 29, 2020, the Executive Office of the President published Annexes in the Federal Register listing the products covered by Proclamation 9980. See Proclamation 9980, 85 Fed. Reg. at 5,286, 5,290. The covered products included steel nails, tacks (other than thumb tacks), drawing pins, corrugated nails, staples (other than those of heading 8305) and similar derivative steel articles as well as aluminum stranded wire, cables, plaited bands and bumper and body stampings.

18

## VII.   STATEMENT OF CLAIMS

## COUNT 1

59.    PrimeSource incorporates by reference paragraphs 1-58 of this Complaint.

60.    Congress has the exclusive "power to lay and collect taxes, duties, imposts and excises" and "to regulate Commerce with foreign nations." U.S. CONST. art. 1, § 8.  Section 232 of the Trade Expansion Act of 1962, as amended 19 U.S.C. § 1862 delineates the particular circumstances of when and how the President may take action to address imports that threaten to impair the national security of the United States. See 19 U.S.C. § 1862.  The statute requires an investigation by the Secretary of Commerce, including notification to the Secretary of Defense, and sets forth the factors the Secretary of Commerce shall consider, culminating in a mandated "report" due to the President within 270 days after the commencement of an investigation. See id. § 1862(b).  Following public notice-and-comment, the Secretary of Commerce promulgated regulations establishing the procedures the Secretary of Commerce will follow in conducting such an investigation.  19 C.F.R. pt. 705.

61.    The Department of Commerce is a federal agency governed by the APA.

62.    The President based his action in Proclamation 9980 on "assessments" provided by the Secretary of Commerce regarding an alleged threat to national security by reason of imports of derivative steel and aluminum products.  Those "assessments" recommended changes to HTSUS codes to impose 25 percent duties, an action constituting a rulemaking under the APA. See 5 U.S.C. § 551(4)-(5).

63.    In providing such "assessments", undisclosed as of this time, the Secretary of Commerce violated its regulations because it, *inter alia*:

    a.  failed to initiate an investigation pursuant to 15 C.F.R. § 705.3(a);

    b.   failed to notify the Secretary of Defense of the initiation of an investigation pursuant to 15 C.F.R. § 705.3(b);

    c.   failed to provide proper notification to parties interested in derivative steel products of a public comment period and opportunity to appear at a hearing after the Secretary determined that such information and advice was appropriate with respect to the steel and aluminum articles resulting in the report upon which the President relies in Proclamation 9980 pursuant to 15 C.F.R. § 705.7(a);

    d.   failed to comply with 15 C.F.R. § 705.8(a)(1) by neglecting to notify parties interested in derivative steel and aluminum products that the date, time, place and subject matter of hearings held in 2017 on steel and aluminum products was the public notice of hearings on the potential for tariffs to be imposed on derivative products subject to Proclamation 9980, more than two years later; and

    e.   failed to prepare a report and publish an Executive Summary in the Federal Register pursuant to 15 C.F.R. § 705.10(c).

64.    The Secretary of Commerce's "assessments" regarding the alleged national security threat from derivative steel and aluminum articles, referred to throughout Proclamation 9980 as the legal basis for that Proclamation, bypassed the investigative and consultative steps required in the regulations.

65.    In bypassing these investigative and consultative steps, Commerce failed to provide interested parties with sufficient notice and an opportunity to comment on the addition of HTSUS codes subject to 25 percent duties in violation of the APA.  See 5 U.S.C. § 553.

66.    Commerce's failure to provide an reasoned explanation for its "assessments" or underlying report setting forth a definition of a derivative article and the numerical tests for

measuring the volume increases in imports that triggered this action is arbitrary and capricious under the APA, and, therefore, not in accordance with law.  See 5 U.S.C. §706.

## COUNT 2

67.     PrimeSource incorporates by reference paragraphs 1-66 of this Complaint.

68.     Congress has the exclusive "power to lay and collect taxes, duties, imposts and excises" and "to regulate Commerce with foreign nations."  U.S. CONST. art 1 § 8.  Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862, delineates the particular circumstances of when and how the President may take action to address imports that threaten to impair the national security of the United States.

69.     Section 232 was amended in 1988 to place a time limit on the President's authority to take action against imports.  See Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, title I, § 1501(a), (b)(1), 102 Stat. 1107, 1257-60 (1988) (codified as amended at 19 U.S.C. § 1862).  The statute was amended to require the President to act within 90 days of receipt a report by the Secretary of Commerce, and to implement such action within 15 days thereafter, in order to remove all threats to national security identified in the report required by the statute.

70.     In issuing Proclamation 9980 a full 653 days since the 90-day window closed for the President to determine what action must be taken and 638 days after the 15-day window to implement such action, the President failed to follow the mandated procedures set forth in Section 232.  The President's action to raise duties on imports of new derivative steel and aluminum products violates the statute.

## COUNT 3

71.     PrimeSource incorporates by reference paragraphs 1-70 of this Complaint.

72.     The Fifth Amendment to the Constitution "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests." Mathews v. Eldridge, 424 U.S. 319, 332 (1976).

73.     PrimeSource has a property interest in its imports of imports of steel derivative products.  Section 232 specifies that the Secretary of Commerce "shall… if it is appropriate and after reasonable notice, hold public hearings or otherwise afford interested parties an opportunity to present information and advice relevant to such investigation." 19 U.S.C. § 1862(b)(2)(A)(iii)(emphasis added).  The Secretary of Commerce originally held hearings on the underlying steel articles, and, therefore deemed such notice and comment period appropriate, thus triggering the requirement that the Secretary of Commerce "shall" hold public hearings.  The Federal Circuit has recognized the existence of a property interest for Fifth Amendment due process purposes for importers facing a deprivation of their property by the federal government. See, e.g., NEC Corp. v. United States, 151 F.3d 1361, 1370-71 (Fed. Cir. 1998).  And the Supreme Court has dictated that "{d}ue process is flexible and calls for such procedural protections as the particular situation demands." Mathews, 424 U.S. at 323 (internal quotation and citation omitted).

74.     This particular situation demands such procedural protections where PrimeSource was not on notice that its imports could be subject to duties under to Section 232, more than two years after the investigation cited in Proclamation 9980 as the legal basis for the extension of duties to new products.

75.     By failing to provide parties with notice and an opportunity to comment before issuing Proclamation 9980 imposing Section 232 tariffs on steel and aluminum derivative products, the President violated PrimeSource's due process rights protected under the Fifth Amendment.

## COUNT 4

76.     PrimeSource incorporates by reference paragraphs 1-75 of this Complaint.

77.     Section 232 is unconstitutional and not in accordance with the law because it represents an over-delegation by Congress to the President of its legislative powers by failing to set forth an intelligible principle for the President to follow when implementing Section 232.

## PRAYER FOR RELIEF

WHEREFORE, and as challenged herein, PrimeSource respectfully prays that this Court:

(1)     Enjoin Defendants from implementing or further enforcing Proclamation 9980;

(2)     Enter judgment in favor of Plaintiff and declare Proclamation 9980 unlawful;

(3)     Refund to PrimeSource any duties that may be collected on its imported articles pursuant to Proclamation 9980;

(4)     Award Plaintiff costs and any reasonable attorneys' fees and expenses; and

(5)     Grant such additional relief as the Court may deem just and proper.


                                        Respectfully Submitted,


Dated: <u>February 4, 2020</u>          /s/ Jeffrey S. Grimson
                                        Jeffrey S. Grimson
                                        Kristin H. Mowry
                                        Jill A. Cramer
                                        Sarah M. Wyss
                                        James C. Beaty
                                        Bryan P. Cenko
                                        Mowry & Grimson, PLLC
                                        5335 Wisconsin Avenue, NW, Suite 810
                                        Washington, D.C. 20015
                                        202-688-3610
                                        jsg@mowrygrimson.com
                                        *Counsel to PrimeSource Building Products,*
                                        *Inc.*

## EXHIBIT LIST TO COMPLAINT

| Exhibit | Description |
|---------|-------------|
| 1 | *Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles Into the United States, Proclamation No. 9980 of January 24, 2020*, 85 Fed. Reg. 5281 (Jan. 29, 2020) |
| 2 | Affidavit of PrimeSource Official |
| 3 | *Notice Request for Public Comments and Public Hearing on Section 232 National Security Investigation of Imports of Steel*, 82 Fed. Reg. 19205 (Apr. 26, 2017) |
| 4 | Dep't of Commerce, Bureau of Indus. & Sec. (BIS), *The Effect of Imports of Steel on the National Security* (Jan. 11, 2018) |
| 5 | Steel 232 Investigation Public Hearing Transcript (May 24, 2017) |
| 6 | Memorandum from Sec'y of Def. to Sec'y of Commerce, re: Response to Steel and Aluminum Policy Recommendations (Feb. 18, 2018) |
| 7 | *Adjusting Imports of Aluminum Into the United States, Proclamation No. 9704 of March 8, 2018*, 83 Fed. Reg. 11619 (Mar. 15, 2018) |
| 8 | *Adjusting Imports of Steel Into the United States, Proclamation No. 9705 of March 8, 2018*, 83 Fed. Reg. 11625 (Mar. 15, 2018) |
| 9 | *Adjusting Imports of Steel Into the United States, Proclamation No. 9740 of April 30, 2018*, 83 Fed. Reg 20683 (May 7, 2018) |
| 10 | *Adjusting Imports of Steel Into the United States, Proclamation No. 9894 of May 19, 2019*, 84 Fed. Reg. 23987 (May 23, 2019) |