Slip Op. No. 21- 36

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PRIMESOURCE BUILDING PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, et al., <br><br> Defendants. | Before: Timothy C. Stanceu, Chief Judge <br> Jennifer Choe-Groves, Judge <br> M. Miller Baker, Judge <br><br> Court No. 20-00032 |

**OPINION**

[Granting summary judgment in favor of plaintiff.  Judge Baker dissents.]

Dated:  April 5, 2021

*Jeffrey S. Grimson*, Mowry & Grimson, PLLC, of Washington, D.C., for plaintiff. With him on the brief were *Kristin H. Mowry*, *Jill A. Cramer*, *Sarah M. Wyss*, *Bryan P. Cenko*, and *Wenhui Ji*.

*Jeanne E. Davidson*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendants.  With her on the brief were *Tara K. Hogan*, Assistant Director, and *Stephen C. Tosini*, Senior Trial Counsel.

Stanceu, Chief Judge:  Plaintiff PrimeSource Building Products, Inc.

("PrimeSource"), a U.S. importer of steel nails, contested a proclamation issued by the

President of the United States ("Proclamation 9980") in January 2020.  *Adjusting Imports*

*of Derivative Aluminum Articles and Derivative Steel Articles Into the United States*, 85 Fed.

Reg. 5,281 (Exec. Office of the President Jan. 29, 2020) ("*Proclamation 9980*").  Before the court is a "Joint Status Report" the parties submitted in response to our order in *PrimeSource Bldg. Prods., Inc. v. United States*, 45 CIT __, Slip. Op. 21-8 (Jan. 27, 2021) ("*PrimeSource I*").  Joint Status Report (Mar. 5, 2021), ECF No. 108.  In response to statements of the parties in the Joint Status Report, the court enters summary judgment in favor of plaintiff.[1]

## I. BACKGROUND

The background of this action is set forth in our prior opinion and summarized briefly herein.  See *PrimeSource Bldg. Prods., Inc. v. United States*, 45 CIT __, Slip. Op. 21-8 (Jan. 27, 2021) ("*PrimeSource I*").

### A. Proclamation 9980

On January 24, 2020, President Donald Trump issued Proclamation 9980, which imposed a 25% duty on certain imported articles made of steel, including steel nails, and a 10% duty on certain imported articles made of aluminum.  As authority for its imposition of duties on the articles, identified as "derivative aluminum articles" and "derivative steel articles," Proclamation 9980 cited Section 232 of the Trade Expansion

---

[1] Judge Baker dissents from the entry of summary judgment in favor of plaintiff for the reasons stated in his dissent from the court's prior opinion and order. *PrimeSource Bldg. Prods., Inc. v. United States*, 45 CIT __, Slip. Op. 21-8 (Jan. 27, 2021) (Baker, J., dissenting).

Act of 1962, 19 U.S.C. § 1862 ("Section 232").[2] Proclamation 9980 also cited previous Presidential proclamations that invoked Section 232, including Proclamation 9704, *Adjusting Imports of Aluminum Into the United States*, 83 Fed. Reg. 11,619 (Exec. Office of the President Mar. 15, 2018) ("*Proclamation 9704*"), and Proclamation 9705, *Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625 (Exec. Office of the President Mar. 15, 2018) ("*Proclamation 9705*"). *Proclamation 9980* ¶¶ 9–10, 85 Fed. Reg. at 5,283.

### B. Procedural History of this Litigation

On February 4, 2020, PrimeSource commenced this action, naming the United States, et al., as defendants and asserting five claims in contesting Proclamation 9980. Summons, ECF No. 1; Compl., ECF Nos. 8 (conf.), 9 (public). Defendants filed a Rule 12(b)(6) motion to dismiss an amended complaint on March 20, 2020 for failure to state a claim on which relief can be granted. Defs.' Mot. to Dismiss for Failure to State a Claim, ECF No. 60 ("Defs.' Mot."). Plaintiffs opposed defendants' motion to dismiss and moved for summary judgment on April 14, 2020. Rule 56 Mot. for Summ. J., Pl. PrimeSource Bldg. Prods. Inc.'s Mem. of Points and Authorities in Supp. of Mot. for Summ. J. and Resp. to Defs.' Mot. to Dismiss for Failure to State a Claim, ECF No. 73-1. Defendants responded to plaintiff's summary judgment motion on May 12, 2020. Defs.' Reply in Supp. of their Mot. to Dismiss and Resp. to Pl.'s Mot. for Summ. J., ECF No. 78.

---

[2] All citations to the United States Code are to the 2012 edition.

On June 9, 2020, plaintiff replied in support of its summary judgment motion. Pl. PrimeSource Bldg. Prods. Inc.'s Reply Br. in Supp. of its Mot. for Summ. J., ECF No. 91.

### C. Our Decision in *PrimeSource I*

In *PrimeSource I*, we granted defendants' motion to dismiss as to all of plaintiff's claims in the amended complaint except one, stated as "Count 2," in which plaintiff claimed that Proclamation 9980 was issued beyond the statutory time limits set forth in Section 232. *PrimeSource I*, 45 CIT at __, Slip Op. at 55. In Count 2, plaintiff argued that Proclamation 9980 was issued after the expiration of the 105-day time period set forth in Section 232(c)(1), which PrimeSource described as commencing upon the President's receipt, on January 11, 2018, of a report the Secretary of Commerce issued under Section 232(b)(3)(A) on the effect of certain steel articles on the national security of the United States (the "2018 Steel Report"). That report culminated in the President's issuance of Proclamation 9705 in March 2018, which imposed 25% duties on various steel articles, *see Proclamation 9705*, ¶¶ 1–2, 83 Fed. Reg. at 11,625, but not on the derivative steel articles affected by Proclamation 9980 in January 2020.

We stated in *PrimeSource I* that "[d]efendants do not dispute that the 2018 Steel Report is, for purposes of Section 232(c), 19 U.S.C. § 1862(c), the report issued according to Section 232(b)(3)(A), 19 U.S.C. § 1862(b)(3)(A), upon which the President based his adjustment to imports of steel derivatives, including steel nails." *PrimeSource I*, 45 CIT at __, Slip Op. at 20 (citing Defs.' Mot. 24–29). In denying defendants' motion to dismiss

Count 2, we concluded that Proclamation 9980 does not comply with the limitation on the President's authority imposed by the 105-day time limitation of Section 232(c)(1) if that time period is considered to have commenced upon the President's receipt of the 2018 Steel Report. *Id.* at __, Slip Op. at 44–45. We held that in this circumstance Count 2 stated a plausible claim for relief. *Id.* at __, Slip Op. at 50.

After denying defendants' motion to dismiss as to the claim in Count 2, we denied plaintiff's motion for summary judgment on that remaining claim upon determining that there existed one or more genuine issues of material fact. Although concluding that Proclamation 9980 was untimely under Section 232(c)(1) when viewed solely as an action taken in response to the Steel Report, we also concluded that there were genuine issues of material fact that bore on the extent to which the subsequent "assessment" or "assessments" of the Commerce Secretary, as identified in Proclamation 9980, validly could be held to have served a function analogous to that of a Section 232(b)(3)(A) report. *Id.* at __, Slip Op. at 54. We also noted that we did not know what form of inquiry or investigation the Commerce Secretary conducted prior to his submission of these communications to the President and whether, or to what extent, that inquiry or investigation satisfied the essential requirements of Section 232(b)(2)(A), 19 U.S.C. § 1862(b)(2)(A). *Id.*

In summary, we concluded in *PrimeSource I* that factual information pertaining to the Secretary's inquiry on, and his reporting to the President on, the derivative articles

would be required in order for us to examine whether and to what extent there was compliance by the President with the procedural requirements of Section 232 and whether any noncompliance that occurred was a "significant procedural violation." *Id.* at __, Slip Op. at 54–55 (quoting *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 89 (Fed. Cir. 1985) (requiring that a procedural violation be "significant" in order to serve as a ground for judicial invalidation of a Presidential action)). We added that "at this early stage of the litigation, we lack a basis to presume that these unresolved factual issues are unrelated to the issue of whether the President clearly misconstrued the statute or the issue of whether the President took action outside of his delegated authority." *Id.* at __, Slip Op. at 55. We noted that the "filing of a complete administrative record could be a means of resolving, or helping to resolve, these factual issues" and directed the parties to consult on this matter and file a scheduling order to govern the subsequent litigation. *Id.*

### D. The Joint Status Report

On March 5, 2021, the parties submitted the Joint Status Report in lieu of a scheduling order. In it, defendants expressly waived "the opportunity to provide additional factual information that might show that the 'essential requirements of Section 232(b)(2)(A), 19 U.S.C. § 1862(B)(2)(A)' were met," adding that "[d]efendants do not intend to pursue that argument." Joint Status Report 2 (quoting *PrimeSource I*, 45 CIT at __, Slip Op. at 54). Defendants informed the court that their "position continues

to be that procedural preconditions for the issuance of Proclamation 9980 were met by the Secretary's 2018 Steel Report and the timely issuance of Proclamation 9705, a position that the majority has already rejected." *Id.* at \_\_, Slip Op. at 2–3. The Joint Status Report concludes by stating that "the parties agree and respectfully submit that there is no reason for this Court to delay entry of final judgment. In so representing, the parties fully reserve all rights to appeal any adverse judgment." *Id*. at \_\_, Slip Op. at 3.

## II. Discussion

### A. *Sua Sponte* Entry of Summary Judgment according to USCIT Rule 56(f)

Because we denied plaintiffs' motion for summary judgment in *PrimeSource I*, no motion for summary judgment is now before us. Nevertheless, we may enter summary judgment for a party *sua sponte* under USCIT Rule 56(f), which provides that "[a]fter giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."

The United States Supreme Court in *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("*Celotex*") opined that "district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*." In interpreting *Celotex*, the Court of Appeals for the Federal Circuit instructed that "[t]he *Celotex* Court also made clear that all that is required is notice [to the party with the burden of proof] that she had to come forward with all of her evidence." *Exigent Tech., Inc. v. Atrana Sols., Inc.*, 442 F.3d 1301,

1308 (Fed. Cir. 2006) (brackets in original).  In determining whether to enter summary judgment *sua sponte*, a court must ensure that prejudice will not accrue to the would-be losing party stemming from that party's inability to present evidence of a genuine dispute of material fact.  See *Celotex*, 477 U.S. at 326.

### B. Defendants' Waiver of the Opportunity to Present Evidence and of Any Defense Related to Procedures Subsequent to the 2018 Steel Report

In this litigation, the parties, and defendants in particular, expressly have declined to pursue the opportunity to present additional evidence to demonstrate the existence of a genuine dispute of a material fact.  Specifically, defendants waive any defense they might base on a showing that the "'essential requirements of Section 232(b)(2)(A), 19 U.S.C. § 1862(b)(2)(A)' were met."  Joint Status Report 2 (quoting *PrimeSource I*, 45 CIT at __, Slip Op. at 54).  Further, we note the significance of defendants' statement in the Joint Status Report that their "position continues to be that procedural preconditions for the issuance of Proclamation 9980 were met by the Secretary's 2018 Steel Report and the timely issuance of Proclamation 9705."  *Id*. at 2–3.  This statement constitutes a waiver of any defense that the assessments of the Commerce Secretary, as described in Proclamation 9980, were the functional equivalent of a Section 232(b)(3)(A) report.

By joining in the statement that "the parties agree and respectfully submit that there is no reason for this Court to delay entry of final judgment," *id*. at 3, defendants have waived any claim of prejudice that could result from the entry of summary

judgment in favor of plaintiff, subject to their right to appeal. The parties have been given the full opportunity to "come forward" with any evidence of a dispute of material fact. A *sua sponte* order of summary judgment is, therefore, appropriate. *See Celotex*, 477 U.S. at 326.

The court further notes that defendants did not file an answer to plaintiff's complaint or amended complaint. The court's opinion in *PrimeSource I* directed the parties to file a joint scheduling order to govern the remainder of the litigation, which normally would have included a date for the government to answer the complaint with respect to the remaining claim. Here, defendants having waived any argument that Proclamation 9980 was issued within the 105-day time period beginning on the President's receipt of a report qualifying under Section 232(b)(3)(A), there are no contested issues of fact. Therefore, the absence of an answer to the amended complaint is not a procedural bar to the entry of summary judgment.

### C. In the Absence of a Genuine Dispute as to any Material Fact, Plaintiff Is Entitled to Judgment as a Matter of Law

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a). As discussed above, there is no longer a genuine issue of material fact as a result of the representations of the parties in the Joint Status Report. In particular, defendants have waived any defense grounded in a factual circumstance other than one in which the 2018 Steel Report is the only submission made by the Commerce Secretary

that could satisfy the requirements of Section 232(b)(3)(A) and upon which Proclamation 9980 could have been based.

Plaintiff PrimeSource is now entitled to judgment as a matter of law. As we concluded in *PrimeSource I*, "the action taken by Proclamation 9980 to adjust imports of derivatives was not implemented during the 105-day time period set forth in § 1862(c)(1), if that time period is considered to have commenced upon the President's receipt of the Steel Report." 45 CIT at __, Slip Op. at 44. Because defendants no longer may raise as a defense that the procedural requirements of Section 232 were met based on any procedure other than one reliant upon the 2018 Steel Report, summary judgment in favor of plaintiff is warranted on the ground that Proclamation 9980 was issued after the President's delegated authority to impose duties on derivatives of steel products had expired. As we held in *PrimeSource I*, any determination the President could have made to adjust the duties on imports of derivatives of the articles named in Proclamation 9705 was required by the statute to have been made during the 90-day period commencing with the President's receipt of a report of the Commerce Secretary satisfying the requirements of Section 232(b)(3)(A), and any action to implement that determination was required to have been taken, if at all, during the 15-day period following that determination. *See* 45 CIT at __, Slip Op. at 32 (holding that "the 90- and 15-day time limitations in Section 232(c)(1) expressly confine the exercise of the President's discretion *regardless* of whether the President determines to adjust imports

only of the 'article' named in the Secretary's report or, instead, to adjust imports of the 'article and its derivatives.'") (emphasis in original).

To declare Proclamation 9980 invalid, we must find "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority." *Maple Leaf Fish Co.*, 762 F.2d at 89. Because the President issued Proclamation 9980 after the congressionally-delegated authority to adjust imports of the products addressed in that proclamation had expired, Proclamation 9980 was action outside of delegated authority. For the reasons we stated in *PrimeSource I*, 45 CIT at __, Slip Op. at 45–49, we reject defendants' position that Congress intended for the time limitations in Section 232(c)(1) to be merely directory, and we find in the untimeliness of Proclamation 9980 a significant procedural violation. As a remedy, PrimeSource is entitled to a declaratory judgment that Proclamation 9980 is invalid as contrary to law and to certain other relief, as described below.

### III. CONCLUSION

We award summary judgment to PrimeSource on the remaining claim in this litigation, which was stated in Count 2 of the amended complaint. As relief on this claim, we will declare Proclamation 9980 invalid as contrary to law and, on that basis, direct that the entries affected by this litigation be liquidated without the assessment of duties pursuant to Proclamation 9980, with refund of any deposits for such duty

liability that may have been collected pursuant to Proclamation 9980.[3]  Also, should any entries of PrimeSource's merchandise at issue in this litigation have liquidated with the assessment of 25% duties pursuant to Proclamation 9980, PrimeSource is entitled to reliquidation of those entries and a refund of any duties deposited or paid, with interest as provided by law.

      Judgment will enter accordingly.

                                             /s/ Timothy C. Stanceu
                                            Timothy C. Stanceu, Chief Judge
                                           /s/ Jennifer Choe-Groves

Dated: April 5, 2021                        Jennifer Choe-Groves, Judge
   New York, New York

---

[3] Earlier in this litigation, upon the consent of both parties, this Court entered a preliminary injunction against the collection of 25% cash deposits on PrimeSource's entries of merchandise within the scope of Proclamation 9980 and against the liquidation of the affected entries. *Order* (Feb. 13, 2020), ECF Nos. 39 (Conf.), 40 (Public).  This preliminary injunction will dissolve upon the entry of judgment. *Id*.  If, despite the preliminary injunction, any cash deposits were made or collected, PrimeSource is entitled to a refund of these cash deposits, with interest as provided by law.