IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE TIMOTHY C. STANCEU, CHIEF JUDGE
          THE HONORABLE JENNIFER CHOE-GROVES, JUDGE
          THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| PRIMESOURCE BUILDING PRODUCTS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Court No. 20-0032 |
| | ) **NON-CONFIDENTIAL VERSION** |
| THE UNITED STATES, *et al*., | ) |
| | ) |
| Defendants. | ) |
| | ) |

DEFENDANTS' MOTION FOR PARTIAL STAY OF
JUDGMENT TO MAINTAIN THE *STATUS QUO* PENDING APPEAL

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

TARA K. HOGAN
Assistant Director
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.:  (202) 616-2228
Email: tara.hogan@usdoj.gov

June 4, 2021                    Attorneys for Defendants

# <u>TABLE OF CONTENTS</u>

<u>**PAGE**</u>

DEFENDANTS' MOTION FOR PARTIAL STAY OF JUDGMENT TO
MAINTAIN THE STATUS QUO PENDING APPEAL ........................................... 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ............................................................................................................. 7

      I.     Legal Standard .......................................................................... 7

      II.    The United States Will Be Irreparably Injured Absent The
           Requested Relief ....................................................................... 8

      III.   A Stay Will Not Substantially Injure Other Parties ................. 17

      IV.   The United States Possesses A Likelihood Of Success on
           Appeal ...................................................................................... 20

CONCLUSION ........................................................................................................ 24

i

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                    **<u>PAGE(S)</u>**

*Am. Grape Growers Alliance for Fair Trade v. United States*,
    9 C.I.T. 506 (1985) ...................................................................................21

*Am. Motorists Ins. Co. v. Villanueva*,
    706 F. Supp. 923 (Ct. Int'l Trade 1989) ...............................................16

*Barnhart v. Peabody Coal Co.*,
    537 U.S. 149 (2003) ...............................................................................23

*Bell v. Tsintolas Realty Co.*,
    430 F.2d 474 (D.C. Cir. 1970)..................................................................7

*Boehler-Uddeholm Corp. v. United States*,
    23 C.I.T. 801 (1999) ...............................................................................20

*Center for Int'l Envtl Law v. Office of the U.S. Trade Representative*,
    240 F. Supp. 2d 21 (D.D.C. 2003).........................................................21

*Dames & Moore v. Regan*,
    453 U.S. 654 (1981) ...............................................................................23

*E.I. DuPont De Nemours & Co. v. Phillips Petroleum Co.*,
    835 F.2d 277 (Fed. Cir. 1987) .......................................................... 20, 22

*Fundicao Tupy S.A. v. United States*,
    696 F. Supp. 1525 (Ct. Int'l Trade 19883) .............................................21

*Haig v. Agee*,
    453 U.S. 280 (1981) ......................................................................... 16, 23

*Cook v. United States*,
    104 F.3d 886 (6th Cir. 1997) .................................................................16

*Furniture by Thurston v. United States,*
103 Fed. Cl. 505 (2012)......................................................................................16

*Global Dynamics, LLC v. United States,*
138 Fed. Cl. 207 (2018)......................................................................................16

*Heraeus-Amersil, Inc. v. United States,*
1 C.I.T. 249 (1985) .............................................................................................16

*Hilton v. Braunskill,*
481 U.S. 770 (1987) ..............................................................................................8

*Nken v. Holder,*
556 U.S. 418 (2009) ...................................................................................... 7, 15

*Ledbetter v. Baldwin,*
479 U.S. 1309 (1986) ..........................................................................................14

*Project Vote/Voting for Am., Inc. v. Long,*
275 F.R.D. 473 (E.D. Va. 2011)..........................................................................21

*Robertson v. Railroad Labor Bd.,*
268 U.S. 619 (1925) ............................................................................................22

*Scripps-Howard Radio, Inc. v. FCC,*
316 U.S. 4 (1942) ..................................................................................................7

*Standard Havens Prods. v. Gencor Indus., Inc.,*
897 F.2d 511 (Fed. Cir. 1990) ..............................................................................8

*Sunpreme Inc. v. United States,*
Slip op. 2017-1, 2017 Ct. Int'l trade LEXIS 1 (Ct. Int'l Trade 2017)....................9

*Shinyei Corp. of Am. v. United States,*
355 F.3d 1297 (Fed. Cir. 2004) ..........................................................................10

*Transpacific Steel LLC v. United States,*
474 F. Supp. 3d 1332 (Ct. Int'l Trade 2020)......................................................18

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977).................................................................20

*Wildmon v. Berwick Universal Studios*,
    983 F.2d 21 (5th Cir. 1992) ................................................................21

## STATUTES

19 U.S.C. § 1504(b)(1)............................................................................9
19 U.S.C. § 1504(d) ..............................................................................13
19 U.S.C. § 1505(a) ..............................................................................11
19 U.S.C. § 1516a(e) .............................................................................19
19 U.S.C. § 1623 ..................................................................................16
19 U.S.C. § 1862(b) ................................................................................4
28 U.S.C. § 2637(a) ..............................................................................19

## REGULATIONS

19 C.F.R. § 159.1 ..................................................................................9

## LEGISLATIVE HISTORY

H.R. Rep. No. 745, 84th Cong. 1st Sess. 7 (1955) ...................................22

101 Cong. Rec. 8160 (1955) ..................................................................22

## PRESIDENTIAL PROCLAMATIONS

*Proclamation 9704, Adjusting Imports of Aluminum into the United States*,
    83 Fed. Reg. 11,619 (Mar. 15, 2018)...................................................17

*Proclamation 9705, Adjusting Imports of Steel into the United States*,
    83 Fed. Reg. 11,625 (Mar. 15, 2018)...................................................17

*Proclamation 9980, Adjusting Imports of Derivative Aluminum and Derivative
Steel Articles into the United States*,
    85 Fed. Reg. 5,281 (Jan. 29, 2020)............................................... 2, 17

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE TIMOTHY C. STANCEU, JUDGE
          THE HONORABLE JENNIFER CHOE-GROVES, JUDGE
          THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| PRIMESOURCE BUILDING PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, *et al*., <br><br> Defendants. | Ct. No. 20-00032 <br> NON-CONFIDENTIAL VERSION <br> BPI removed from pp. 5, 6, 13, 15 |

### DEFENDANTS' MOTION FOR PARTIAL STAY OF JUDGMENT TO MAINTAIN THE *STATUS QUO* PENDING APPEAL

Pursuant to United States Court of International Trade Rule 62, defendants respectfully move for a partial stay of the judgment to maintain the *status quo ante* pending appeal. On June 4, 2021, defendants filed a notice of appeal. Specifically, we respectfully request that the Court enter an order: (1) staying the requirement to liquidate PrimeSource Building Products, Inc.'s entries without the assessment of Section 232 duties provided for in Proclamation 9980 and reinstating the order to suspend liquidation, and (2) reinstating the requirement for PrimeSource to monitor its imports of merchandise covered by Proclamation 9980 and to maintain

(and replace as needed) a sufficient continuous bond.  Granting our request

for relief will preserve the *status quo ante* and ensure that U.S. Customs &

Border Protection (CBP) is able to bill for and collect the duties, should the

defendants ultimately prevail on appeal.

On June 3 and 4, counsel for defendants consulted with counsel for

PrimeSource, who represented that the plaintiff defers providing its position

on the relief requested until it has reviewed our filed motion.

<u>BACKGROUND</u>

PrimeSource's amended complaint challenged the lawfulness of

Presidential Proclamation 9980 of January 24, 2020, *Adjusting Imports of*

*Derivative Aluminum and Derivative Steel Articles into the United States*, 85

Fed. Reg. 5,281 (Jan. 29, 2020).

At the time it filed its complaint, PrimeSource also moved for a

preliminary injunction, seeking to enjoin U.S. Customs & Border

Protection's collection of Section 232 duties on its imports of covered

derivative products.  ECF Docket Nos. 11; 12.  At the Court's advisement,

the parties sought to negotiate an agreement that would protect the public

fisc while also obviating the need for the Court to resolve the preliminary

injunction motion.

Subsequently, the parties jointly submitted a proposed order to the Court that would: (1) enjoin CBP from liquidating PrimeSource's covered entries and (2) require PrimeSource to obtain and maintain a continuous bond in an amount sufficient to "reflect the additional Section 232 duties PrimeSource anticipates it would otherwise have had to deposit over the next prospective six month period."  ECF Docket Nos. 36-38.

The Court entered the order on February 13, 2020.  ECF Docket Nos. 39; 40.  Upon the parties' consent motion, the Court subsequently revised the order to require that: (1) PrimeSource monitor its own subject imports and foregone duty deposits, and terminate and replace its continuous importation bond once the amount of foregone duty deposits reaches the amount of the bond, minus the baseline bond amount as calculated pursuant to CBP's general continuous bonding formula, and; (2) to authorize CBP to deny release to PrimeSource's entries once PrimeSource's foregone Section 232 duty deposits reached the amount of its current continuous bond, minus the baseline bond amount as calculated pursuant to CBP's general continuous bonding formula, until PrimeSource either terminated and replaced its continuous bond or used single transaction bonds in the amount of 100 percent of the value of the merchandise, plus 100 percent of the estimated duties, taxes, and fees, plus the foregone duty deposit on each

3

entry.  ECF Docket No. 105.  By its terms, the order expired at the time

judgment was entered.

This case was assigned to a three-judge panel.  ECF Docket No. 54.

On cross-motions for judgment, the Court granted the defendants' motion on

all but one count.  Slip op. 21-8 (Jan. 27, 2021).  The Panel majority

declined to grant judgment in defendants' favor on PrimeSource's claim that

the President acted beyond his statutory authority in issuing Proclamation

9980.  Slip op. at 50.  The dissenting judge would have granted judgment to

the defendants.  Slip op. at 78-112.  After providing defendants the

opportunity to present additional argument or evidence concerning whether

any communications from the Secretary qualified as an investigation and

report for purposes of 19 U.S.C. § 1862(b), the Court entered judgment in

PrimeSource's favor on the remaining count.  Slip op. 21-36 (Apr. 5, 2021).

The judgment ordered four things: (1) a declaration that Proclamation

9980 was invalid as contrary to law; (2) liquidation of PrimeSource's entries

without the assessment of Section 232 duties provided for in Proclamation

9980; (3) refund with interest of any estimated Section 232 duties deposited

by PrimeSource under Proclamation 9980; and (4) reliquidation of any of

PrimeSource's subject entries that may have been liquidated with assessment

4

of Section 232 duties provided for in Proclamation 9980.  Judgment, ECF

Docket Entry No. 111.

Consistent with the Court's declaratory judgment, defendants' counsel

has given instructions to PrimeSource on how to identify its entries of

derivative articles as not subject to Section 232 duties by reason of that

judgment, to ensure that no deposits of Section 232 duties are collected on

incoming entries.  Moreover, CBP has confirmed that PrimeSource did not

deposit any Section 232 duties on any of its past entries of derivative

articles, such that no refund or reliquidation is necessary in order to comply

with the Court's judgment.

As of June 1, 2021, the forgone Section 232 duty deposits for

PrimeSource's subject imports since the effective date of its current

continuous importation bond have surpassed the total amount of potential

Section 232 duty liability that PrimeSource's current continuous importation

bond was intended to secure.

Specifically, as described more fully in the declaration attached to this

motion, PrimeSource's current continuous importation bond covers all of

PrimeSource's entries made on or after August 13, 2020, with a limit of

liability of $ [                    ].  Declaration of Brandon Lord ¶ 7.  That limit

of liability was intended to cover up to $ [                    ] in potential

5

Section 232 duty liability, in addition to the then-applicable $ [          ]

baseline bond amount, as calculated pursuant to CBP's general continuous

bonding formula, which was intended to cover general risks to the revenue

of the United States and risks of legal noncompliance other than the Section

232 duties that would be due for the subject imports should the Government

ultimately prevail on appeal.[1]  *Id*. ¶¶ 7-8.

　　　PrimeSource's total entered value of subject imports from the

effective date of its current continuous importation bond, August 13, 2020,

until June 1, 2021, was $ [          ], and the total amount of forgone

Section 232 duty deposits on PrimeSource's subject imports since the

effective date of PrimeSource's current continuous importation bond until

June 1, 2021 is $ [          ].  Lord Decl. ¶ 9. Accordingly, the forgone

Section 232 duty deposits for PrimeSource's subject imports have already

surpassed the potential Section 232 duty liability that the parties and the

Court intended to be secured by PrimeSource's current continuous

importation bond.

　　　Because PrimeSource continues to import substantial volumes of

subject imports, this means that if the Government ultimately prevails on

---

　　　[1] Pursuant to CBP's general continuous bonding formula, the current baseline bond amount for PrimeSource is $ [          ].  Lord Decl. ¶ 11.

appeal, and PrimeSource is then for whatever reason unwilling or unable to pay the Section 232 duties that would be due on its subject imports, any such duties for PrimeSource's subject imports beyond the limit of liability on the current continuous importation bond (a portion of which is intended to cover general risks to the revenue of the United States and general risks of legal noncompliance, such as an importer's failure to pay, or the underpayment of, estimated duty deposits for duties other than the Section 232 duties for PrimeSource's subject imports at issue in this action) will be completely unsecured and uncollectable.

## ARGUMENT

### I. Legal Standard

"The power to stay a judgment pending appeal is part of a court's 'traditional equipment for the administration of justice.'" *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Scripps-Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9-10 (1942)). The purpose of a stay pending appeal is to preserve the *status quo* so that the appellate court may take the necessary time to make a reasoned decision. *Id*. at 429-30. There is "little doubt that . . . {a court} may fashion an equitable remedy to avoid placing one party at a severe disadvantage during the period of litigation." *Bell v. Tsintolas Realty Co*., 430 F.2d 474, 482 (D.C. Cir. 1970).

The four factors relevant to issuance of a stay of judgment pending

appeal are well-established:

> (1) whether the stay applicant has made a strong
> showing that he is likely to succeed on the merits;
> (2) whether the applicant will be irreparably
> injured absent a stay; (3) whether issuance of the
> stay will substantially injure the other parties
> interested in the proceeding; and (4) where the
> public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citations omitted); *see also*

*Standard Havens Prods., Inc. v. Gencor Indus., Inc*., 897 F.2d 511, 512

(Fed. Cir. 1990).  We analyze each of these factors below.

## II.   The United States Will Be Irreparably Injured Absent The Requested Relief

Our request for a partial stay of the judgment is limited to three items:

(a) staying the order to liquidate PrimeSource's entries; (b) reinstating the

suspension of liquidation of PrimeSource's entries of derivative articles; and

(c) reinstating the requirement for PrimeSource to continue to monitor its

subject imports and foregone duty deposits, beginning on the effective date

of its current continuous bond, and to terminate and replace its continuous

importation bond once the amount of foregone duty deposits reaches the

amount of the bond, minus the baseline bond amount as calculated pursuant

to CBP's general continuous bonding formula, along with reinstating the

express authorization for CBP to deny release to PrimeSource's entries once

PrimeSource's foregone Section 232 duty deposits reached the amount of PrimeSource's current continuous bond, minus the baseline bond amount as calculated pursuant to CBP's general continuous bonding formula, until PrimeSource either terminated and replaced its continuous bond or used single transaction bonds in the amount of 100 percent of the value of the merchandise, plus 100 percent of the estimated duties, taxes, and fees, plus the foregone duty deposit on each entry.  This relief is necessary to maintain the *status quo ante* and to ensure that the public fisc is not irreparably harmed during the appeal.

Liquidation is "the final computation or ascertainment of the duties or drawback accruing on an entry."  19 C.F.R. § 159.1.  While 19 U.S.C. § 1504(b)(1) authorizes CBP to extend the time for liquidation, any lack of finality with respect to the Court's judgment is not in itself grounds for extension.  And once entries are liquidated, any claim as to the correct duties owed on PrimeSource's entries could become moot.  *See Sunpreme Inc. v. United States*, Slip op. 2017-1, 2017 Ct. Intl. Trade LEXIS 1, *9-10 (Jan. 5, 2017) (finding irreparable harm warranting a stay of judgment because liquidation of entries could moot the appeal).  Thus, absent a stay of the order to liquidate and reinstatement of the order to suspend liquidation, CBP

may be unable to assess and collect duties on entries that liquidate during the pendency of the appeal.[2]

Second, reinstatement of PrimeSource's obligation to maintain a sufficient importation bond to secure the duties that will be lawfully due should the Government prevail on appeal will mitigate the risk to the United States of potentially millions of dollars in revenue loss. Absent PrimeSource's duty deposits (which, consistent with the judgment, CBP has not collected, and cannot and will not collect prospectively), the bond is the only thing protecting the United States from revenue loss should the importer fail to fulfill its financial obligations once the entries liquidate and CBP issues bills.

The bond amount set through CBP's general continuous bonding formula will not cover foregone Section 232 duties. CBP's continuous bonding formula for importers is the greater of $50,000 or ten percent of the

---

[2] We acknowledge that, in three recent cases, the Government, relying on *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297 (Fed. Cir. 2004), represented that reliquidation of otherwise final entries is available in appropriate circumstances in a case brought pursuant to 28 U.S.C. 1581(i). *See, e.g, J. Conrad Ltd. v. United States*, Ct. Int'l Trade No. 20-00052 (Docket Entry No. 42, Defs.' Resp. to Pls.' Mots. for a Prelim. Inj. at 3 and Docket Entry No. 56, Defs.' Resp. to the Court's Order of April 7, 2020 at 1-2). After careful consideration, that is no longer the view of the Department of Justice. In any event, the Court need not decide whether court-ordered reliquidation is available in order to stay the judgment requiring liquidation of entries.

duties, taxes, and fees paid by the importer during the previous calendar
year, rounded to the nearest $10,000 for all amounts $100,000 or less, and
rounded to the nearest $100,000 for all amounts greater than $100,000. Lord
Decl. ¶ 8. CBP's general continuous bonding formula for importers is
intended to cover general risks to the revenue of the United States and
general risks of legal noncompliance, such as the risk of an importer's
failure to pay, or the underpayment of, the estimated duty deposits that are
required by 19 U.S.C. § 1505(a), until CBP discovers such non-compliance.
*Id.* Such bonding is intended for normal circumstances where estimated
duties are usually deposited as required by 19 U.S.C. § 1505(a), and where
the nonpayment of any estimated duties is a rare and/or unexpected
occurrence.

In this case, however, because pursuant to the Court's order CBP did
not collect the estimated duty deposits for PrimeSource's entries of
derivative articles, which would have otherwise been collected pursuant to
Proclamation 9980, additional bonding was necessary to secure the revenue
should the Government ultimately prevail in this action. Accordingly, the
order required *full bonding* for the foregone Section 232 duty deposits.
Specifically, the initial order required PrimeSource to obtain a bond
sufficient to cover the full amount of Section 232 duty deposits anticipated

11

to be foregone over the next six month period, and then to consult with the Government every six months, to "review the Section 232 duty deposits foregone and PrimeSource's estimated imports over the next six-month period," and to terminate and replace PrimeSource's bond every six months to ensure that the full amount of Section 232 duty deposits foregone during every six month period is fully bonded.  *See* Order (Feb. 13, 2020) ECF. No. 40.

The order was fine-tuned to ensure that forgone Section 232 duty deposits were fully bonded should they become due if the Government prevails.  The modified order simply required PrimeSource to monitor its subject imports and forgone duty deposits, and to terminate and replace its bond as necessary to ensure full bond coverage for the foregone Section 232 duties.  This order dissolved with the entry of judgment, and reinstatement of these requirements is necessary to preserve the *status quo ante* pending appeal.

In the absence of an order requiring PrimeSource to monitor and maintain sufficient bond coverage to secure the Section 232 duties foregone during the pendency of the appeal, these potential duties will be completely unsecured.  The potential amount of unsecured duty liability is not trivial. Based on PrimeSource's monthly volume of subject imports from the

12

effective date of its current continuous importation bond, August 13, 2020, until June 1, 2021, PrimeSource may owe approximately $ [                    ] per month in completely unsecured Section 232 duties, from now until the court's final judgment in this action and subsequent bills to PrimeSource, should the Government prevail in this court action.  Lord Decl. ¶¶ 10; 12.

For unliquidated entries, CBP could issue bills to the importers at liquidation.  Absent a reinstatement of the order to suspend liquidation, PrimeSource's subject entries must be liquidated within 6 months after the judgment's removal of the suspension that was previously ordered.  *See* 19 U.S.C. § 1504(d).  Since two of those six months have already passed since the entry of judgment, all of PrimeSource's subject entries will likely liquidate before the Court of Appeals issues its decision.

For liquidated entries, absent a court order, CBP has no statutory mechanism to regain the amounts of the unassessed and uncollected Section 232 duties, should the duties become due if the Government were to prevail on appeal.  Should defendants prevail on appeal, and should the court authorize reliquidation and bills for the unpaid Section 232 duties, CBP has a statutory responsibility to assess and collect revenue owed to the United States, including Section 232 duties on entries of covered derivative merchandise.  Absent sufficient security, however, CBP (and therefore the

13

taxpayers) may not be able to easily (if at all) collect monies that are ultimately determined to be owed.[3]

Finally, irreparable harm to CBP comes in the form of administrative costs that it will incur in attempting to recoup any money paid out. *See Ledbetter v. Baldwin*, 479 U.S. 1309, 1310 (1986).

The United States' concern that entries may not be fully secured or that CBP will not be able to collect duties should they become due is not speculative. While there is no data specific to unpaid Section 232 duties, the magnitude of unpaid or uncollectible duties is serious. For example, CBP reported that, as of fiscal year 2019, there were 65,000 unpaid antidumping and countervailing duty (AD/CVD) bills totaling $4.5 billion (principal and

---

[3] CBP has its own statutory authorities to require bonds and other forms of security. To avoid even the appearance that we are not complying with the judgment by requiring additional bonding relating to duties that this Court has found were imposed contrary to law, we request that the Court enter these security requirements as an explicit order. If the Court decides that an order to authorize CBP to deny entry absent sufficient bonding, as discussed above, is unnecessary, and that CBP already has sufficient authority and discretion to do so, then an order to suspend liquidation and to require PrimeSource to monitor its subject imports and forgone Section 232 duty deposits, and to terminate and replace its continuous importation bond when the amount of the forgone Section 232 duty deposits reaches the amount of the bond, minus the baseline amount calculated pursuant to CBP's general continuous bonding formula, would be sufficient.

interest) over a 25-year period.[4]  This significant debt owed to the United States cautions in favor of the modest security we request here.

Currently, the forgone Section 232 duty deposits for PrimeSource's subject imports have already surpassed the amount of potential Section 232 duty liability that the parties and the court intended PrimeSource's continuous importation bond to secure.  Based on PrimeSource's monthly volume of subject imports from the effective date of its current continuous importation bond, August 13, 2020, until June 1, 2021, PrimeSource may owe approximately $ [                ] per month in completely unsecured Section 232 duties, from now until the court's final judgment in this action and subsequent bills to PrimeSource, should the defendants prevail in this court action.  Lord Decl. ¶ 12.  Thus, unless the *status quo ante* prior to the entry of judgment on April 5, 2021 is reinstated pending appeal, the United States stands to lose potentially millions of dollars in lawful revenue should we ultimately prevail in this action.

Where the United States is a party, the balance of equities and the public interest tend to "merge."  *Nken*, 556 U.S. at 435.  For the same

---

[4]    Department of Homeland Security, Fiscal Year 2019 Report to Congress: Antidumping and Countervailing Duty Collection of Outstanding Claims (Oct. 27, 2019), *available at* https://www.dhs.gov/sites/default/files/publications/cbp_-_adcvd_collection_of_outstanding_claims_fy_2019_0.pdf

reasons as explained above, the public interest is served by maintenance of the *status quo* during any appeal. Protection of the public fisc is an important consideration in deciding whether to stay the enforcement of a judgment pending the resolution of an appeal. *See, e.g., Heraeus-Amersil, Inc. v. United States*, 1 C.I.T. 249, 270 (1985). The public has an interest in protecting the revenue of the United States and in assuring compliance with the trade laws. *See* 19 U.S.C. § 1623; *Am. Motorists Ins. Co. v. Villanueva*, 706 F. Supp. 923, 933 (Ct. Int'l Trade 1989). Indeed, "the protection of the public fisc is a matter that is of interest to every citizen." *Brock v. Pierce County*, 476 U.S. 253, 262 (1986). "'{P}rotecting the public fisc' is . . . a strong public interest." *Global Dynamics, LLC v. United States*, 138 Fed. Cl. 207, 211 (2018) (quoting *Furniture by Thurston v. United States*, 103 Fed. Cl. 505, 521 (2012)); *Cook v. United States*, 104 F.3d 886, 889 (6th Cir. 1997) (noting "the public interest at stake in effective and efficient enforcement of the national revenue laws").

Aside from protection of the fisc, the requested relief is in the public interest because "no governmental interest is more compelling than the security of the Nation." *Haig v. Agee*, 453 U.S. 280, 307 (1981). Any inability to collect Section 232 duties harms the domestic industry integral to the national security objectives that the tariffs were designed to protect.

16

Tariffs on steel and aluminum products were imposed because these products are "being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security of the United States." *Proclamation 9705 of March 8, 2018, Adjusting Imports of Steel Into The United States*, 83 Fed. Reg. 11,625, 11,626 ¶ 5 (Mar. 15, 2018); *Proclamation 9704 of March 8, 2018, Adjusting Imports of Aluminum Into the United States*, 83 Fed. Reg. 11,619 ¶ 4 (Mar. 15, 2018). President Trump further determined that application of tariffs to derivative products was "necessary and appropriate to address circumvention that is undermining the effectiveness of the adjustment of imports made" in the original actions on steel and aluminum imports and "to remove the threatened impairment of the national security of the United States found in those proclamations." *Proclamation 9980*, 85 Fed. Reg. at 5,283 ¶ 9.  If CBP cannot collect tariffs that may later be found to have been lawfully imposed, the objective of the Section 232 tariffs will be lost.

## III.    A Stay Will Not Substantially Injure Other Parties

Our limited request for relief will not prejudice the plaintiff. Suspending liquidation of its entries will promote administrative efficiency by eliminating the possibility that entries may have to be reliquidated.  At the end of the suspension of liquidation, PrimeSource's entries will be

liquidated in the ordinary course, with interest if appropriate, as provided for by law. Moreover, PrimeSource has not, and is not, required to deposit any estimated Section 232 duties on its subject derivatives entries, so reinstating the suspension of the liquidation of its subject entries will not result in any delay of any refunds to PrimeSource, as there is nothing to refund. Thus, the plaintiff will not suffer any prejudice by suspending liquidation during the pendency of the appeal.

Reinstating the full bonding requirement will not substantially injure PrimeSource. Maintaining the same bonding requirement that the parties and the Court had previously agreed would secure PrimeSource's undeposited Section 232 duties, should the Government ultimately prevail in this action and the duties become due, will not be a new burden, but rather is an extension of the parties' agreement through the finite duration of the appeal. This case is unlike *Transpacific Steel*, *LLC v. United States*, in which the Court found injury to the plaintiffs in the form of "continued denial of access to a substantial amount of capital" by delaying the return of duties already deposited. 474 F. Supp. 3d 1332, 1337 (Ct. Int'l Trade 2020). While sureties generally require a premium to maintain a bond, that premium generally represents the risk to the surety that the importer will not

18

pay assessed duties.  That risk of non-payment should not be transferred to the United States simply because we are exercising our right to appeal.

Moreover, our request is consistent with the expectations of the importing community that security or payment of duties are required, even while litigation is pending.  When a party challenges the determination or assessment of duties and fees in court, the importer does not generally obtain a refund of deposited tariffs or duties before a final conclusive determination by this Court.  For example, importers challenging CBP's denial of a protest must first pay "all liquidated duties, charges, or exactions."  28 U.S.C. § 2637(a).  Similarly, in cases brought pursuant to 28 U.S.C. § 1581(c), liquidation, once enjoined, remains suspended until there is a "conclusive court decision which decides the matter, so that subsequent entries can be liquidated in accordance with that conclusive decision."  19 U.S.C. § 1516a(e).  During this time, CBP retains estimated cash deposits.

To be sure, this case does not fit into either of these boxes.  This situation is unique in that PrimeSource is the only importer for which CBP cannot collect Section 232 duty deposits under Proclamation 9980, but which also is not currently required to monitor its foregone duty deposits and either replace its continuous bond once foregone duty deposits reach the

19

amount of the bond minus the baseline bond amount, or use single transaction bonds to cover the foregone duty deposit on each entry.

Our request to maintain some measure of security for protection of the fisc until the legality of Proclamation 9980 has been conclusively determined is entirely consistent with these processes.

## IV.   The United States Possesses A Likelihood Of Success On Appeal

We recognize that the Court has previously rejected our legal arguments in this case.  That is true by definition when a party seeks to stay an adverse judgment, and it does not preclude granting a motion to stay. Yet, the Court need not repudiate its own order to conclude that the likelihood of success criterion is met.  "Prior recourse to the {trial court} would hardly be required as a general matter if it could properly grant interim relief only on a prediction that it has rendered an erroneous decision."  *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc*., 559 F.2d 841, 844 (D.C. Cir. 1977).

It is enough to conclude that "substantial legal questions" exist.  *E.I. DuPont De Nemours & Co. v. Phillips Petroleum Co*., 835 F.2d 277, 278 (Fed. Cir. 1987); *see also Bohler-Uddeholm Corp. v. United States*, 23 C.I.T. 801 (1999) (recognizing that it ruled against the plaintiffs, the Court nevertheless holds that there are "serious and substantial questions for

appeal"); *Am. Grape Growers Alliance for Fair Trade v. United States,* 9

CIT 505, 507 (1985) (for purposes of determining whether a stay pending

appeal is warranted, "the likelihood of success of an appeal is a somewhat

anomalous factor ….").  To grant a stay pending appeal of the final

judgment does not require the Court to "adhere to so strict a standard as to

require showing that plaintiffs' position is likely to prevail on appeal."

*Fundicao Tupy S.A. v. United States*, 696 F. Supp. 1525, 1529 (Ct. Int'l

Trade 1988).

A "serious legal question exists when there are legal issues that

involve significant public concerns and impact federal and or state

relations." *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23-24 (5th

Cir. 1992); *see Project Vote/Voting for Am., Inc. v. Long*, 275 F.R.D. 473,

474 (E.D. Va. 2011) (granting stay, in part, because the "case {was} one of

first impression that touches on matters of substantial national importance");

*see also Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 240

F. Supp. 2d 21, 22 (D.D.C. 2003) (granting stay and noting that "although

the Court ultimately did not agree with defendants' position on the merits,"

the case involved "a novel and admittedly difficult legal question") (citation

and internal quotation marks omitted).

There is no doubt that the lawfulness of presidential action taken to address a national security threat meets this standard.  Moreover, the fact that one judge of this Court would have decided the issue in defendants' favor suggests that the likelihood of success criterion is met.  *E.I. DuPont de Nemours & Co*., 835 F.2d at 278 (finding a substantial legal question existed in light of the differing conclusions reached by Patent & Trade Office and the district court).

Without repeating the arguments made in our merits briefing, there is a likelihood that the Court of Appeals for the Federal Circuit could find Proclamation 9980 to be a valid exercise of the broad authority Congress granted the President in Section 232.  Neither this Court nor the parties questioned that, prior to 1988, Congress intended the President to exercise continuing authority under Section 232, *see* H.R. Rep. No. 745, 84th Cong. 1st Sess. 7 (1955); 101 Cong. Rec. 8160-61 (1955), and that the President, in fact, exercised that continuing authority over the course of years without returning to the Secretary of Commerce (or predecessor advisor) for a new investigation and report.

"It is not lightly to be assumed that Congress intended to depart from a long established policy."  *Robertson v. Railroad Labor Bd*., 268 U.S. 619, 627 (1925).  The appellate court may likely conclude that given the absence

of any indication in the legislative history or text of the 1988 amendments that Congress did not intend to withdraw the President's longstanding continuing authority to act.

Further, the appellate court may well conclude that the statutory periods for concurrence and implementation are not intended as temporal constraints on Presidential power to avert the threat of impairment to national security. That finding would be consistent with the Supreme Court's admonishment that "a statute directing official action needs more than a mandatory 'shall' before the grant of power can sensibly be read to expire when the job is supposed to be done," *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 161 (2003). The "failure of Congress specifically to delegate authority does not, 'especially . . . in the areas of foreign policy and national security,' imply 'congressional disapproval' of action taken by the Executive." *Dames & Moore v. Regan*, 453 U.S. 654, 678 (1981) (citation omitted); *Haig*, 453 U.S. at 291 ("in the areas of foreign policy and national security . . . congressional silence is not to be equated with congressional disapproval"). The appellate court may well conclude that the national security purpose of the statute, and the fluid nature of national security itself, further counsel against reading the time limits as a bar on the President's authority to adjust his selected measures.

23

<u>CONCLUSION</u>

For these reasons, we respectfully request that the Court enter an order for the pendency of the appeal: (1) staying the order to liquidate without assessment of Section 232 duties; (2) reinstating the order to suspend liquidation; and (3) reinstating the order for PrimeSource to continue to monitor its subject imports and foregone duty deposits, beginning on the effective date of its current continuous bond, and to terminate and replace its continuous importation bond once the amount of foregone duty deposits reaches the amount of the bond, minus the baseline bond amount as calculated pursuant to CBP's general continuous bonding formula, along with reinstating the express authorization for CBP to deny release to PrimeSource's entries once PrimeSource's foregone Section 232 duty deposits reached the amount of PrimeSource's current continuous bond, minus the baseline bond amount as calculated pursuant to CBP's general continuous bonding formula, until PrimeSource either terminated and replaced its continuous bond or used single transaction bonds in the amount of 100 percent of the value of the merchandise, plus 100 percent of the estimated duties, taxes, and fees, plus the foregone duty deposit on each entry.

24

Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/Tara K. Hogan
TARA K. HOGAN
Assistant Director
Civil Division
Commercial Litigation Branch
Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Tele: (202) 616-2228
Email: tara.hogan@usdoj.gov

June 4, 2021                          Counsel for Defendants

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to ¶ 2(b) of the Court's Standard Chambers Procedures, defendant's counsel certifies that this motion complies with the Court's type-volume limitation rules.  According to the word count calculated by the word processing system with which the memorandum was prepared, the brief contains a total of **4,877** words.

<u>s/ Tara K. Hogan</u>

June 4, 2021

26