## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, M. MILLER BAKER, JUDGES; THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE**

| | |
|---|---|
| **PRIMESOURCE BUILDING PRODUCTS, INC.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Ct. No. 20-00032** |
| ) | |
| **UNITED STATES, ET AL.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**PLAINTIFF PRIMESOURCE BUILDING PRODUCTS, INC.'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL STAY OF JUDGMENT TO MAINTAIN THE STATUS QUO PENDING APPEAL**

Jeffrey S. Grimson
Kristin H. Mowry
Jill A. Cramer
Sarah M. Wyss
Bryan P. Cenko
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
202.688.3610 (ph)
trade@mowrygrimson.com

June 25, 2021

## TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION AND LEGAL STANDARD......................................................................... 1

ARGUMENT ............................................................................................................................ 3

  I.   DEFENDANTS FAIL TO DEMONSTRATE THAT THEY ARE LIKELY TO
SUCCEED ON THE MERITS ............................................................................................. 3

  II.   DEFENDANTS FAIL TO DEMONSTRATE THAT THEY WILL SUFFER
IRREPARABLE HARM ..................................................................................................... 10

    A.  Irreparable Harm Cannot Exist Where the Court Can Order Reliquidation of
PrimeSource's Entries ........................................................................................................ 11

    B.  Defendants Offer No Evidence that PrimeSource Will Not Pay its Bills if its Entries Are
Liquidated During the Pendency of this Litigation ............................................................. 17

    C.  Conclusion....................................................................................................................... 20

  III.  DEFENDANTS FAIL TO DEMONSTRATE THAT GRANTING A STAY WILL
NOT CAUSE PRIMESOURCE SUBSTANTIAL HARM ................................................... 20

  IV.  DEFENDANTS FAIL TO DEMONSTRATE THAT GRANTING A STAY IS IN THE
PUBLIC INTEREST ........................................................................................................... 25

CONCLUSION....................................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

A.L.A. Schechter Poultry Corp. v. United States,
295 U.S. 495 (1935)..................................................................................................... 26

Agro Dutch Indus. Ltd. v. United States,
589 F.3d 1187 (Fed. Cir. 2009)............................................................................. 12, 13

Am. Grape Growers Alliance for Fair Trade v. United States,
9 CIT 505 (1985) ........................................................................................................... 5

Am. Signature, Inc. v. United States,
598 F.3d 816 (Fed. Circ. 2010).......................................................................... 12, 19

Am. Signature, Inc. v. United States,
Ct. No. 09-00400, slip op. 10-58 (Ct. Int'l Trade May 18, 2010) ............................... 12

Apple Inc. v. Samsung Elecs. Co.,
695 F.3d 1370 (Fed. Cir. 2012)........................................................................... 10, 18

Bohler-Uddeholm Corp. v. United States,
23 CIT 801 (1999) ......................................................................................................... 5

Comm. on the Judiciary v. McGahn,
407 F. Supp. 3d 35 (D.D.C. 2019) ...................................................................... 8, 9, 11

Doe v. Trump,
957 F.3d 1050 (9th Cir. 2020) ................................................................................... 1, 9

E.I. DuPont De Nemours & Co. v. Phillips Petroleum Co.,
835 F.2d 277 (Fed. Cir. 1987)............................................................................... 3, 4, 5

Fundicao Tupy S.A. v. United States,
12 CIT 813, 696 F. Supp. 1525 (1988) ......................................................................... 5

Gilda Indus., Inc. v. United States,
33 CIT 751, 625 F. Supp. 2d 1377 (2009) .................................................................. 13

Haig v. Agee,
453 U.S. 280 (1981)..................................................................................................... 26

Hilton v. Braunskill,
481 U.S. 770 (1987).............................................................................................. 2

In re Forty-Eight Insulations, Inc.,
115 F.3d 1294 (7th Cir. 1997) .....................................................................5, 6, 8

in re Section 301 Cases,
Ct. No. 21-00052, (Ct. Int'l Trade May 14, 2021)............................................. 2

Int'l Custom Prods. v. United States,
29 CIT 1105, 395 F. Supp. 2d 1291 (2005) ....................................................... 13

J. Conrad Ltd. v. United States,
__ CIT __, 457 F. Supp. 3d 1365 (2020) ........................................................... 12

Ledbetter v. Baldwin,
479 U.S. 1309 (1986)........................................................................................... 18

Maple Leaf Marketing v. United States,
No. 20-00125, 2021 Ct. Intl. Trade LEXIS 78 (June 22, 2021) ........................ 8

Munaf v. Geren,
553 U.S. 674 (2008).............................................................................................. 4

Nat'l Ass'n of Mfrs. v. U.S. Dep't of the Treasury,
No. 19-00053, 2020 Ct. Intl. Trade LEXIS 68 (May 15, 2020) .................. passim

Nat'l Fisheries Inst. Inv. v. U.S. Bureau of Customs and Border Prot.,
30 CIT 1838, 465 F. Supp. 2d 1300 (2006) ................................................. 10, 11

Nken v. Holder,
556 U.S. 418 (2009)..................................................................................... passim

NRDC, Inc. v. Ross,
__ CIT __, 348 F. Supp. 3d 1306 (2018) ......................................................... 27

NSK Corp. v. United States,
431 F. App'x 910 (Fed. Cir. 2011) ..................................................................... 2

Otter Prods., LLC v. United States,
__ CIT __, 37 F. Supp. 3d 1306 (2014) ........................................................... 11

PrimeSource Bldg. Prods. v. United States,
__ CIT __, 497 F. Supp. 3d 1333 (2021) ................................................................... 7

PrimeSource Building Products, Inc. v. United States,
Ct. No. 20-00032, 2021 Ct. Intl. Trade LEXIS 36 (Apr. 5, 2021) ........................................ passim

Shinyei Corp. of Am. v. United States,
355 F.3d 1297 (Fed. Cir. 2004) .......................................................................... 12, 13

Sumecht NA, Inc. v. United States,
923 F.3d 1340 (Fed. Cir. 2019) .......................................................................... 12, 13

Sunpreme Inc. v. United States,
892 F.3d 1186 (Fed. Cir. 2018) ........................................................................... 4, 16

Sunpreme Inc. v. United States,
No. 15-00315, 2017 Ct. Intl. Trade LEXIS 1 (Jan. 5, 2017) ........................................... 4, 11, 16

Transpacific Steel LLC v. United States,
__ CIT __, 466 F. Supp. 3d 1246 (2020) ................................................................. 7, 8

TransPacific Steel LLC v. United States,
__ CIT __, 474 F. Supp. 3d 1332 (2020) ............................................................... passim

TransPacific Steel LLC v. United States,
840 F. App'x 517 (Fed. Cir. 2020) ........................................................................ 2, 6

Virginian Ry. Co. v. United States,
272 U.S. 658 (1926) ......................................................................................... 1

Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.,
559 F.2d 841 (D.C. Cir. 1977) .............................................................................. 9

Wind Tower Trade Coal. v. United States,
No. 2013-1303, 2013 U.S. App. LEXIS 25987 (Fed. Cir. June 28, 2013) .............................. 2, 20

Winter v. NRDC, Inc.,
555 U.S. 7 (2008) ........................................................................................... 2

Zenith Radio Corp. v. United States,
710 F.2d 806 (Fed. Cir. 1983) ............................................................................. 13

iv

Zivotofsky v. Kerry,
135 S. Ct. 2076 (2015) ........................................................................................... 26

## Statutes

19 U.S.C. § 1501 ...................................................................................................... 19
19 U.S.C. § 1862 ........................................................................................................ 8
19 U.S.C. § 1514 ............................................................................................ 12, 13, 14
28 U.S.C. § 1581 ................................................................................................ passim

**INTRODUCTION AND LEGAL STANDARD**

Defendants seek a partial stay of judgment pending the appeal from this Court's determination in <u>PrimeSource Building Products, Inc. v. United States</u>, Ct. No. 20-00032, 2021 Ct. Intl. Trade LEXIS 36 (Apr. 5, 2021) ("<u>PrimeSource II</u>") declaring that "Proclamation 9980 {is} invalid as contrary to law and, on that basis, direct that the entries affected by this litigation be liquidated without the assessment of duties pursuant to Proclamation 9980, with refund of any deposits for such duty liability that may have been collected pursuant to Proclamation 9980." <u>Id.</u> at *13. Defendants request that this Court enter an order:

> (1) staying the requirement to liquidate PrimeSource Building Products, Inc.'s entries without the assessment of Section 232 duties provided for in Proclamation 9980 and reinstating the order to suspend liquidation, and (2) reinstating the requirement for PrimeSource to monitor its imports of merchandise covered by Proclamation 9980 and to maintain (and replace as needed) a sufficient continuous bond.

<u>See</u> Defs.' Mot. for Partial Stay of J. to Maintain that Status Quo Pending Appeal at 1-2 (June 4, 2021) (Nonconfidential Version), ECF No. 114 ("Defs.' Mot.").[1] According to defendants, their "request for relief will preserve the status quo ante and ensure that U.S. Customs & Border Protection (CBP) is able to bill for and collect the duties, should the defendants ultimately prevail on appeal." <u>Id.</u> at 2.

"A stay is not a matter of right . . . it is instead an exercise of judicial discretion." <u>Nken v. Holder</u>, 556 U.S. 418, 433 (2009); <u>see also</u> <u>Doe v. Trump</u>, 957 F.3d 1050, 1058 (9th Cir. 2020) ("A request for a stay pending appeal is committed to the exercise of judicial discretion." (citing <u>Virginian Ry. Co. v. United States</u>, 272 U.S. 658, 672 (1926)). To prevail on its motion for stay of judgment pending appeal, defendants must establish that: (1) they are "likely to succeed on the

---

[1] All references to the record are to the non-confidential version.

merits," (2) they "will be irreparably injured absent a stay," (3) a stay will not "substantially injure the other parties interested in the proceeding," and (4) the public interest favors the stay.  Nken, 556 U.S. at 434; see also Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Transpacific Steel LLC v. United States, 840 F. App'x 517, 519 (Fed. Cir. 2020) ("Transpacific III"); Nat'l Ass'n of Mfrs. v. U.S. Dep't of Treasury, No. 19-00053, 2020 Ct. Intl. Trade LEXIS 68, at *4 (May 15, 2020). "There is substantial overlap between these and factors governing preliminary injunctions . . . because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined."  Nken, 556 U.S. at 434 (citing Winter v. NRDC, Inc., 555 U.S. 7, 24 (2008)).  The last two factors are to be considered only once the movant satisfies the first two factors.  See Nken, 556 U.S. at 434–35.  "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion."  Id. at 433-34; see also Wind Tower Trade Coal. v. United States, No. 2013-1303, 2013 U.S. App. LEXIS 25987, at *3 (Fed. Cir. June 28, 2013); NSK Corp. v. United States, 431 F. App'x 910, 911 (Fed. Cir. 2011).

Here, defendants fail to demonstrate that they are likely to succeed on the merits of the appeal or will be irreparably injured absent a stay, or that a stay would not substantially injure PrimeSource or the public interest.  This Court, therefore, must deny defendants' motion for stay of judgment pending appeal.

Additionally, the Court should note that defendants here repeat a change in position—in the teeth of binding precedent — that defendants have espoused in the pending Section 301 litigation, namely, that the Court lacks the ability to reliquidate entries when rendering judgments in Section 1581(i) cases.  See Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. Limited to Suspension at 41, In re Section 301 Cases, Ct. No. 21-00052 (Ct. Int'l Trade May 14, 2021), ECF No. 304

("Defs.' 301 Opp.").  In opposing plaintiffs' request for injunctive relief limited to suspending liquidation in that Section 301 proceeding, defendants claimed that the unrecoverable monetary loss flowing from liquidation does <u>not</u> amount to irreparable harm—the polar opposite of arguments made in the current motion.  <u>See</u> <u>id.</u> at 35.  Where, as here, defendants' litigation position appears to change as the wind blows, it deserves no deference.  The government is not entitled to special equitable relief when its claim of irreparable harm is borne of its own self-interested decision to change position and challenge existing precedent.  This Court should deny the motion.

**ARGUMENT**

## I.  DEFENDANTS FAIL TO DEMONSTRATE THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS

Tellingly, defendants save whether they are likely to succeed on the merits for the very end of their motion seeking a partial stay of judgment pending appeal.  <u>See</u> Defs.' Mot. at 20-23.  There is no doubt that this was a deliberate choice given that defendants' arguments that the Federal Circuit may reverse any judgment by this Court and that this case presents "substantial legal questions" does not justify a stay for the reasons set forth below.  <u>See</u> <u>id.</u>

Defendants maintain that it is enough to establish that "substantial legal questions" exist to meet the likelihood of success threshold.  Defs.' Mot. at 20 (citing <u>E.I. DuPont De Nemours & Co.</u> <u>v. Phillips Petroleum Co.</u>, 835 F.2d 277, 278 (Fed. Cir. 1987)).  Importantly, defendants' reliance on <u>E.I. Dupont</u> is misplaced as the Court has twice held that the Federal Circuit's holding in <u>E.I. Dupont</u> has been further elucidated based on subsequent Supreme Court precedent.  Specifically, the Court has clarified that even if a substantial legal question satisfies the likelihood-of-success threshold, defendants "must still make a strong showing that a substantial legal question exists such that <u>success on appeal is likely</u>."  <u>Nat'l Ass'n of Mfrs</u>, 2020 Ct. Intl. Trade LEXIS 68, at *4

(citing E.I. DuPont, 835 F.2d at 278; Nken, 556 U.S. at 434) (emphasis added); see also Sunpreme Inc. v. United States, No. 15-00315, 2017 Ct. Intl. Trade LEXIS 1, at *11 (Jan. 5, 2017). In Sunpreme, the Court explained that the Federal Circuit in E.I DuPont "suggests that, despite an absence of likelihood of success on the merits, a substantial legal question will justify granting a stay if the movant demonstrates irreparable harm, that the public interest favors granting the stay, and a lack of harm to the non-movant." Sunpreme, 2017 Ct. Intl. Trade LEXIS 1, at *11.[2] The Court then explained that since the Federal Circuit's decision in E.I DuPont, the Supreme Court has held that "it is an abuse of discretion to grant a preliminary injunction because of difficult legal issues without even considering the likelihood of success on the merits." Id. (citing Munaf v. Geren, 553 U.S. 674, 690-91 (2008)). When reading Munaf and E.I. DuPont together, the Court concluded that it "must evaluate likelihood of success on the merits, but this criterion alone may not be determinative of whether or not to grant a stay." Id. In sum, the legal landscape has changed since the Federal Circuit's decision in E.I. Dupont such that the existence of a substantial legal question is no longer sufficient to meet the likelihood of success threshold in the stay-pending-appeal context.

This Court should find the interpretations of E.I DuPont in National Ass'n of Manufacturers and Sunpreme to be persuasive because in both cases the Court correctly interpreted

---

[2] The Court ultimately granted the stay in Sunpreme, holding that although "Defendant has failed to demonstrate a strong likelihood of success on the merits, the overwhelming irreparable harm posed by the probability that Defendant's appeal would be rendered moot by a failure to stay the court's order, the balance of the hardships tipping in favor of Defendant, and the strong public interest in ensuring appellate review of this important legal issue of first impression favor staying the court's order." Sunpreme, 2017 Ct. Intl. Trade LEXIS 1, at *16. As discussed in detail below, the Court's analysis concerning irreparable harm in that case is distinguishable from this action given that the Federal Circuit ultimately determined that the Court lacked jurisdiction over the action under 28 U.S.C. § 1581(i). See Sunpreme Inc. v. United States, 892 F.3d 1186, 1194 (Fed. Cir. 2018) ("Sunpreme CAFC").

later Supreme Court precedence in <u>Nken</u> and <u>Munaf</u>.  Further, the Court's interpretations of <u>E.I</u> <u>Dupont</u> in <u>National Ass'n of Manufacturers</u> and <u>Sunpreme</u> are consistent with the general understanding that a stay is an "'intrusion into the ordinary processes of administration and judicial review, and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the appellant.'"  <u>Nken</u>, 556 U.S. at 427 (internal citations omitted).  If courts were to grant a motion for stay of judgment pending appeal in every instance that a "substantial legal question" exists, then a stay would be the norm and not an "intrusion into the ordinary processes of administration and judicial review."  <u>Id.</u>  Similarly, the cases relied upon by defendants on this issue are equally outdated and, therefore, do not account for the Court's evolving understanding of the threshold that an applicant for a motion for stay of a judgment pending appeal must meet to establish likelihood of success on the merits.  <u>See</u> Defs.' Mot. at 20-21 (citing <u>Bohler-Uddeholm</u> <u>Corp. v. United States</u>, 23 CIT 801 (1999); <u>Fundicao Tupy S.A. v. United States</u>, 12 CIT 813, 816, 696 F. Supp. 1525, 1529 (1988); <u>Am. Grape Growers Alliance for Fair Trade v. United States</u>, 9 CIT 505 (1985)).

Concerning the threshold that defendants must meet to establish that they are likely to succeed upon appeal, "{i}t is not enough the chance of success on the merits be better than negligible."  <u>Nken</u>, 556 U.S. at 434 (internal quotation omitted).  Defendants, therefore, must "demonstrate a substantial showing of likelihood of success, not merely the possibility of success."  <u>In re Forty-Eight Insulations, Inc.</u>, 115 F.3d 1294, 1301 (7th Cir. 1997); <u>see also</u> <u>Nken</u>, 556 U.S. at 434 ("Even petitioner acknowledges that '{m}ore than a mere 'possibility' of relief is required.").  Whereas "in the preliminary injunction context, the applicant need only demonstrate that his chance of success on the merits at trial is 'better than negligible,' … in the context of a stay pending appeal, where the applicant's arguments have already been evaluated on the success

scale, the applicant must make a stronger threshold showing of likelihood of success to meet his burden." In re Forty-Eight Insulations, 115 F.3d at 1301.

In National Ass'n of Manufacturers, the Court concluded that the government failed to meet the likelihood of success threshold reasoning that its "attempt{s} to undermine the court's reasoning with the same arguments it made previously are no more persuasive now than they were then {in the underlying action}." Nat'l Ass'n of Mfrs., 2020 Ct. Intl. Trade LEXIS 68, at *5. Notably, in examining whether to grant a motion to stay on the similar legal questions at issue here, the Court concluded that the government had failed to establish a likelihood of success on the merits that Section 232 is not subject to mandatory time-constraints and the President acted outside of these limits. See Transpacific Steel LLC v. United States, __ CIT __, __, 474 F. Supp. 3d 1332, 1337 (2020) ("Transpacific II").[3] In Transpacific II, in finding the government had failed to persuade the Court that they were likely to succeed on the merits, the Court reasoned that "Defendants claim that the Court of Appeals might disagree with the court's reasoning . . . but point to no intervening authority or evidence that would raise substantial questions as to the proprietary of any of the court's holdings." Id. at __, 474 F. Supp. 3d at 1337. Here too, defendants continue to make the same arguments on the merits that were previously rejected by this Court. See Defs. Mot. at 20 ("We recognize that the Court has previously rejected our legal arguments in this case."). Specifically, defendants continue to argue that: (1) the President possesses continuing authority to act under Section 232, and (2) the time constraints in Section 232 were not intended to limit Presidential authority and must be read liberally given the President's expansive authority

---

[3] After their motion to stay was denied by the Court, defendants moved for a stay of the underlying judgment pending appeal in the Federal Circuit. The Federal Circuit also denied defendants' motion for stay of judgment pending appeal. Transpacific III, 840 F. App'x at 519 ("Based on the papers submitted, we conclude that the appellants have not established that a stay of the final judgment pending appeal is warranted here.").

in the realms of national security and foreign affairs.  See id. at 22-23.  This Court has already

rejected both arguments.  See PrimeSource Bldg. Prods. v. United States, __ CIT __, __, 497 F.

Supp. 3d 1333, 1343-59 (2021) ("PrimeSource I"); see also PrimeSource II, 2021 Ct. Intl. Trade

LEXIS 36, at *3-6.  Not only are defendants relying upon the same arguments that have already

been rejected by this Court, but they expressly waived the opportunity, as ordered by this Court,

to present additional evidence and related defenses to demonstrate "that Proclamation 9980 was

issued within the 105-day time period beginning on the President's receipt of a report qualifying

under {19 U.S.C. § 1862(b)(3)(A)}."  PrimeSource II, 2021 Ct. Intl. Trade LEXIS 36, at *10.

Defendants declined to submit any additional evidence and instead informed this Court that "there

is no reason for this Court to delay entry of final judgment."  Id. at *9.  Simply put, defendants

have made no new legal arguments and waived their right to provide any additional factual

evidence.

This Court should find the reasoning in National Ass'n of Manufacturers and Transpacific

II to be persuasive given the factual similarities between these two cases as well as the fact that

the court in Transpacific II examined the same legal issues.   Namely, those cases involved the

same set of facts and, in the case of Transpacific II, the same statutory scheme. Not only is the

reasoning in  these cases persuasive, but defendants' assertion that they are likely to succeed on

the merits on appeal is even weaker than the government's claims in National Ass'n of

Manufacturers and Transpacific II where both the Court and the Federal Circuit found that the

government had failed to meet the threshold for likelihood of success on the merits.   In

Transpacific Steel LLC v. United States, __ CIT __, 466 F. Supp. 3d 1246 (2020) ("Transpacific

I"), a separate three-judge panel reached the same conclusion that Presidential authority under

Section 232 is subject to certain mandatory time-constraints.   Id. at __, 466 F. Supp. at 1253

("Section 232 grants the President great, but not unfettered, discretion.").  The Court concluded in Transpacific I that the language of Section 232 is "clear" that the President must determine the nature and duration of any action that he will take within 90 days after receiving a report from the Secretary of Commerce and then the President has 15 days thereafter to implement this determination.  Id. at __, 466 F. Supp. 3d at 1252.  The Court then rejected the government's claims that it was likely to succeed on the merits in Transpacific II and, consequently, denied the government's motion for stay.  __ CIT at __, 474 F. Supp. 3d at 1338.  Since then, this Court reached the same conclusion that Section 232 is subject to the same mandatory time constraints in this action.  Defendants cannot credibly demonstrate that their chances of success on the merits are better than negligible when two separate panels have both ruled against defendants' position on the same ground.[4]  Cf. In re Forty-Eight Insulations, 115 F.3d at 1301 ("In addition, the procedural posture of this case raises the threshold hurdle one notch higher--two courts, not one, have concluded that the Claimants are unlikely to succeed in winning a reversal of the bankruptcy court's September 10 Order."); Comm. on the Judiciary v. McGahn, 407 F. Supp. 3d 35, 40-41 (D.D.C. 2019) (finding that success on appeal was "exceedingly low" where "{t}wo district court judges have now addressed each of DOJ's legal contentions on identical facts and both have reached the same conclusions").

---

[4] The Court's recent decision in Maple Leaf Marketing v. United States, No. 20-00125, 2021 Ct. Intl. Trade LEXIS 78 (June 22, 2021) is distinguishable from the present action.  There, the three-judge panel concluded that the President's subsequent actions "regarding the status of negotiations and further exemptions from Section 232" related to imports of steel and aluminum from Canada did not "implicate the statute's procedural safeguards."  Id. at *22.  Unlike the present action, which relates to 19 U.S.C. § 1862(b), Maple Leaf involved subsequent negotiations under 19 U.S.C. § 1862(c).  Id.  The Court concluded that 19 U.S.C. § 1862(c) provides the President with continuing authority to modify his initial action under Section 232 during ongoing negotiations. Id.  Such authority does not exist here where the President acted under 19 U.S.C. § 1862(b).

Here, the issue considered and resolved by two separate three-judge panels of the Court is at bottom exceedingly simple:  whether defendants must abide by statutorily mandated deadlines, count the allotted days, and then act accordingly.   Running afoul of the deadlines was wholly avoidable had defendants paid even minimal care to the boundaries placed on them by Congress. While defendants' intransigence here can be chalked up as litigation posturing, it cannot transform a routine task of counting the number of days allotted for action under a statute into a complicated issue raising a realistic risk that the Court has erred not once but twice, giving rise to a likelihood of success on appeal.   The opposite is true.

Finally, even taking defendants' claim that the existence of a substantial legal question alone is sufficient to pass this first threshold, defendants fail to demonstrate that this case involves such a question.   Although defendants assert that "lawfulness of presidential action taken to address national security threats" constitutes a substantial legal question, Defs.' Mot. at 22, "{s}imply calling an issue important—primarily because it involves the relationship of the political branches—does not transform the Executive's weak arguments into a likelihood of success or a substantial appellate issue." Comm. on the Judiciary v. Miers, 575 F. Supp. 2d 201, 204 (D.D.C. 2008).  Indeed, "a party seeking a stay pending appeal must 'raise{} questions going to the merits so serious, substantial, difficult{,} and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation'" McGahn, 407 F. Supp. 3d at 38 (quoting Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)). Other courts have previously declined to grant injunctions concerning similar issues of presidential authority.   See, e.g., Doe, 957 F.3d at 1056 (denying stay of injunction against a Presidential Proclamation "restricting family-sponsored immigrants from entering the United States without acquiring specified health insurance").   The fact that an issue relates to presidential authority by

itself cannot constitute a substantial legal question, otherwise granting a stay would become the norm and the Executive Branch could persistently delay or evade the consequences of judicial review.

In sum, defendants fail to demonstrate that they are likely to succeed on the merits because they have not provided any additional legal arguments that have not already been previously rejected by two separate three-judge panels of the Court and they fail to meet their burden that the question of whether the government is permitted to ignore a statutory time frame is so substantial that a stay pending appeal is necessary to protect the status quo.

## II.   DEFENDANTS FAIL TO DEMONSTRATE THAT THEY WILL SUFFER IRREPARABLE HARM

Turning to irreparable injury, defendants maintain that a stay which reinstates both the suspension of liquidation of PrimeSource's entries and the requirement that PrimeSource put in place a bond to cover its forecasted foregone duty deposits is necessary to "maintain the status quo ante and to ensure that public fisc is not irreparably harmed during the appeal."  Defs.' Mot. at 9. Given that a stay is not a matter of right, "simply showing some 'possibility of irreparable injury' is not enough to meet this second factor.  Nken, 556 U.S. at 434-35 (quoting Winter, 555 U.S. at 24 ("the 'possibility' standard is too lenient")).   This is especially the case as here where defendants' claims have already been rejected on the merits by a three-judge panel following full briefing.  Instead, as the parties seeking the stay, defendants "must make a clear showing that {they are} at risk of irreparable harm, which entails showing a likelihood of substantial and immediate irreparable injury."  Apple Inc. v. Samsung Elecs. Co., 695 F.3d 1370, 1374 (Fed. Cir. 2012) (emphasis added).  Irreparable harm exists where, absent a grant of the stay, "some harm will result to {them} that cannot be reasonably redressed in a court of law.'"  Nat'l Fisheries Inst., Inc. v. U.S. Bureau of Customs and Border Prot., 30 CIT 1838, 1848, 465 F. Supp. 2d 1300, 1310 (2006);

see also Otter Prods., LLC v. United States, __ CIT __, __, 37 F. Supp. 3d 1306, 1315 (2014)

(providing that harm cannot be reasonably redressed in a court of law when "no damages payment,

however great, can address it").[5]   Defendants argue that a stay is necessary because "once entries

are liquidated, any claim as to the correct duties owed on PrimeSource's entries could become

moot."  Defs.' Mot. at 9 (citing Sunpreme, 2017 Ct. Intl. Trade LEXIS 1, at *9-10).  Defendants'

concerns surrounding the finality of liquidation do not represent irreparable injury because: (1)

any harm can be addressed by this Court through the reliquidation of PrimeSource's entries, and

(2) defendants have offered no evidence that PrimeSource would not cooperate and pay its bills

upon reliquidation.

### A. Irreparable Harm Cannot Exist Where the Court Can Order Reliquidation of PrimeSource's Entries

First, defendants' claim that they "may be unable to assess and collect duties on entries that

liquidate during the pendency of the appeal," Defs.' Mot. at 10, does not represent irreparable harm

because such a claim is merely speculative in nature.  As a threshold matter "every stay-pending-

appeal request concerning injunctive relief that a lower court has ordered involves a risk that

interim compliance will moot the appeal; yet, courts have required more—i.e., that the injury

suffered be irreparable in nature—in order to substantiate the stay."  McGahn, 407 F. Supp. 3d at

42.  The harm alleged by defendants is not irreparable in nature because any potential concerns

surrounding the finality of liquidation can be readily addressed by this Court.  See Nat'l Fisheries,

30 CIT at 1848, 465 F. Supp. 2d at 1310.  Defendants' claim that they may be unable to collect

duties on final liquidated entries under 19 U.S.C. § 1514(a), see Defs.' Mot. at 12, is purely

---

[5] Although these cases involve preliminary injunctions, the same standard applies here as "there is
substantial overlap between {motions to stay} and factors governing preliminary injunctions."
Nken, 556 at 434.

speculative at this stage given that it is well established that this Court has the inherent authority in a case falling under 28 U.S.C. § 1581(i) jurisdiction to enforce its own judgments by ordering the reliquidation of any entries that may later become subject to Section 232 duties.  See Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1311-12 (Fed. Cir. 2004).

In Shinyei, the Federal Circuit found that finality of liquidation under 19 U.S.C. § 1514 does not "preclude judicial enforcement of court orders after liquidation."  Id. at 1312. Accordingly, the Federal Circuit held that a "challenge to Commerce instructions as failing to follow a {CIT} order . . . {is} not mooted by liquidation of entries as a result of those instructions." Id.  This principle has been adopted by the Federal Circuit and the Court in numerous past cases. See, e.g., Sumecht NA, Inc. v. United States, 923 F.3d 1340, 1347 (Fed. Cir. 2019) ("Even in the absence of an order suspending liquidation, it is likely that the court would be able to reliquidate any improperly liquidated entries under its equitable powers."); Am. Signature, Inc. v. United States, 598 F.3d 816, 830 (Fed. Circ. 2010) (finding that "under Shinyei, the deadline is inapplicable if reliquidation is ordered by a court");[6] Agro Dutch Indus. Ltd. v. United States, 589 F.3d 1187, 1992 & n.1 (Fed. Cir. 2009) ("{W}e believe that when liquidation violates an injunction, not only does the trial court retain jurisdiction, but a broad array of remedies (including reliquidation) is available to the court to rectify the unlawful liquidation."); J. Conrad Ltd. v. United States, __ CIT __, __, 457 F. Supp. 3d 1365, 1379 (2020)  ("In a case such as this one, which involves neither a protestable decision by Customs nor an action arising under 19 U.S.C. §

---

[6] After the Federal Circuit's decision in American Signature, the CIT issued an order that included reliquidation of entries.  See Judgment at 2 (May 18, 2010), Am. Signature, Inc. v. United States, Ct. No. 09-00400, slip op. 10-58, ECF No. 84 (ordering that "Defendant, the United States, together with the delegates, agents, servants, and employees of Commerce and Customs shall reliquidate {Plaintiff's} subject entries in accordance with the Second Amended Final Results that were unlawfully liquidated at incorrect rates").

1516a, the finality of the entries' liquidation attaching according to 19 U.S.C. § 1514 is no bar to the Court's ordering appropriate relief."); Gilda Indus., Inc. v. United States, 33 CIT 751, 760, 625 F. Supp. 2d 1377, 1385 (2009), aff'd 622 F.3d 1358 (Fed. Cir. 2010) (ordering U.S. Customs and Border Protection ("CBP") to reliquidate entries with refunds, and holding that "reliquidation is not prohibited where a decision of Customs is not being challenged"); Int'l Custom Prods. v. United States, 29 CIT 1105, 1109, 395 F. Supp. 2d 1291, 1295 (2005) ("Absent a stay pending appeal, a court retains jurisdiction to supervise its judgments and enforce its orders.").

While the Court's authority to reliquidate entries that have already liquidated may be unavailable outside of the context of a § 1581(i) jurisdictional case, the broad holding in Shinyei has been repeatedly upheld in the context of § 1581(i) cases. Compare Zenith Radio Corp. v. United States, 710 F.2d 806, 810 (Fed. Cir. 1983) (holding that in a case under 28 U.S.C. § 1581(c), "{t}he statutory scheme has no provision permitting reliquidation in this case or imposition of higher dumping duties after liquidation if Zenith is successful on the merits"), with Agro Dutch, 589 F.3d at 1191-92 (interpreting the holding in Shinyei as declining "to find that the statute {imposing finality upon liquidations} as a whole was intended to preclude judicial enforcement of court orders after liquidation" (quoting Shinyei, 355 F.3d at 1312)) and Sumecht, 923 F.3d at 1347 ("In Shinyei . . . we recognized that the {court}'s equitable powers allowed it to order reliquidation in a § 1581(i) action."). Indeed, the Federal Circuit in Agro Dutch clarified that the "while the Zenith rule ordinarily renders moot court actions in which liquidation has already occurred, we have acknowledged that there are exceptions to that general rule." 589 F.3d at 1191. More recently, in Sumecht, the Federal Circuit "recognized that th{is Court}'s equitable powers allowed it to order reliquidation in a § 1581(i) action." 923 F.3d at 1347. Finally, this Court itself agreed in its underlying judgment that it possess the authority to order the reliquidation of PrimeSource's

entries by ordering that "should any entries of PrimeSource's merchandise at issue in this litigation have liquidated with the assessment of 25% duties pursuant to Proclamation 9980, PrimeSource is entitled to reliquidation of those entries and a refund of any duties deposited or paid, with interest as provided by law." PrimeSource II, 2021 Ct. Intl. Trade LEXIS 36, at *13.  In sum, in a case filed under 28 U.S.C. § 1581(i), like the present action, the provision under 19 U.S.C. § 1514(a) that makes liquidation final for CBP is not applicable where a decision of CBP is not at issue and the court can order reliquidation using its equitable powers.

Defendants' claim of irreparable harm from liquidation is entirely self-inflicted:  contrary to its prevailing precedent and recent practice, the government no longer views this Court as possessing the inherent authority to order the reliquidation of entries in accordance with its judgment in a case brought pursuant to 28 U.S.C. § 1581.  See Defs.' Mot. at 10, n.8.  Defendants themselves acknowledge that "in three recent cases, the Government, relying on {Shinyei}, represented that reliquidation of otherwise final entries is available in appropriate circumstances in a case brought pursuant to 28 U.S.C.  § 1581(i)."  Defs. Mot. at 10 (citing Defs.' Resp. to Pls.' Mots. For Prelim. Inj. at 3, J. Conrad Ltd. v. United States, Ct. No. 20-00052 (Ct. Int'l Trade Apr. 13, 2020) (Unsealed Confidential Document), ECF No. 56 ("{W}e believe that reliquidation resulting in a refund of deposited duties plus interest is available to plaintiffs who prevail in actions brought pursuant to 28 U.S.C. § 1581(i)")); see also Br. for Def.-Appellee at 25, Sumecht NA, Inc. v. United States, Ct. No. 2019-1015 (Fed. Cir. Jan. 16, 2019) ("{W}e have represented unequivocally that, should Sumec prevail on the merits of this case, the trial court has the power to grant Sumec relief, including the authority to order the Government to reliquidate Sumec's entries"); Def.'s Mot. to Dismiss and Opp. to Prelim. Req. for Injunctive Relief at 36, Severstal Exp. GmbH v. United States, Ct. No. 18-57 (Ct. Int'l Trade Mar. 28, 2018) (Nonconfidential

Version), ECT No. 30 ("Should plaintiffs prevail on the merits, the Court may direct the Government to refund, liquidate, or reliquidate covered entries without the Section 232 tariffs."). Indeed, in their opposition to Plaintiffs' motion for preliminary injunction, which was limited to suspension in the related challenge to the imposition of Section 301 tariffs ("Section 301 case"), defendants similarly recognized that Shinyei is "binding precedent." Defs.' 301 Opp. at 36. Importantly, defendants noted that their change in posture was the result of the "magnitude" of the Section 301 case. See id. at 36 ("However, given the magnitude of the section 301 trade program and the number of Government stakeholders involved, as well as the significance of the section 301 litigation, we have taken a close look at the issue of the availability of reliquidation under Shinyei."). Defendants' concerns over the magnitude of potential relief available in the related Section 301 case cannot justify their complete about face on this issue, as defendants admit, the availability of Shinyei relief in cases brought under 28 U.S.C. § 1581 remains good law and is binding precedent upon this action. The enormity of defendants' potentially illegal duty demands in the Section 301 context cannot function to frustrate plaintiffs' ability to be made whole in proceedings before this Court or to justify defendants' request for a stay pending appeal in this case.

The absurdity of defendants' position that Shinyei relief is unavailable in this action, thereby causing irreparable harm because CBP will be unable to collect Sections 232 duties on any of PrimeSource's entries that have liquidated, is illustrated by the fact that the government made the exact opposite argument in the Section 301 appeal. In the Section 301 appeal, while acknowledging that Shinyei remains binding precedent, the government nonetheless argued that "regardless of whether reliquidation is available, the harm factor still does not weigh in Plaintiffs' favor." Defs.' 301 Opp. at 35. Defendants cannot have it both ways – it cannot claim here that

irreparable harm exists based on the possibility that PrimeSource's entries may liquidate during the litigation but make the exact opposite argument in a separate action on motions for injunctive relief pending before the Court at the same time. Defendants' inconsistency on this issue also disregards Federal Circuit precedent, which held that the Court "did not commit legal error in determining that the availability of reliquidations means that {Plaintiff} failed to demonstrate irreparable harm." Sumecht, 923 F.3d at 1347. Irreparable harm, therefore, does not exist here where this Court can order reliquidation of PrimeSource's entries if the Federal Circuit reverses its judgment.

Moreover, the facts of this care are distinguishable from Sunpreme, the sole case that defendants rely on for the proposition that "once entries become liquidated, any claim as to the correct duties owed on PrimeSource's entries could become moot." Defs.' Mot. at 9. As described above, the court in Sunpreme determined that although Defendant "had failed to demonstrate a strong likelihood of success on the merits, the overwhelming irreparable harm posed by the probability that Defendant's appeal would be rendered moot by a failure to stay the court's order," and, accordingly, granted the motion for stay. Sunpreme, 2017 Ct. Intl. Trade LEXIS 1, at *15-16. Although the court's analysis of the likelihood of success prong remains applicable to this action, its analysis on irreparable harm is distinguishable because it turned upon the underlying grant of jurisdiction. Even though the Court action in Sunpreme was brought under § 1581(i) jurisdiction, that case challenged a determination by CBP involving the type of issue more typically addressed under 1581(a) or 1581(c) jurisdiction, where Shinyei relief is not certain. This is evidenced by the fact that the Federal Circuit ultimately dismissed Sunpreme because the Court lacked jurisdiction to hear Sunpreme' s claims." Sunpreme CAFC, 892 F.3d at 1188. The Federal Circuit determined that Sunpreme failed to exhaust its administrative remedies by not seeking a

scope ruling from the Department of Commerce.  Id. at 1194.  As jurisdiction was available under

28 U.S.C. 1581(c), the court lacked jurisdiction to hear the case under 28 U.S.C. § 1581(i).  The

court's focus on the finality of liquidation in its decision in Sunpreme cited by defendants does not

support the concept of liquidation as irreparable harm in 1581(i) cases but rather foretold the

jurisdictional flaw in the case as the Federal Circuit found that jurisdiction was proper under §

1581(c).   Defendants' citation to the court's decision in Sunpreme, therefore, ultimately cuts

against defendants' position in that (1) the court's holding on irreparable harm was reversed, and

(2) the Federal Circuit's decision is yet another instance that consistently maps out the distinction

between cases under § 1581(i), where reliquidation is available, and § 1581(c) where it may not

be available and, therefore, could cause irreparable harm.

In sum, this Court's authority to order the reliquidation of PrimeSource's entries if the

Federal Circuit reverses its judgment belies any concerns by defendants that they may be

irreparably harmed if they are unable to collection Section 232 duties on PrimeSource's entries

that have liquidated during the pendency of this litigation.

### B. Defendants Offer No Evidence that PrimeSource Will Not Pay its Bills if its Entries Are Liquidated During the Pendency of this Litigation

Secondly, defendants' bald assertion that a bond is necessary to "mitigate the risk to the

United States of potentially millions of dollars in revenue loss," Defs.' Mot. at 10, lacks merit

where defendants fail to offer any evidence that PrimeSource will not cooperate and pay any duties

that it may retroactively owe if the Federal Circuit reverses this Court's judgment.  Defendants

spend several pages of their motion quantifying the magnitude of unpaid or potentially

uncollectible duties generally and the approximate monthly total of Section 232 duties that

PrimeSource would have owed had Proclamation 9980 not been struck down as contrary to law.

See Defs.' Mot. at 14-15.  This focus is merely a smokescreen to hide from the relevant question

- can defendants establish a "likelihood of <u>substantial</u> and <u>immediate</u> irreparable injury?" <u>Apple</u>, 694 F.3d at 1374 (emphasis added).  Defendants provide no evidence that PrimeSource would be uncooperative and fail to pay its bills if the Federal Circuit reverses this Court's judgment.  The fact that PrimeSource fully complied with this Court's injunction order is indicative of the opposite, that it will continue to be cooperative and pay its bills on time.

Similarly, defendants' claim that CBP may suffer irreparable harm "in the form of administrative costs that it will incur in attempting to recoup any money paid out," Defs.' Mot. at 14 (citing <u>Ledbetter v. Baldwin</u>, 479 U.S. 1309, 1310 (1986)), also represents the type of speculative harm that cannot represent substantial and immediate irreparable injury.  <u>See</u> <u>Apple</u>, 694 F.3d at 1374.  Defendants' reliance on <u>Ledbetter v. Baldwin</u> is inapposite here because in that case the Court determined that "there is a significant possibility that the Court will reverse the lower court's decision in this case." 479 U.S. at 1310.  By contrast, defendants here have failed to provide sufficient proof that there is a likelihood that the Federal Circuit will reverse this Court's judgment such that CBP will face an administrative burden of collecting unpaid Section 232 duties.  Again, the burden is on defendants to show that the circumstances justify a stay.  <u>See</u> <u>Nken</u>, 556 U.S. at 433-34.  Defendants cannot meet this burden when the possibility of administrative costs is purely speculative on the likelihood that they will succeed on the merits, which is unlikely where defendants rely upon the same arguments rejected by this Court and another panel.  Moreover, defendants have failed to justify such administrative costs – if any – as outside the normal course of business of CBP's operations.  Indeed, defendants cite to no prior case where the very act of sending bills has constituted a substantial burden on the Defendant.  If anything, if such a burden were cognizable, then it is matched and negated by the burden already incurred by PrimeSource

in complying with the terms of the injunction when this Court ultimately held that defendants' challenged actions were unlawful.

PrimeSource acknowledges that the Court has previously held that "any potential for irreparable harm to the government is avoided by a much narrower form of relief – suspension of liquidation." Nat'l Ass'n of Mfrs., 2020 Ct. Intl. Trade LEXIS 68, at *6; see also Transpacific II, __ CIT at __, 474 F. Supp. 3d at 1337 ("Nonetheless, to alleviate Defendants' concern that the unliquidated entries may liquidate before the Court of Appeals renders its decision, . . . the court will sua sponte order the suspension of liquidation of any unliquidated entries of subject merchandise pending final and conclusive disposition of Transpacific II, including all appeals." (internal citation omitted)).  To date, because of the Court's prior injunctive relief, PrimeSource is not aware that any entries where Section 232 duties were foregone have liquidated.

Defendants' claim of irreparable harm fails to consider its statutory authority to reliquidate entries within 90 days of liquidation.  See 19 U.S.C. § 1501.  Furthermore, that 90-day reliquidation provision can be tolled pending a final decision in defendants' appeal, such that entries that liquidate in the normal course can be reliquidated under defendants' existing statutory authority. See Am. Signature, 598 F.3d at 830 (finding no irreparable harm where appellant waived "any defense it might otherwise have against reliquidation of {the applicable} entries pursuant to 19 U.S.C. § 1501 based on the expiration of the 90-day period for reliquidation" (internal quotations omitted)).  Defendants fail to cite to the Federal Circuit's decision in American Signature despite its discussion of the availability of reliquidation in cases grounded in § 1581(i) jurisdiction. Having overlooked important precedent of the Federal Circuit, defendants also failed to follow a viable roadmap for protecting defendants' interests as discussed in that case.  Defendants' claim

19

of irreparable harm – even if valid – is entirely self-inflicted, a factor that the Court should view as disqualifying where defendants move for this Court to exercise its equitable powers.

In sum, defendants fail to demonstrate that they will be irreparably harmed where they have submitted no evidence demonstrating that PrimeSource will not pay its bills if they come due upon a potential reversal of this Court's judgment by the Federal Circuit.

### C. Conclusion

For these reasons, defendants fail to demonstrate that they will be irreparably harmed if this Court denies their motion for stay of judgment pending appeal because this Court can merely order reliquidation of PrimeSource's entries. Defendants provide no evidence that PrimeSource will not cooperate and pay their bills if their entries are reliquidated.

## III. DEFENDANTS FAIL TO DEMONSTRATE THAT GRANTING A STAY WILL NOT CAUSE PRIMESOURCE SUBSTANTIAL HARM

"The first two factors of the traditional standard are the most critical." Nken, 556 U.S. at 434; see also Wind Tower, No. 2013-1303, 2013 U.S. App. LEXIS 25987, at *3.   Nonetheless, this Court must also deny defendants' motion for stay of judgment pending appeal because granting defendants' motion will substantially harm PrimeSource given that it must pay a new premium with its surety every time it must put in place a new bond to cover its estimated Section 232 deposits.  Such a premium is based on the (elevated) face value of the bond, meaning that PrimeSource will never get back expenditures related to carrying a high continuous bond to secure defendants for duties that this Court has decided the government has no right to require.  Granting defendants' motion for stay of judgment pending appeal, therefore, will cause substantial harm to PrimeSource.

Defendants frame their motion from its very title as necessary to "maintain the status quo." See Defs.' Mot at Cover.  Defendants posit that only the government, and not importers, will suffer

irreparable harm if liquidation occurs.  Defendants stress that "reinstating the full bonding requirement will not substantially injure" PrimeSource, but then later acknowledges that "sureties generally require a premium to maintain a bond." Defs.' Mot at 18.  Throughout the pendency of this litigation, PrimeSource has had to twice put in place a new continuous bond.  See Order (Feb. 13, 2020), ECF No. 40 (Nonconfidential Version) ("ORDERED that PrimeSource Building Products, Inc. shall, within 5 business days of the date of this Order terminate its existing continuous bond and replace it with a continuous bound with a total limit of liability . . . to reflect the additional Section 232 duties PrimeSource anticipates it would otherwise have had to deposit over the next prospective sixth month period"); Joint Status Report at 2 (Aug. 12, 2020), ECF No. 95 (Nonconfidential Version) (noting that "the parties came to an agreement that PrimeSource would terminate its current continuous bond and replace it in the amount of . . . to cover future Section 232 duty deposits foregone between August 2020 and February 2021").  In both instances, PrimeSource was required to pay a new premium with its surety.  This is money that PrimeSource will never recover even if this Court's opinion is sustained upon appeal.  Further, even the suspension of liquidation will cause substantial harm to PrimeSource.  Suspension of liquidation prolongs the life of a continuous bond such that the bond secures entries for longer periods of time. This is the equivalent of having to open more lines of credit or loans in that an extended continuous bond counts against a company's ability to secure credit in a way that has a temporal drag on the importer's business operations that cannot be remedied even if it is later released.  In short, on top of the premium paid to the surety, having entries open for a much longer period of time saddles the importer with an overhanging credit obligation for a longer time.  For these reasons, defendants' motion for stay of judgment pending appeal will not retain the status quo, contrary to the title of its motion, but will cause actual harm to PrimeSource.

Once again, the facts here are analogous to <u>National Ass'n of Manufacturers</u> where the court held that, in contrast to the "government's speculative claims of harm, granting a stay of judgment will cause opposing parties <u>certain harm</u> should this court's judgment be affirmed." <u>Id.</u>, 2020 Ct. Intl. Trade LEXIS 68, at *7 (emphasis added).  In <u>National Ass'n of Manufacturers</u>, the court explained that it had found in the underlying action relevant to the request for stay that "certain regulations affecting duty drawback were inconsistent with the animating statute." 2020 Ct. Intl. Trade LEXIS 68, at *2 (internal citation omitted).  The court concluded that in "flout{ing} their statutory obligations to promulgate regulations in a timely fashion, which . . . resulted in some drawback claims remaining unprocessed for years," the government had "adversely impact{ed} the working capital of claimants." <u>Id.</u> at *8.  In other words, the delay in processing drawbacks claims had a negative financial impact on plaintiffs. <u>Id.</u>  This Court should find the reasoning in <u>National Ass'n of Manufacturers</u> persuasive as the facts in that case are directly analogous to the present action.  Here too, although defendants are correct that PrimeSource is not required to deposit any estimated Section 232 duties, the irrecoverable premium it would be required to pay its surety to put in place an elevated new bond would negatively impact PrimeSource's working capital and credit obligations.  <u>Id.</u> at *9 (holding that the "harm to claimants' working capital and other financial consequences weighs against a stay."); <u>see also</u> <u>Transpacific II</u>, __ CIT at __, 474 F. Supp. 3d at 1337 (finding that "Plaintiffs would suffer the continued denial of access to a substantial amount of capital" if the Court granted the government's motion for stay).

While acknowledging the harm facing PrimeSource if this Court grants its motion for stay of judgment pending appeal, defendants nonetheless maintain that "risk of non-payment should not be transferred to the United States." Defs.' Mot. at 19.  While defendants' assertion may be true for a preliminary injunction under Rule 65 of the Rules of the CIT, the calculus has now

changed following this Court's holding that Presidential Proclamation 9980 imposing Section 232 tariffs on steel derivative products was invalid and contrary to law.  See PrimeSource II, 2021 Ct. Intl. Trade LEXIS 36, at *13.  USCIT Rule 65(c) provides that "{t}he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Id. (emphasis added).  By contrast, USCIT Rule 62(d), the equivalent rule relevant to motions for a stay of proceedings to enforce a judgment, sets forth that "the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Id. (emphasis added).  The requirement for a bond when issuing an injunction (i.e., "only if") as compared the discretion afforded this Court (i.e., "may") when issuing a motion to stay exists for this exact scenario.  Defendants claim that its "request is consistent with the expectations of the importing community that security or payment of duties are required, even while litigation is pending," Defs.' Mot. at 19, is inapposite where the Court has reached a final judgment.  It is unreasonable to grant a motion for stay of judgment pending appeal where it would cause substantial harm to the opposing party by forcing it to pay a premium to maintain a bond once defendants' actions have been found to be illegal.

The burden has now shifted to defendants to demonstrate that the irreparable harm they face outweighs the harm demonstrated above that PrimeSource would face if this Court grants defendants' motion for stay of judgment pending appeal.  See Transpacific II, __ CIT at __, 474 F. Supp. 3d at 1337 (holding that "the balance of harms does not weigh in favor of granting a stay").  Defendants argue the bonding requirement "will not be a new burden, but rather is an extension of the parties' agreement through the finite duration of the appeal."  Defs.' Mot. at 18. It is irrelevant to this Court's analysis whether it is a continuing burden; the relevant question is

instead whether there is any burden to PrimeSource that would result from granting defendants' motion for stay of judgment pending appeal. Defendants provide no explanation for justifying the harm that PrimeSource will incur if their motion for stay of judgment pending appeal is granted. Instead, much like in Transpacific II, "defendants speculate about Plaintiffs' solvency and ability to pay back the refunded duties should defendants win on appeal; yet, defendants acknowledge that they are unaware of any specific financial circumstances of any of the {Plaintiffs}." Transpacific II, __ CIT at __, 474 F. Supp. 3d at 1337 (internal quotations omitted). As explained above, defendants provide no support for their contention that PrimeSource would not pay the required Section 232 duties if the Federal Circuit were to reverse this Court's judgment. Defendants point to no instance where PrimeSource has failed to pay import duties owed to the government. Purely speculative harm cannot outweigh the actual harm, i.e., the payment of a premium to a surety, that PrimeSource would suffer from if this Court grants defendants' motion for stay of judgment pending appeal. Id. (holding that purely speculative claims of harm cannot outweigh actual harm where Plaintiffs are denies "access to a substantial amount of capital").

Finally, as discussed above in Section II, defendants' claim that "{s}uspending liquidation of {PrimeSource's} entries will promote administrative efficiency by eliminating the possibility that entries may have to be reliquidated," Defs.' Mot. at 17, in one breath acknowledges the Court's authority to order reliquidation and at the same time entirely shifts all burdens to PrimeSource, including the burdens already suffered that are and will continue to be incapable of remediation by the Court, as explained above. This is the case even though PrimeSource was the prevailing party in this lawsuit. Defendants' ill-developed "administrative burden" theory amounts to a claim that the act of defendants doing their normal job is a harm warranting extraordinary equitable relief. Defendants' claim fails.

24

For the reasons set forth above, defendants' purely speculative claims cannot outweigh the substantial harm, i.e., the larger credit obligations caused by the suspension of liquidation combined with the payment of a premium that is required by PrimeSource to secure a new bond, if this Court grants defendants' motion for stay of judgment pending appeal. This factor, therefore, weighs heavily in denying defendants' motion.

## IV.   DEFENDANTS FAIL TO DEMONSTRATE THAT GRANTING A STAY IS IN THE PUBLIC INTEREST

The public interest weighs in favor of denying defendants' motion for stay of judgment pending appeal. Defendants' arguments that the public interest favors protecting the government's interest in its own revenue and its interest in addressing foreign affairs cannot pass muster where defendants violated a direct Congressional mandate that the President can only act under Section 232 within certain mandatory time-constraints. The President's concerns for the revenue in this matter flow directly from the authority to impose import duties delegated by Congress to the President – authority that Congress cabined with explicit time requirements that defendants here violated. Any interest defendants may assert in protecting the revenue in this context is secondary to the public has a greater interest in ensuring the lawful operation of our Constitutional separation of powers.

Defendants assert that "public interest is served by maintenance of the status quo" to "protect{} the revenue of the United States." Defs.' Mot. at 16. PrimeSource does not discount that "public interest is served by the protection of the public fisc." Nat'l Ass'n of Mfrs., 2020 Ct. Intl. Trade LEXIS 68, at *9; see also Defs.' Mot. at 16. Defendants, however, fail to consider that the public interest is "also served by the timely execution and adherence to our laws." Nat'l Ass'n of Mfrs., 2020 Ct. Intl. Trade LEXIS 68, at *9; see also Am. Signature, Inc., 598 F.3d at 830 (holding that public interest favors that "governmental bodies comply with the law and interpret

and apply trade statutes uniformly and fairly").  Any concerns over protecting the revenue of the United States are rendered moot if the government never had a claim to that revenue in the first instance.  Here, this Court found that the "President issued Proclamation 9980 after the congressionally-delegated authority to adjust imports of the products addressed in that proclamation had expired, Proclamation 9980 was action outside of delegated authority." PrimeSource II, 2021 Ct. Intl. Trade LEXIS 36, at *12.  Accordingly, this Court held that "PrimeSource is entitled to a declaratory judgment that Proclamation 9980 is invalid as contrary to law."  Id.  As defendants had no claim to Section 232 duties that would have been collected, the public interest favors compliance with the law as written by Congress. Further, as noted above, defendants' concerns regarding the fisc are purely speculative in nature as it has failed to provide any evidence that PrimeSource would not pay its bills if this Court were to order reliquidation following a potential reversal of its judgment by the Federal Circuit.

Further, defendants argue that "the requested relief is in the public interest because 'no governmental interest is more compelling than the security of the nation."  Defs.' Mot. at 16 (quoting Haig v. Agee, 453 U.S. 280, 307 (1981)).  Although extraordinary conditions, such as national security, do come with heightened deference, these concerns "do not create or enlarge constitutional power."  A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 528 (1935); see also Zivotofsky v. Kerry, 135 S. Ct. 2076, 2090 (2015) (explaining that "whether the realm is foreign or domestic, it is still the Legislative Branch, not the Executive Branch, that makes the law.").  As Chief Justice Hughes explained in Schecter, "those who act under these grants are not at liberty to transcend the imposed limits because they believe that more or different power is necessary."  Schecter, 295 U.S. at 528-29.  This Court determined that the President exceeded his delegated authority under Section 232 by implementing Section 232 tariffs on steel derivatives

outside of the statute's mandatory time-frame to act.  See PrimeSource II, 2021 Ct. Intl. Trade

LEXIS 36, at *12.  Defendants cannot now hide behind the veil of national security given that the

President over-stepped the authority delegated to him under Section 232 – a statute deliberately

drafted by Congress to address national security concerns.

Indeed, the Court has previously rejected the same argument by the government that

concerns surrounding foreign relations justify granting a motion for stay of judgment pending

appeal when the government was found to have exceeded the authority delegated to it by Congress.

See NRDC, Inc. v. Ross, __ CIT __, __, 348 F. Supp. 3d 1306, 1314 (2018) (holding that "the

Government has not met its burden for stay of the preliminary injunction pending appeal").   In

NDRC, the Court concluded that government had not met its burden for a stay where the

government failed to follow its Congressional mandate to ban the imports of certain fish as

required under the Marine Mammal Protection Act ("MMPA").  See id. at __, 348 F. Supp. 3d at

1309-10.  The Court noted that it was "implausible that in enacting {the MMPA}, {that} Congress

was blind to the reality that embargoes may have an impact on foreign relations."  Id. at __, 348

F. Supp. 3d at 1310.  Accordingly, as Congress was aware of the foreign relations implications in

drafting the MPPA, the Court held that government cannot now disregard its obligation to ban the

importation of certain fish by seeking a stay "based on its perception of a possible impact on

foreign relations." Id. at __, 348 F. Supp. 3d at 1313.  This Court should be guided by the reasoning

in NDRC given the factual similarities to the present action.  Like in NDRC, here Defendants were

found to be in direct violation of a mandate by Congress – namely that the President can only act

to impose tariffs under Section 232 within certain mandatory time constraints.  The government

cannot now seek to flout this obligation by seeking a stay merely based on foreign relation

concerns.

In sum, the public interest favors denying defendants' motion for stay of judgment pending appeal because the public interest favors proper enforcement of the law.  Here, defendants' motion for stay of judgment pending appeal is not appropriate given that granting such a request would be in direct conflict with the authority delegated to the President by Congress – namely, that he can only act under Section 232 within certain mandatory time-constraints.

## CONCLUSION

For the foregoing reasons, PrimeSource respectfully requests that this Court deny defendants' motion for stay of judgment to maintain the status quo pending appeal.

Respectfully Submitted,

Dated: June 25, 2021

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Kristin H. Mowry
Jill A. Cramer
Sarah M. Wyss
Bryan P. Cenko
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
jsg@mowrygrimson.com
*Counsel to PrimeSource Building Products, Inc.*

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jeffrey S. Grimson, hereby certify that this response complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures.  Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this response is 9,348 words.


Dated: June 25, 2021                                        /s/ Jeffrey S. Grimson
                                                            Jeffrey S. Grimson
                                                            Mowry & Grimson, PLLC
                                                            5335 Wisconsin Avenue, NW
                                                            Suite 810
                                                            Washington, DC 20015
                                                            (202) 688-3610
                                                            trade@mowrygrimson.com
                                                            *Counsel to PrimeSource Building Products, Inc.*