Slip Op. No. 21-94

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| PRIMESOURCE BUILDING PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, et al., <br><br> Defendants. | Before: Timothy C. Stanceu, Judge <br>      Jennifer Choe-Groves, Judge <br>      M. Miller Baker, Judge <br><br> Court No. 20-00032 |

OPINION AND ORDER

[Granting defendants' motion for stay pending appeal.]

Dated: August 2, 2021

*Jeffrey S. Grimson*, Mowry & Grimson, PLLC, of Washington, D.C., for plaintiff. With him on the brief were *Kristin H. Mowry*, *Jill A. Cramer*, *Sarah M. Wyss*, and *Bryan P. Cenko*.

*Brian M. Boynton*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendants. With him on the brief were *Jeanne E. Davidson*, Director, and *Tara K. Hogan*, Assistant Director.

  Stanceu, Judge: Defendants move for a partial stay pending their appeal of the judgment this Court entered in *PrimeSource Bldg. Prods., Inc. v. United States*, Judgment (Apr. 5, 2021), ECF No. 111 ("Judgment"). The Judgment granted certain relief to plaintiff PrimeSource Building Products, Inc. ("PrimeSource"), an importer of steel

nails, in a challenge to a Presidential action taken under Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862 ("Section 232") imposing additional duties of 25% *ad valorem* on certain imported products made of steel, including steel nails.[1] *See* Proclamation 9980, *Adjusting Imports of Derivative Aluminum Articles and Derivative Steel Articles Into the United States*, 85 Fed. Reg. 5,281 (Exec. Office of the President Jan. 29, 2020) ("Proclamation 9980"). Plaintiff opposes the motion for a stay.

The court grants the motion for a stay, orders suspension of liquidation of the entries affected by this litigation, and requires PrimeSource and the government to consult to obtain agreement on bonding of entries made on and after April 5, 2021, for protection of the revenue potentially owing due to Proclamation 9980.

## I. BACKGROUND

The background of this action is set forth in our prior opinions and supplemented herein. *See PrimeSource Bldg. Prods., Inc. v. United States*, 45 CIT __, 497 F. Supp. 3d 1333 (2021) ("*PrimeSource I*"), *PrimeSource Bldg. Prods., Inc. v. United States*, 45 CIT __, 505 F. Supp. 3d 1352 (2021) ("*PrimeSource II*").

On February 13, 2020, upon the consent of both parties, this Court entered a preliminary injunction that prohibited defendants from collecting 25% cash deposits on PrimeSource's entries of merchandise within the scope of Proclamation 9980 and

---

[1] Citations to the United States Code herein are to the 2012 edition. Citations to the Code of Federal Regulations are to the 2020 edition.

prohibited the liquidation of the affected entries.  Order (Feb. 13, 2020), ECF Nos. 39 (conf.), 40 (public) ("Prelim. Inj. Order").  The preliminary injunction required, further, that PrimeSource terminate its existing continuous bond and replace it with a continuous bond having a higher limit of liability to reflect the additional duties PrimeSource otherwise would have been required to deposit.  Prelim. Inj. Order 2.

On February 12, 2021, again with the consent of parties, the court amended the preliminary injunction to require PrimeSource, instead of conferring with defendants prior to the expiry of its continuous bond, "to monitor its subject imports and foregone duty deposits" and terminate and replace its continuous bond once the amount of foregone duty deposits reached the amount of the bond, minus the baseline bond amount as calculated pursuant to the general continuous bonding formula of U.S. Customs and Border Protection ("Customs" or "CBP").  [Amended] Order 1–2 (Feb. 12, 2021), ECF No. 105 ("Am. Prelim. Inj. Order").  The amended preliminary injunction also authorized Customs "to deny release to PrimeSource's entries until PrimeSource terminates its current continuous bond and obtains a new continuous bond . . . or enters the merchandise using single transaction bonds in the amount of 100 percent of the value of the merchandise, plus 100 percent of the estimated duties, taxes, and fees, plus the foregone duty deposit on each entry."  *Id.* at 2.

This amended preliminary injunction dissolved upon the entry of judgment entered in *PrimeSource II* on April 5, 2021.  *See* Judgment 1–2.  In the Judgment, this

Court ordered, *inter alia*, that defendants liquidate the duties affected by this litigation without the assessment of the 25% additional duties provided for in Proclamation 9980. *Id.*

Defendants filed a notice of appeal of the judgment entered in *PrimeSource II* on June 4, 2021, ECF No. 112, and filed the instant motion for a stay pending appeal the same day. Defs.' Mot. for Partial Stay of J. to Maintain the *Status Quo* Pending Appeal (June 4, 2021), ECF No. 113 (conf.); (June 9, 2021), ECF No. 114 (public) ("Defs.' Mot. for Stay"). Defendants requested that, for the pendency of the appeal, the court: (1) stay the requirement to liquidate PrimeSource's entries without the assessment of the 25% additional duties; (2) reinstate the order to suspend liquidation; and (3) reinstate the requirement that PrimeSource monitor its imports of merchandise covered by Proclamation 9980 and maintain a sufficient continuous bond for the duty liability on these imports. Defs.' Mot. for Stay 1–2.

Plaintiff filed its response in opposition to defendants' stay motion on June 25, 2021. Pl. PrimeSource Resp. to Defs.' Mot. for Partial Stay of J. to Maintain the *Status Quo* Pending Appeal, ECF No. 116 ("Pl.'s Resp.").

## II. Discussion

In exercising its traditional powers to further the administration of justice, a federal court may stay enforcement of a judgment pending the outcome of an appeal. *Nken v. Holder*, 556 U.S. 418, 421 (2009). "While an appeal is pending from . . . [a] final

judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." USCIT R. 62(d). When that judgment was rendered by a three-judge panel, "the order must be made . . . by the assent of all its judges, as evidenced by their signatures." *Id.*

The party seeking a stay pending appeal has the burden of showing that the stay is justified by the circumstances. *Nken*, 556 U.S. at 433–34 (citations omitted). We consider four factors in deciding whether the movant has met that burden: (1) whether defendants have made a strong showing that they will succeed on the merits; (2) whether they will be irreparably harmed absent the stay; (3) whether issuance of the stay will substantially injure the plaintiff; and (4) where the public interest lies. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "There is substantial overlap between these and the factors governing preliminary injunctions." *Nken*, 556 U.S. at 434 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The "likelihood of success" and "irreparable harm" factors, working together, are the most critical, and where the United States is a party, the balance of equities and the public interest factors "merge." *Id.* at 434–35.

We conclude that all four factors support our granting defendants' motion to stay.

**A. Success on the Merits**

A recent decision by the Court of Appeals for the Federal Circuit ("Court of Appeals") in *Transpacific Steel LLC v. United States*, No. 2020-2157, 2021 WL 2932512 (Fed. Cir. 2021) ("*Transpacific II*") causes us to conclude that defendants have made a sufficiently strong showing that they will succeed on the merits on appeal, so as to satisfy the first factor in our analysis. In *Transpacific II*, the Court of Appeals vacated a judgment of this Court in *Transpacific Steel LLC v. United States*, 44 CIT __, 466 F. Supp. 3d 1246 (2020) ("*Transpacific I*"), rejecting a claim similar in some respects to a claim this Court found meritorious in *PrimeSource I* and *PrimeSource II*.

The *Transpacific* litigation involves a Presidential proclamation that increased to 50% the then-existing 25% Section 232 duties on imports of steel products from Turkey. *See* Proclamation 9772, *Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 40,429 (Exec. Office of the President Aug. 15, 2018) ("Proclamation 9772"). In *Transpacific I*, this Court held the proclamation invalid as untimely and as a violation of equal protection. Regarding the former, *Transpacific I* held that Proclamation 9772 was issued after the close of the combined 105-day time period Congress established in 1988 amendments to Section 232 (the time period codified as Section 232(c)(1), 19 U.S.C. § 1862(c)(1)), that commenced upon President Trump's receipt, on January 11, 2018, of a report by the Secretary of Commerce issued under the authority of 19 U.S.C. § 1862(b)(3)(A) (the "2018 Steel Report"). The President's receipt of that report by the Commerce Secretary

had been the procedural predicate for the issuance of Proclamation 9705, *Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625 (Exec. Office of the President Mar. 15, 2018) ("Proclamation 9705").

The Court of Appeals reversed and remanded the case to this Court. On the issue of the time limits added by the 1988 amendments to Section 232, the Court of Appeals reasoned that "[n]one of the new language in the statute, on its own or by comparison to what came before, implies a withdrawal of previously existing presidential power to take a continuing series of affirmative steps deemed necessary by the President to counteract the very threat found by the Secretary." *Transpacific II*, 2021 WL 2932512 at *19. The Court of Appeals stated that "[i]n this context, the directive to the President to act by a specified time is not fairly understood as implicitly meaning 'by then or not at all' as to each discrete imposition that might be needed, as judged over time." *Id*.

*PrimeSource I* and *II* arose from somewhat different facts than did the *Transpacific* litigation. Rather than upwardly adjust the tariffs imposed by a previous Section 232 proclamation, the action contested here imposed, for the first time, tariffs of 25% on a previously unaffected group of products. These products, identified in Proclamation 9980 as "Derivatives of Steel Articles," Proclamation 9980, 85 Fed. Reg. at 5,281, were different than the steel articles affected by the earlier Presidential proclamation, Proclamation 9705. In this litigation, defendants have relied upon the President's

receipt of the 2018 Steel Report as the procedural basis upon which the President issued Proclamation 9980, arguing that the President retained "modification" authority over the previous Section 232 action. *See PrimeSource II*, 45 CIT at __, 505 F. Supp. 3d at 1355 (noting that defendants' "position continues to be that procedural preconditions for the issuance of Proclamation 9980 were met by the Secretary's 2018 Steel Report and the timely issuance of Proclamation 9705."). Proclamation 9980 was signed by the President on January 24, 2020 (and published in the Federal Register on January 29, 2020), long after the President's receipt, on January 11, 2018, of the 2018 Steel Report. This Court held that, due to the combined 105-day time limitation set forth in 19 U.S.C. § 1862(c)(1), the President's authority to adjust tariffs on the "derivative" articles of steel had expired by the time Proclamation 9980 was issued, if that time period were presumed to commence upon the receipt of the 2018 Steel Report. *PrimeSource I*, 45 CIT at __, 497 F. Supp. 3d at 1356. We concluded, later, that defendants had waived any defense that the procedural requirements of Section 232 were met based on any procedure other than one reliant upon the 2018 Steel Report. *PrimeSource II*, 45 CIT at __, 505 F. Supp. 3d at 1355.

Our decision in *PrimeSource II* is also distinguishable from *Transpacific II* in the length of time that transpired between the receipt of a Section 232(b)(3)(A) report from the Secretary of Commerce and the President's taking implementing action. In issuing Proclamation 9980, the President acted more than two years after receiving the 2018

Steel Report. In the *Transpacific* litigation, the analogous time period was approximately seven months. In *Transpacific II*, the Court of Appeals rejected the appellee's argument that Congress sought, through the time limits, to ensure that the President will have timely information on which to act. *See Transpacific II*, 2021 WL 2932512 at *21 ("Concerns about staleness of findings are better treated in individual applications of the statute, where they can be given their due after a focused analysis of the proper role of those concerns and the particular finding of threat at issue.").

Even though *Transpacific II* and this case arose from somewhat different facts, we nevertheless conclude that the opinion of the Court of Appeals potentially affects the outcome of this litigation. In reaching this conclusion, we do not opine on whether *Transpacific II* necessarily controls that outcome, i.e., whether the President's adjusting of tariffs on derivatives of steel products falls within what the Court of Appeals termed, in a different factual setting, "a continuing series of affirmative steps deemed necessary by the President to counteract the very threat found by the Secretary," *id.* at *19. But for purposes of ruling on the instant stay motion, it is sufficient that the discussion in *Transpacific II* of the "continuing" nature of Presidential Section 232 authority is expressed in broad terms. Accordingly, we conclude that defendants have made a showing that they will succeed on the merits on appeal that is sufficient to satisfy the first factor in our analysis.

### B. Irreparable Harm in the Absence of the Requested Stay

In their motion for a stay, defendants request that, for the pendency of the appeal, the court: (1) stay the requirement to liquidate PrimeSource's entries without the assessment of the 25% additional duties; (2) reinstate the order to suspend liquidation; and (3) reinstate the requirement that PrimeSource monitor its imports of merchandise covered by Proclamation 9980 and maintain a sufficient continuous bond for the duty liability on these imports. Defs.' Mot. for Stay 1–2. The court concludes that all three of these requested measures are necessary to prevent a form of irreparable harm to the United States. As we discuss below, that harm is the loss of the authority, provided for by statute and routinely exercised by Customs in every import transaction, to require and maintain such bonding as it determines is reasonably necessary to protect the revenue of the United States. Without the requested stay, the judgment entered in *PrimeSource II* would interfere with the exercise of that authority.

In Section 623(a) of the Tariff Act of 1930, Congress explicitly recognized the importance of security, such as bonding, to protect the revenue. In pertinent part, the relevant provision reads as follows:

> In any case in which bond or other security is not specifically required by law, the Secretary of the Treasury may by regulation or specific instruction require, or authorize customs officers to require, such bonds or other security as he, or they, may deem necessary for the protection of the revenue. . . .

19 U.S.C. § 1623(a). This authority is effectuated in the Customs Regulations and applies generally to all import transactions. *See* 19 C.F.R. § 113. Due to the decision of the Court of Appeals in *Transpacific II*, the government has established a likelihood that ultimately it will assess Section 232 duties of 25% *ad valorem* on all entries at issue in this litigation. In any ordinary import transaction, i.e., one not affected by litigation such as this, Customs would exercise its statutory and regulatory authority to ensure that the basic importer's bond (be it a continuous or single transaction bond) has a sufficient limit of liability to secure the liability for all potential duties, such as the Section 232 duties that potentially will be owed by PrimeSource.

Importers' bonds are the ordinary means by which the government ensures that the joint and several liability of the importer of record, and of its surety (up to the limit of liability on the bond) will attach for the payment of all duties and other charges eventually determined to be owed. Notably, in the situation posed by this litigation, PrimeSource, due to the consent preliminary injunction that dissolved upon the entry of judgment in this litigation, has made no cash deposits of estimated duties to cover potential duty liability from Proclamation 9980. The enhanced bonding required by the consent preliminary injunction was a substitute for these estimated duty deposits.

If an importer's bond has a limit of liability that is too low to cover the ordinary duties plus the 25% duties, there is an inherent risk to the revenue, codified by statute and effectuated by regulation, because one of the two parties that contractually could

have been bound to pay the duties—the surety—has liability limited by the face amount of the bond. In short, Congress contemplated in 19 U.S.C. § 1623 that the government should have resort to two parties for assessed duty liability, the importer of record and the surety.

We do not base our decision to grant the requested stay on a factual determination that PrimeSource will be unable to satisfy its potential duty obligation. Rather, we base it on the loss of the ability of the United States to exercise, as it would in the ordinary course of administering import transactions, the statutory authority of 19 U.S.C. § 1623(a) to secure this potential duty liability. That loss, absent the requested stay, itself will constitute an irreparable harm to the United States.[2] But for the judgment entered in *PrimeSource II*, the government would maintain, and continue into the future, the requirement of bonding adequate to secure the revenue potentially owing on the entries affected by this case. In summary, were we to deny the

---

[2] Because we find irreparable harm for the reasons noted, we need not, and do not, consider whether finality of liquidation itself constitutes potential irreparable harm to the United States. Defendants claim they may be unable to collect duties on entries for which liquidation has become final under 19 U.S.C. § 1514(a), *see* Defs.' Mot. for Partial Stay of J. to Maintain the *Status Quo* Pending Appeal 12 (June 4, 2021), ECF No. 113 (conf.); (June 9, 2021), ECF No. 114 (public). Their argument is brought into question by precedent recognizing the authority of this Court, in a case brought according to 28 U.S.C. § 1581(i), to enforce its own judgments by ordering the reliquidation of the entries. *See Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1311–12 (Fed. Cir. 2004). The opinion in *Shinyei* reasoned that finality of liquidation under 19 U.S.C. § 1514 does not "preclude judicial enforcement of court orders after liquidation," as "the Court of International Trade has been granted broad remedial powers." *Id.* at 1312.

government's motion to stay the effect of that judgment as to these entries, we would be interfering with the exercise of the government's statutory authority under 19 U.S.C. § 1623(a). Based on the intent Congress expressed in enacting that provision, we conclude that any such interference is best avoided.

In addition to enhanced bonding, the government's stay motion seeks a stay of our order to liquidate without Section 232 liability the entries subject to this litigation and a suspension of the liquidation of those entries pending the appeal. We agree that these steps are warranted. The court notes the possibility that finality of liquidation, should it attach to all entries associated with a particular continuous bond, could result in the cancellation of such a bond and the resultant extinguishing of the liability of the surety. Such a prospect would pose irreparable harm to the United States for the reasons the court has discussed. Because avoiding irreparable harm requires that the government have the authority not only to require, but to maintain, sufficient bonding for potential duty liability on all entries at issue in this case, we conclude that avoiding such harm requires that the affected entries remain in an unliquidated state during the pendency of the appeal.

### C. Balance of the Hardships

The government also prevails on the third factor. Defendants seek narrow relief that would not substantially prejudice PrimeSource. They do not seek cash deposits; rather, under their proposed stay order PrimeSource will incur instead the costs of

maintaining enhanced bonding for the potential Section 232 duty liability, i.e., the cost of the bond premiums. Although this will require that PrimeSource "pay a new premium with its surety every time it must put in place a new bond to cover its estimated Section 232 deposits," Pl.'s Resp. 20, these are conditions PrimeSource found acceptable in agreeing to the initial preliminary injunction order and the amended preliminary injunction orders, implicitly acknowledging they were necessary and appropriate under 19 U.S.C. § 1623(a). *See* Pl.'s Resp. 21; Prelim. Inj. Order 2–3; Am. Prelim. Inj. Order 1–2. The government's request for a stay essentially maintains the balance struck by the parties in their agreement for a consent injunction that maintained enhanced bonding while the outcome of this case was not yet determined by this Court. In comparison, denying the government the authority to require such bonding on current and future entries poses a hardship on the United States that, under the statutory scheme designed to ensure adequate protection of the revenue, is unwarranted now that such duty liability is likely to be incurred.

### D. The Public Interest

Unquestionably, the public interest favors allowing the government to exercise its lawful authority to protect the revenue, and potential revenue, of the United States, which in this case involves a significant amount of potential duty liability. *See* Defs.' Mot. for Stay 12–13. PrimeSource has a continuous bond that secures the 25% additional duty liability for all entries between February 1, 2020 until April 5, 2021, the

date judgment was entered in favor of PrimeSource.  The court will order the parties to consult with a view to reaching an agreement under which the entries occurring on and after April 5, 2021, and going forward throughout the appeal (with a superseding bond, if necessary), will be covered by bonding reasonably necessary to secure the potential Section 232 duties.

Prior to the decision of the Court of Appeals in *Transpacific II*, PrimeSource argued that "[a]ny concerns over protecting the revenue of the United States are rendered moot if the government never had a claim to that revenue in the first instance."  Pl.'s Resp. 26.  But the government now has a potential claim to the revenue, to which the court must give due consideration.

### III.  CONCLUSION AND ORDER

All four factors necessitate granting the governments' motion to stay.  Upon the court's consideration of the parties' motions, including defendants' motion to stay and plaintiff's response, and all other filings herein, and upon due deliberation, it is hereby

**ORDERED** that Defs.' Mot. for Partial Stay of J. to Maintain the *Status Quo* Pending Appeal (June 4, 2021), ECF No. 113 (conf.); (June 9, 2021), ECF No. 114 (public) be, and hereby is, granted; it is further

**ORDERED** that the order of this Court to liquidate the entries subject to this litigation, as stated in the Judgment entered on April 5, 2021 be, and hereby is, stayed pending the appeal of that judgment before the United States Court of Appeals for the Federal Circuit; it is further

**ORDERED** that defendants be, and hereby are, enjoined, through the pendency of the appeal, from liquidating the entries affected by this litigation; it is further

      **ORDERED** that plaintiff and defendants shall confer to seek to reach agreement on PrimeSource's monitoring and continuous bonding for entries of merchandise within the scope of Proclamation 9980 that have occurred, and will occur, on and after April 5, 2021, to secure potential liability for duties and fees, including potential liability for duties under Proclamation 9980; should the parties be unable to reach such an agreement, the parties shall file a joint status report with the court by no later than by August 16, 2021; and it is further

      **ORDERED** that this Order shall remain in effect until issuance of a mandate of the Court of Appeals for the Federal Circuit in the pending appeal of the judgment entered by this Court.

|  |  |
|---|---|
|  | /s/ Timothy C. Stanceu, Judge |
| Dated: August 2, 2021 | /s/ Jennifer Choe-Groves, Judge |
|     New York, New York | /s/ M. Miller Baker, Judge |