UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE TIMOTHY C. STANCEU, JUDGE
THE HONORABLE JENNIFER CHOE-GROVES, JUDGE
THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| PRIMESOURCE BUILDING PRODUCTS, INC., ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> THE UNITED STATES, *et al.*, ) <br><br> Defendants. ) | Ct. No. 20-00032 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STAY
ENFORCEMENT OFTHE FEDERAL CIRCUIT'S MANDATE**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

STEPHEN C. TOSINI
Senior Trial Counsel
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.:  (202) 616-5196
Email: stephen.tosini@usdoj.gov

August 11, 2023          Attorneys for Defendants

## **TABLE OF CONTENTS**

BACKGROUND ...................................................................................3

I.     Section 232 National Security Statute....................................................3

II.    Presidential Determinations On Steel Imports And Their
       Derivatives...............................................................................3

III.   This Court Sets Aside Presidential Determination On Derivative
       Articles...................................................................................5

IV.    The Court Of Appeals For The Federal Circuit Reverses Court
       Denies Petition For Rehearing *En Banc*, Denies Motion To Stay
       Its Mandate, And Issues Its Mandate ....................................6

V.     PrimeSource Asks This Court For Most Of The Same Relief
       Denied By The Federal Circuit Less Than One Month Earlier ...........8

SUMMARY OF THE ARGUMENT ................................................................8

ARGUMENT ...................................................................................9

I.     This Court Lacks Jurisdiction To Stay Enforcement Of The
       Federal Circuit's Judgment ................................................9

       A.     The Mandate Rule Requires The Court To Implement The
              Federal Circuit's Judgment In Full .............................9

       B.     Only A Justice Of The Supreme Court Can Provide
              PrimeSource With The Relief It Seeks .................................. 12

II.    Even If This Court Could Entertain PrimeSource's Request, A Stay
       Is Unwarranted ................................................................ 15

       A.     There Is No Reasonable Probability That The Supreme Court
              Will Grant *Certiorari* ............................................ 16

B.    There Is No Fair Prospect That The Supreme Court Will Reverse ...................................................................... 20

C.    PrimeSource's Motion Fails To Demonstrate Irreparable Harm .................................................................... 22

CONCLUSION ............................................................ 24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
    141 S. Ct. 2485 (2021) ................................................................. 19

*Am. Inst. for Imported Steel, Inc. v. United States*,
    600 F. Supp. 204 (Ct. Int'l Trade 1984).................................... 24

*American Axle Manufacturing v. Neapco Holdings LLC*,
    977 F.3d 1379 (Fed. Cir. 2020)................................................. 15

*Banks v. United States*,
    741 F.3d 1268 (Fed. Cir. 2014)................................................... 9

*Biden v. Nebraska*,
    143 S. Ct. 2355 (2023) ................................................................. 19

*Bostock v. Clayton Cnty., Georgia*,
    140 S. Ct. 1731 (2020) ................................................................. 19

*Cementos Guadalajara, S.A. v. United States*,
    727 F. Supp. 614 (Ct. Int'l Trade 1989)............................. 13, 16

*Cementos Anahuac Del Golfo, S.A. v. United States*,
    727 F. Supp. 620 (Ct. Int'l Trade 1989)................................... 13

*Elkem Metals Co. v. United States*,
    135 F. Supp.2d 1324 (Ct. Int'l Trade 2001)............................ 24

*Engel Indus. Inc. v. Lockformer Co.*,
    166 F.3d 1379 (Fed. Cir. 1999)................................................... 9

*FastShip, LLC v. United States*,
    892 F.3d 1298 (Fed. Cir. 2018)................................................. 24

*Fed. Energy Admin. v. Algonquin SNG, Inc.*,
    426 U.S. 548 (1976) ..................................................................... 17

*Fujitsu Gen. Am., Inc. v. United States*,
    283 F.3d 1364 (Fed. Cir. 2002)................................................. 10

*Gundy v. United States*,
    139 S. Ct. 2116 (2019) ........................................................................ 18, 21

*Hollingsworth v. Perry*,
    558 U.S. 183 (2010) ............................................................................ 15, 20

*Houchins v. KQED, Inc.*,
    429 U.S. 1341 (1977) .................................................................................. 16

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
    849 F.3d 1034 (Fed. Cir. 2017) .................................................................. 24

*In re A.F. Moore & Assocs., Inc.*,
    974 F.3d 836 (7th Cir. 2020) ............................................... 2, 11, 13, 14

*In re Stumes*,
    681 F.2d 524 (8th Cir. 1982) ..................................................................... 14

*In re Time Warner Cable, Inc.*,
    470 F. App'x 389 (5th Cir. 2012) ............................................................. 14

*Lucas v. Townsend*,
    486 U.S. 1301 (1988) .................................................................................. 20

*Magnum Import Co. v. Coty*,
    262 U.S. 159 (1923) .................................................................................... 13

*Norsk Hydro Canada, Inc. v. United States*,
    472 F.3d 1347 (Fed. Cir. 2006) ................................................................ 13

*Otter Prod., LLC v. United States*,
    37 F. Supp. 3d 1306 (Ct. Int'l Trade 2014) ....................................... 23, 24

*PrimeSource Building Products, Inc. v. United States*,
    59 F.4th 1255 (Fed. Cir. 2023) ......................................................... 6, 7, 17

*PrimeSource Building Products, Inc. v. United States*,
    497 F. Supp. 3d 1333 (Ct. Int'l Trade 2021) ............................................. 5

*PrimeSource Building Products, Inc. v. United States*,
    505 F. Supp. 3d 1352 (Ct. Int'l Trade 2021) ............................................. 5

*Rostker v. Goldberg*,
  448 U.S. 1306 (1980) .................................................................. 20

*Transpacific Steel LLC v. United States*,
  4 F.4th 1306 (Fed. Cir. 2021)
  *cert denied*, 142 S. Ct. 1414 (2022) ...................................... 3, 17

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) ............................................................... 17

*United States v. Eurodif S.A.*,
  555 U.S. 305 (2009) ................................................................... 10

*United States v. Lentz*,
  352 F. Supp. 2d 718 (E.D. Va. 2005) ....................................... 14

*West Virginia v. EPA*,
  142 S. Ct. 2587 (2022) ............................................................... 19

*Whitehead v. Frawner*,
  No. CV 17-275 MV/KK, 2019 WL 4016334 (D.N.M. Aug. 26, 2019) ... 14

*Williams v. Sec'y of Navy*,
  787 F.2d 552 (Fed. Cir. 1986) ................................................... 13

*Zenith Radio Corp. v. United States*,
  710 F.2d 806 (Fed. Cir. 1983) ................................................... 23

**Statutes**

19 U.S.C. § 1500 ............................................................................ 5

19 U.S.C. § 1504 ............................................................................ 5

19 U.S.C. § 1504(b) ....................................................................... 7

19 U.S.C. § 1504(d) .................................................................... 7, 8

19 U.S.C. § 1505(a) .................................................................... 5, 6

19 U.S.C. § 1516a ......................................................................... 10

19 U.S.C. § 1862(c)(1)(B) .......................................................... 5, 10

28 U.S.C. § 1295(a)(5)...................................................................................... 20

28 U.S.C. § 1581(i) ........................................................................................... 20

28 U.S.C. § 2101(f)............................................................................................ 12

28 U.S.C. § 2631................................................................................................ 23

**Regulations**

19 C.F.R. §159.1 ................................................................................................. 8

19 C.F.R. § 141.101 ........................................................................................... 8

**Administrative Determinations**

*Proclamation 9705*
    83 Fed. Reg. 11,625, 11,626-27 ¶ 11 (Mar. 15, 2018)....................... *passim*

*Proclamation 9980*
    85 Fed. Reg. 5,281 (Jan. 24, 2020). ................................................... *passim*

*Section 232 Report*,
    85 Fed. Reg. 40,202 (July 6, 2020) ............................................................. 5

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE TIMOTHY C. STANCEU, JUDGE
          THE HONORABLE JENNIFER CHOE-GROVES, JUDGE
          THE HONORABLE M. MILLER BAKER, JUDGE

| | |
|---|---|
| PRIMESOURCE BUILDING PRODUCTS, INC., ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | Ct. No. 20-00032 |
| v. ) | |
| ) | |
| THE UNITED STATES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
STAY ENFORCEMENT OFTHE FEDERAL CIRCUIT'S MANDATE**

After the Court of Appeals for the Federal Circuit reversed this

Court's judgment, it denied PrimeSource Building Products Inc.'s petition

for rehearing *en banc*, denied PrimeSource's motion to stay the Federal

Circuit's mandate, and issued its mandate on July 5, 2023.  Eight days later,

this Court issued a final judgment effecting the appellate mandate, by

dismissing this action and directing that all entries of merchandise subject to

this action be liquidated in accordance with the Federal Circuit's judgment.

Rather than seek Supreme Court review of the Federal Circuit's denial

of its request to stay its mandate under the Supreme Court's Rules and 28

U.S.C. § 2101(f), PrimeSource has returned to this Court, seeking most of the same equitable relief denied by the Federal Circuit through a motion styled as a Rule 62 motion for stay pending appeal.  ECF No. 136 (Mot.); *id.* at 27 (requested relief).  But there is no pending appeal and Rule 62 does not authorize this Court to stay an appellate judgment.  Only an appellate court or a Justice of the Supreme Court may provide this relief.  Nearly every decision addressing the availability of a stay before the trial court – including the two before this Court -- has concluded that the movant was asking for relief at the wrong place.

As the United States Court of Appeals for the Seventh Circuit explained in addressing a similar request for relief:  The "motion obligated the district court, which had been reversed by a reviewing court, to weigh the likelihood that it might be later vindicated by our own reversal."  *In re A.F. Moore & Assocs., Inc*., 974 F.3d 836, 841 (7th Cir. 2020).  "That analysis is only a step removed from a court declaring that it was right all along and entering the judgment just reversed—the most obvious violation of the mandate rule."  *Id*.  Because the true nature of PrimeSource's request is to have this Court review, or stay the implementation of, the appellate mandate, which this Court cannot do, we respectfully request that the Court deny the motion.

Lastly, even if the Court were free to disregard the Federal Circuit's mandate and could consider PrimeSource's request for a stay, PrimeSource fails to meet the stringent standards for a stay.

## BACKGROUND

### I.      Section 232 National Security Statute

Section 232 "empowers and directs the President to act to alleviate threats to national security from imports.'" *Transpacific Steel LLC v. United States*, 4 F.4th 1306, 1311 (Fed. Cir. 2021), *cert denied*, 142 S. Ct. 1414 (2022). Under Section 232, the President may act to adjust imports of an article or its derivative for the protection of national security if the Secretary of Commerce concludes that imports of the article threaten to impair our national security.

### II.     Presidential Determinations On Steel Imports And Their Derivatives

In 2017, the Secretary commenced an investigation on steel imports and their effect on national security. In January 2018, the Secretary reported to the President that steel imports were "weakening our internal economy and threaten to impair the national security as defined in Section 232." *Section 232 Report*, 85 Fed. Reg. 40,202 (July 6, 2020).

In March 2018, the President concurred and issued Proclamation 9705, which imposed a 25 percent tariff on various steel article imports from

3

most countries, which the President described as an "important first step" in addressing specified concerns. *Proclamation 9705*, 83 Fed. Reg. 11,625, 11,626-27 ¶ 11 (Mar. 15, 2018). The President simultaneously reserved the option "to remove or modify" the restriction if alternatives with some nations could be arranged through negotiation, *id.*, ¶ 9, and further instructed the Secretary "to continue to monitor" the situation and "inform [him] of any circumstances that . . . might indicate the need for further action by the President under section 232," *id.* at 11,628, clause (5)(b).

In January 2020, the President issued Proclamation 9980, which adjusted tariff coverage to include derivatives of already-covered steel articles. *Proclamation 9980*, 85 Fed. Reg. 5,281 (Jan. 24, 2020). The purpose of the Proclamation was to eliminate an exploited loophole in Proclamation 9705 that the President determined was "undermin[ing] the actions taken to address the risk to the national security of the United States" articulated within that Proclamation. *Id.* at 5,281-82, ¶¶ 5-8. The President explained that such "circumvention" and the "net effect of the increase of imports of these derivatives" had "erode[d] the customer base for U.S. producers of . . . steel," and thereby prevented achievement of a stable 80 percent average domestic capacity utilization rate. *Id.*, ¶¶ 4, 8.

### III. This Court Sets Aside Presidential Determination On Derivative Articles

PrimeSource sued in this Court, alleging that the President exceeded his statutory authority by issuing Proclamation 9980. It asserted that 19 U.S.C. § 1862(c)(1)(B)—which directs the President to take "action"— limits the President to 105 days to implement the *entirety* of his action in response to a specified national security threat, after which the conferred authority automatically expires. Because Proclamation 9980 was implemented after that 105-day period, PrimeSource argued that the trade adjustment was unlawful. The Court agreed and declared Proclamation 9980 invalid. *PrimeSource Building Products, Inc. v. United States*, 497 F. Supp. 3d 1333 (Ct. Int'l Trade 2021); *PrimeSource Building Products, Inc. v. United States*, 505 F. Supp. 3d 1352 (Ct. Int'l Trade 2021).

Although PrimeSource would otherwise have been required to make deposits of estimated Section 232 duties on its entries during the pendency of litigation, at the outset of litigation, PrimeSource and the United States reached an agreement effectuated by consent order under which PrimeSource would be temporarily excused from making Section 232 duty deposits at the time of entry, as required by statute, 19 U.S.C. § 1505(a), and CBP's implementing regulation, 19 C.F.R. § 141.101, and liquidation of its entries under 19 U.S.C. §§ 1500, 1504 and 19 C.F.R. §159.1 would be

suspended pending the outcome of the litigation.  *See generally* ECF 140.  In the meantime, while the litigation was pending and the liquidation of its entries remained suspended, PrimeSource would terminate and replace its continuous importation bond to increase the limit of liability to fully cover the duties owed on the entries in light of the forgone estimated duty deposits that would otherwise be required under 19 U.S.C. § 1505(a).  The order remained in "effect until judgment is entered, or until it is otherwise modified or dissolved by the Court."  *Id*. at 3.  The Court later extended the stay "through issuance of a mandate" on appeal.  ECF No 118 at 16.

## IV.   The Court Of Appeals For The Federal Circuit Reverses, Denies Petition For Rehearing *En Banc*, Denies Motion To Stay Its Mandate, And Issues Its Mandate

On appeal, the Federal Circuit reversed.  Relying on *Transpacific*, the court explained that the President's authority to adjust and modify a timely implemented measure did not cease to exist the moment the time for initial action specified in subsection (c) lapsed.  *PrimeSource Building Products, Inc. v. United States*, 59 F.4th 1255, 1257 (Fed. Cir. 2023).  Rather, it reasoned that the President's decision to timely announce a continuing plan of action and institute monitoring efforts as he did in Proclamation 9705 was permissible under Section 232.  *See id*. at 1261.  The court then sustained Proclamation 9980 because it was simply a modification of Proclamation

6

9705, in line with the plan and objective that the President had timely disclosed, thereby making it a lawful continuation of a prior action, rather than the inception of a new one. *See id*. at 1261-63. The Panel also rejected PrimeSource's nondelegation argument. *Id*. at 1263.

PrimeSource filed a petition for rehearing *en banc*, which the Federal Circuit unanimously denied on June 22, 2023. Attachment A. PrimeSource then moved to stay that court's mandate on June 26, 2023, Attachment B, which the Federal Circuit denied the next day. Attachment C. The Federal Circuit issued its mandate on July 5, 2023, Attachment D.

This Court then dismissed the case in accordance with the Federal Circuit's mandate and entered judgment on July 13, 2023, ordering liquidation of all entries of subject merchandise with the assessment of Section 232 duties. The Court also lifted the suspension of liquidation under the Court's injunction. ECF No. 118.

Under the six-month deadline to liquidate under 19 U.S.C. § 1504(d), liquidation in accordance with the mandate and this Court's judgment must occur by January 12, 2024, unless liquidation is extended under 19 U.S.C. § 1504(b) or where another suspension pursuant to other authority (such as antidumping or countervailing duty instructions from Commerce) applies. Consistent with the Federal Circuit's mandate and the Court's implementing

judgment, U.S. Customs and Border Protection (CBP) will liquidate the subject entries, within the deadline under 19 U.S.C. § 1504(d), as applicable, with assessment of Section 232 duties pursuant to Proclamation 9980. However, out of an abundance of caution and respect for the Court's authority to rule on the pending motion, CBP has not yet done so.

**V.     PrimeSource Asks This Court For Most Of The Same Relief Denied By The Federal Circuit Less Than One Month Earlier**

PrimeSource has now filed a motion pursuant to USCIT Rule 62 to partially stay enforcement of the judgment pending disposition of its petition for a writ of *certiorari*.  ECF No. 136.  PrimeSource specifically requests that this Court again enjoin CBP from collecting estimated Section 232 duties on its past entries of subject merchandise and from liquidating those entries pending resolution of its petition for a writ of *certiorari*.  *Id*. at 27.[1]

**SUMMARY OF THE ARGUMENT**

Lower courts do not set aside or decline to enforce higher court decisions.  Lower courts must follow higher court direction.  The Federal Circuit's mandate could not be clearer:  Proclamation 9980 is lawful.  As a result, CBP immediately must collect lawfully owed Section 232 duties from PrimeSource, and this Court lacks authority to prevent that from happening.

---

[1] CBP intends to order PrimeSource to correct its entry forms and make deposits of estimated Section 232 duties immediately.

PrimeSource does not identify a single decision in which a trial court

has set aside the effect of an appellate judgment pending a petition for a writ

of *certiorari*.  This is unsurprising.  Nearly every court to address this

question has made clear that the "appropriate court," S. Ct. R. 23(3), to seek

review of an appellate court's denial of a motion to stay its mandate is the

only court that can overrule a court of appeals:  the Supreme Court.  Stays

pending appeal under Rule 62(d) cannot be used to circumvent the mandate

rule and the statutory scheme that allows review only in higher courts.

Although the Court should stop there, even of the Court were to

entertain PrimeSource's request, it should be denied.  PrimeSource has not

met the high bar for establishing a stay of the appellate judgment.

## ARGUMENT

### I.    This Court Lacks Jurisdiction To Stay Enforcement Of The Federal Circuit's Judgment

#### A.    The Mandate Rule Requires The Court To Implement The Federal Circuit's Judgment In Full

"In evaluating the scope of the mandate, the actions of the Court

[below] must not be inconsistent with the letter or spirit of the mandate."

*Banks v. United States*, 741 F.3d 1268, 1279 (Fed. Cir. 2014) (citing *Engel*

*Indus. Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999)).  "[A]ll

issues within the scope of the appealed judgment are deemed incorporated

within the mandate and thus are precluded from further adjudication." *Id.* (quoting *Engel*, 166 F.3d at 1383).

The Federal Circuit's judgment disposed of the entire case, concluding that the President's imposition of Section 232 tariffs on PrimeSource's subject imports, and thus the collection of duties, is lawful. And Section 232 directs that "[i]f the President determines . . . to take action to adjust imports of an article and its derivatives, the President *shall* implement that action." 19 U.S.C. § 1862(c)(1)(B) (emphasis added). Implementation necessarily requires that CBP collect and assess the Section 232 tariff owed on all entries of subject merchandise.

PrimeSource's invocation of *Eurodif, S.A. v. United States*, Ct. No. 02-00219 (Ct. Int'l Trade), at pages 6-8 of its motion does not further its cause. Unlike this case, *Eurodif* stemmed from an interlocutory appeal in a challenge to an antidumping duty investigation upon whether the transactions under which domestic utilities acquired low enriched uranium involved the sale of goods under the antidumping duty law. *United States v. Eurodif S.A.*, 555 U.S. 305, 315 (2009). And *Eurodif* was an antidumping duty case under 19 U.S.C. § 1516a, under which liquidation is suspended until expiration of the deadline for certiorari. *See Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1379 (Fed. Cir. 2002).

And in any event, no party sought to dissolve the injunction or contended that any subject entries should have been liquidated. Further, any injunction in *Eurodif* was not at issue because the Court had separately enjoined the liquidation of subject entries in follow-on litigation involving later administrative reviews. *See*, *e.g.*, *Eurodif, S.A. v. United States*, Ct. No. 04-00392 (Ct. Int'l Trade), at ECF No. 17 (Prelim. Inj.).

By contrast, the Seventh Circuit's decision in *A.F. Moore* presents an identical procedural posture and is persuasive authority. After reversing a district court judgment that had dismissed the suit and remanding for further proceedings, the Seventh Circuit denied the defendant's Fed. R. App. P. 41(b) motion to stay its mandate. The defendant then "filed the second motion {for a stay} in the district court, which chose to grant the relief that [the Seventh Circuit] had already denied." *A.F. Moore*, 974 F.3d at 838.

In reversing the district court's stay, the court of appeals explained that, under the mandate rule, because it had "expressly denied the defendants' request that we stay our remand pending their petition for a writ of *certiorari*[,] [t]he district court was powerless to reconsider our decision on this matter and grant what we had withheld." *Id.* at 840. This Court should apply the reasoning in *A.F. Moore* to deny PrimeSource's request for

a "delay" in the judgment, Mot. at 8, because it amounts to a request to reconsider the Federal Circuit's denial of a stay.

### B.    Only A Justice Of The Supreme Court Can Provide PrimeSource With The Relief It Seeks

Virtually every court faced with similar facts has held that the courts of appeal or the Supreme Court are the only forums authorized to stay appellate mandates pending petitions for writs of *certiorari*.  By statute, judgments subject to Supreme Court review "may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of *certiorari* from the Supreme Court."  28 U.S.C. § 2101(f).  However, Congress vested authority to stay such judgments only to "a judge of the court rendering the judgment or decree or by a justice of the Supreme Court."  *Id*.  And as it must, the very first sentence of PrimeSource's petition for a writ of *certiorari* attached to its motion acknowledges that it is seeking review of the Federal Circuit's judgment: "Petitioner PrimeSource Building Products, Inc. respectfully petitions this Court for a writ of certiorari *to review the judgment of the U.S. Court of Appeals for the Federal Circuit*." (emphasis added).

PrimeSource cannot, through clever pleading, contend that its motion is a Rule 62 motion for stay pending appeal from this Court's judgment. "Mere recitation of a basis for jurisdiction, by either a party or a court, cannot be controlling.  We look to the true nature of the action in the district

12

court in determining jurisdiction of the appeal." *Norsk Hydro Canada, Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (quoting *Williams v. Sec'y of Navy*, 787 F.2d 552, 557 (Fed. Cir. 1986)) (cleaned up)). The true nature of the relief PrimeSource is seeking is a stay of the appellate mandate. PrimeSource does not contend that the Court's implementing judgment is inconsistent with the appellate mandate, and it nowhere seeks review of *this* Court's judgment on appeal. The letter and spirit of the Federal Circuit's mandate require CBP to collect and assess Section 232 duties from PrimeSource, just as it does for any other importer.

To that end, this Court has twice denied Rule 62 motions for stay pending appeal after the Federal Circuit has issued its mandate, reasoning that "[s]ince it is the decision of the Federal Circuit that will be contested in the petition for *certiorari*, that court is in the best position to address the merits of plaintiffs' stay application." *Cementos Guadalajara, S.A. v. United States*, 727 F. Supp. 614, 619 (Ct. Int'l Trade 1989) (citing *Magnum Import Co. v. Coty*, 262 U.S. 159, 163 (1923)); *see also Cementos Anahuac Del Golfo, S.A. v. United States*, 727 F. Supp. 620, 624 (Ct. Int'l Trade 1989) ("the clear implication of the mandate of the Federal Circuit is that the injunction be vacated and the case dismissed.").

In the decades following the *Cementos* decisions, numerous courts have addressed requests to stay the effect of appellate mandates and concluded that they lacked authority. *See A.F. Moore*, 974 F.3d at 839 (collecting cases). Although neither adopting nor disputing this view of section 2101(f), the Seventh Circuit explained that "the district court, like many other courts" agreed that "by permitting only a judge of the court that rendered the reviewable judgment or a justice to stay a judgment pending certiorari, § 2101(f) precludes a district judge from doing so." *Id*. at 839.

This plain reading of section 2101(f) as limiting review to appellate courts or a Justice of the Supreme Court permeates the caselaw. *See In re Time Warner Cable, Inc*., 470 F. App'x 389, 390 (5th Cir. 2012) ("Congress has only authorized the court of appeals or a Justice of the Supreme Court to stay the execution or enforcement of the court of appeals' judgment pending a petition for *certiorari*"); *In re Stumes*, 681 F.2d 524, 525 (8th Cir. 1982) ("it appears, therefore, that only a judge of this Court, or a justice of the Supreme Court, is empowered by 28 U.S.C. Section 2101(f) to stay the execution or enforcement of this Court's judgment"); *United States v. Lentz*, 352 F. Supp. 2d 718, 726 (E.D. Va. 2005) ("the great weight of recent, reasoned authority has concluded that § 2101(f) does not permit a district court to exercise jurisdiction to stay a circuit court's final judgment pending

14

filing or resolution of a certiorari petition"); *Whitehead v. Frawner*, No. CV 17-275 MV/KK, 2019 WL 4016334, at *1 (D.N.M. Aug. 26, 2019) ("*Rule 62 does not authorize a district court to stay the appellate court's judgment*. Rather, that power has been given to the appellate courts and the Supreme Court in 28 U.S.C. § 2101(f).") (emphasis added) (citation omitted).  In sum, this Court may not sit in judgment of the Federal Circuit, and the motion should be denied on this basis.

## II.   Even If This Court Could Entertain PrimeSource's Request, A Stay Is Unwarranted

As demonstrated above, the Court should summarily reject PrimeSource's motion as barred by the mandate rule.  Even if the Court were to proceed to the merits of the motion, PrimeSource cannot meet the stringent standard for a stay.  The movant for a stay pending decision on a petition for a writ of *certiorari* must demonstrate: (1) a reasonable probability that four Justices will consider the issue sufficiently meritorious to grant *certiorari*; (2) a fair prospect that a majority of the Court will vote to reverse the judgment below; and (3) a likelihood that irreparable harm will result from the denial of a stay.  *American Axle Manufacturing v. Neapco Holdings LLC*, 977 F.3d 1379, 1380 (Fed. Cir. 2020) (quoting *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010)).

15

**A.    There Is No Reasonable Probability That The Supreme Court Will Grant *Certiorari***

As explained above, "the threshold barrier confronting all stay applications [is whether there is] reasonable likelihood that the petition for *certiorari* will be granted."  *Cementos Guadalajara*, 727 F. Supp. at 619 (quoting *Houchins v. KQED, Inc*., 429 U.S. 1341, 1345 (1977)).  Plainly stated, it is unlikely that the Supreme Court will grant PrimeSource's petition, which is the *third* petition for writ of *certiorari* spawned by the Section 232 proceeding on steel, each of which involved a similar constitutional challenge under the "delegation doctrine" that sought to overturn longstanding Supreme Court precedent.  PrimeSource offers no plausible distinction that would likely lead the Supreme Court to grant its petition.

In addition to rehashing the same arguments presented in the *Transpacific* petition for a writ of *certiorari*, PrimeSource contends that the fact that this case involves "derivatives" of the "article" supports a new "delegation doctrine" challenge to Section 232 as well as meriting reversal under the "major questions" doctrine.

First, there is little basis to conclude that the Supreme Court would decide to revisit its unanimous conclusion that "the standards that [Section 232] provides the President in its implementation are clearly sufficient to

meet any delegation doctrine attack." *Fed. Energy Admin. v. Algonquin SNG, Inc*., 426 U.S. 548, 559 (1976).  PrimeSource contends that congressional delegation of authority with respect to "derivatives" of the article subject to the Section 232 proceeding pushes its delegation doctrine argument across the finish line.  Mot. at 19-25.  PrimeSource never explains how closing a loophole or reducing circumvention in harmony with the goals of the President's original proclamation, *see PrimeSource*, 59 F.4th at 1259, would support a constitutional delegation doctrine challenge.

Importantly, PrimeSource's speculation on the direction of future Supreme Court decisions does not indicate that this case would be a good vehicle for the Court to make sweeping changes to its separation of powers jurisprudence.  Rather, a delegation challenge would be especially weak given that "Section 232 'empowers and directs the President to act to alleviate *threats to national security* from imports.'"  *PrimeSource*, 59 F.4th at 1257 (quoting *Transpacific*, 4 F.4th at 1311) (emphasis added).  Unlike the other delegation cases that PrimeSource cites, Section 232 has one foot firmly planted within the President's authority under Article II § 2.  *See also Transpacific*, 4 F.4th at 1334 (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2421 (2018), noting that courts "cannot substitute our own assessment for the Executive's predictive judgments on such foreign-policy matters, all of

17

Case 1:20-cv-00032-TCS-JCG-MMB   Document 137   Filed 08/11/23   Page 25 of 33

which are delicate, complex, and involve large elements of prophecy.")
(internal bracketing omitted).

Even the dissent in *Gundy*, which plays a prominent role in
PrimeSource's motion and petition, supports Section 232's constitutionality.
Mot. at 21; Pet. at 22, 23, 25, 33.  Although the dissenting justice criticized
some applications of the nondelegation doctrine, it did not call into question
*Algonquin* specifically.  In fact, the dissenting justice confirmed that "no
separation-of-powers problem may arise" if the wide discretion granted in a
statute is to be exercised over matters already within the scope of executive
power, such as matters related to "foreign affairs."  *Gundy v. United States*,
139 S. Ct. 2116, 2137 (2019) (Gorsuch, J., dissenting).

Moreover, PrimeSource does not explain how Proclamation 9980
could be "stale," Mot. at 19, where the President acted to further the stated
capacity utilization goals of the original proclamation from only two years
before in response to evidence of circumvention.  Neither the motion nor the
petition acknowledges the findings of circumvention underpinning the
challenged proclamation.

Second, PrimeSource's "major questions" argument meets a similar
fate.  *Id*. at 18-25.  None of the decisions that PrimeSource cites involve the
President's authority over national security and foreign affairs.  *See* Mot. at

18

20-21 (citing *West Virginia v. EPA*, 142 S. Ct. 2587, 2608 (2022) (agency's

authority to regulate certain emissions of carbon pollution); *Biden v.*

*Nebraska*, 143 S. Ct. 2355, 2376 (2023) (Barrett, concurring) (Department

of Education student loan forgiveness program); *Alabama Ass'n of Realtors*

*v. Dep't of Health & Hum. Servs*., 141 S. Ct. 2485, 2489 (2021) (HHS

eviction moratorium)).

     And in any event, the major questions doctrine has been called the

"no-elephants-in-mouseholes canon." *Bostock v. Clayton Cnty., Georgia*,

140 S. Ct. 1731, 1753 (2020). In *Bostock*, the Court held that the Title VII

protections against discrimination on the basis of sex afforded protection

from discrimination based on sexual orientation or gender identity. The

Court reasoned that this interpretation of Title VII was an "elephant," but

that "elephant has never hidden in a mousehole; it has been standing before

us all along." *Id*. In the Section 232 context, the statutory authority granted

to the President is hardly an "elephant." Rather, it has long allowed for full

implementation of Section 232 measures, especially in addressing actions

that circumvent national security concerns. And in any event, as with Title

VII, if congressional authority for the President to take discretionary action

against imports that threaten national security is an "elephant," that

19

"elephant has never hidden in a mousehole; it has been standing before us all along." *Id*.

Lastly, the Federal Circuit is the sole appellate court to review appeals related to the imposition of tariffs. 28 U.S.C. §§ 1295(a)(5), 1581(i). Accordingly, it is highly unlikely that the Supreme Court would see the need to resolve a split between circuits or to resolve some other issue of general applicability in a specialized area of law that touches on national security and international affairs.

**B.   There Is No Fair Prospect That The Supreme Court Will Reverse**

As established above, PrimeSource cannot establish even a *de mimimis* probability that four Justices would accept its petition. As a result, it cannot establish any likelihood that *five* Justices would vote to reverse. Generally, Justices have stayed judgments below where there is a clear reversible error. *Hollingsworth v. Perry*, 558 U.S. 183, 190–91, (2010) (granting writ of *mandamus* based on "conclusion that the District Court likely violated a federal statute in revising its local rules."); *Lucas v. Townsend*, 486 U.S. 1301, 1305 (1988) (Marshall, J., in chambers) ("conclud[ing] that four Members of the Court would likely vote to note probable jurisdiction and that there is a fair prospect that the Court would vote to reverse the judgment below" in light of state action not in conformity

20

with Court's Voting Rights Act jurisprudence); *Rostker v. Goldberg*, 448

U.S. 1306, 1307, 1309 (1980) (staying lower court's invalidation of

Selective Service Act where "District Court concluded that the exclusion of

females from the registration provisions constitutes gender–based

discrimination," noting that "Brethren's application of the standard upon

which we have finally settled in a context as sensitive as that before me

cannot be predicted with anything approaching certainty.") (Brennan, J., in

chambers).  Unlike those cases, PrimeSource seeks a massive expansion of

the delegation and major questions doctrines into an area of law that is the

shared purview of the Legislative and Executive Branches.  In fact, its lead

authority – the *Gundy* dissent -- even carved out cases like this from the

direction that that PrimeSource contends that members of the Court are

telegraphing.  *Gundy*, 139 S. Ct. at 2137.

Moreover, PrimeSource's contention that *Transpacific* is inapposite

because the President's imposition of the Section 232 tariff on derivatives of

the steel article failed to follow his continuing plan from Proclamation 9705,

makes no sense.  Mot. at 24-25.  The President acted to address

circumvention of Proclamation 9705 and to further its primary stated goal.

Furthermore, Proclamation 9705 did not limit continuing action to the "steel

article" to the exclusion of derivatives:  "The Secretary shall inform the

President of *any circumstances* that in the Secretary's opinion might indicate the need for further action by the President under section 232." 83 Fed. Reg. at 11,628 (emphasis added).

### C.    PrimeSource's Motion Fails To Demonstrate Irreparable Harm

Finally, PrimeSource fails to demonstrate irreparable harm.  As an importer who acknowledges that it is paying the Section 232 tariff, a case or controversy would remain even if past entries were liquidated.  Mot. at 9. Moreover, PrimeSource proffers no evidence of business disruption that would occur if it were required to pay Section 232 deposits like any other importer.  *Id*.  Rather, it merely complains that there will be administrative burden involved in complying with its obligations as an importer.

First, even assuming that PrimeSource pays all deposits on past entries of subject merchandise and those entries are liquidated, there would remain a case or controversy as to the validity of Proclamation 9980, given that PrimeSource might continue to import and pay tariffs on subject derivative articles.  In fact, *Zenith* recognized that economic injury alone does not establish irreparable harm.  Instead, it explained that liquidation would render moot any challenge to the underlying antidumping duty annual review that created irreparable harm:

> we conclude that liquidation would indeed
> eliminate the only remedy available to Zenith for
> an incorrect review determination by depriving the
> trial court of the ability to assess dumping duties
> on Zenith's competitors in accordance with a
> correct margin on entries in the '79–'80 review
> period.  The result of liquidating the '79–'80
> entries would not be economic only.  In this  case,
> Zenith's statutory right to obtain judicial review of
> the determination would be without meaning for
> the only entries permanently affected by that
> determination.

*Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983).

Unlike the constricted universe of the *Zenith* entries, judicial review would remain meaningful for future entries in this case as well as for entries that remain unliquidated for some other reason.  The challenged Proclamations still stand, and PrimeSource has plausibly contended that it is a "person adversely affected or aggrieved by agency action within the meaning of section 702 of title 5."  28 U.S.C. § 2631.

Lastly, the fact that the Government may litigate the Courts' authority to order refunds of liquidated duties does not rise to the level of immediate irreparable harm.  Mot. at 11-12.  Of course, the outcome of future litigation that may or may not occur, remains "speculative."  *Otter Prod., LLC v. United States*, 37 F. Supp. 3d 1306, 1315 (Ct. Int'l Trade 2014).

PrimeSource's second business disruption argument fares no better given the absence of supporting evidence.  PrimeSource essentially claims

that it will be burdened by paperwork.  Mot. at 14-15.  "Critically, irreparable harm may not be speculative."  *Id*. (citing *Am. Inst. for Imported Steel, Inc. v. United States*, 600 F. Supp. 204, 209 (Ct. Int'l Trade 1984). The threat of irreparable harm must be "demonstrated by probative evidence," *id*. (citing *Am. Inst. for Imported Steel*, 600 F. Supp. at 209) (citation and quotation marks omitted), and "'cannot be determined by surmise,'" *id*. (quoting *Elkem Metals Co. v. United States*, 135 F. Supp.2d 1324, 1331 (Ct. Int'l Trade 2001) (citation omitted).

Rather than proffering any evidence, PrimeSource provides only attorney argument.  But "'[a]ttorney argument is not evidence.'"  *FastShip, LLC v. United States*, 892 F.3d 1298, 1309 (Fed. Cir. 2018) (quoting *Icon Health & Fitness, Inc. v. Strava, Inc*., 849 F.3d 1034, 1043 (Fed. Cir. 2017)) (bracketing by Court).

## CONCLUSION

For these reasons, we respectfully request that the Court deny PrimeSource's motion for a partial stay.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

24

/s/ *Tara K. Hogan*
TARA K. HOGAN
Assistant Director

/s/ *Stephen C. Tosini*
STEPHEN C. TOSINI
Senior Trial Counsel
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-5196
Email: stephen.tosini@usdoj.gov

August 11, 2023                    Attorneys for Defendants

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that this brief complies with the word-count limitation set forth in Standard Chambers Procedure  ¶ 2(B)(1).  In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief. According to the word count, this brief contains <u>5,094</u> words.

<u>s/Stephen C. Tosini</u>
STEPHEN C. TOSINI
August 11, 2023
