**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, M. MILLER BAKER,**
**JUDGES; THE HONORABLE TIMOTHY C. STANCEU, SENIOR JUDGE**

| | |
|---|---|
| **PRIMESOURCE BUILDING PRODUCTS, INC.** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | Ct. No. 20-00032 |
| ) | |
| **UNITED STATES, ET AL.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**REPLY TO DEFENDANTS' OPPPOSITION TO PLAINTIFF PRIMESOURCE
BUILDING PRODUCTS, INC.'S MOTION FOR PARTIAL STAY OF THE
ENFORCEMENT OF JUDGMENT PENDING APPEAL**

Jeffrey S. Grimson
Kristin H. Mowry
Jill A. Cramer
Sarah M. Wyss
Bryan P. Cenko
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
202.688.3610 (ph)
trade@mowrygrimson.com

September 12, 2023

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ..................................................................................... ii

ARGUMENT ........................................................................................................... 1

  I.    THIS COURT DOES NOT LACK JURISDICTION TO GRANT PRIMESOURCE'S MOTION FOR A PARTIAL STAY ............................................................................. 1

    A.   THIS COURT IS NOT STATUTORILY PROHIBITED FROM GRANTING PRIMESOURCE'S MOTION .................................................................................. 1

    B.   COURT PRECEDENT FROM THIS CIRCUIT DOES NOT SUPPORT DENYING PRIMESOURCE'S MOTION .................................................................................. 3

    C.   PRIMESOURCE'S MOTION DOES NOT CONFLICT WITH THE FEDERAL CIRCUIT'S MANDATE ......................................................................................... 6

    D.   THE IRREPARABLE HARM FACED BY PRIMESOURCE DISTINGUISHES THIS CASE FROM DECISIONS BY OTHER CIRCUITS ................................................. 11

  II.   THE GOVERNMENT FAILS TO DEMONSTRATE THAT PRIMESOURCE DID NOT MEET THE REQUIREMENTS TO GRANT A PARTIAL STAY ................................. 13

    A.   PRIMESOURCE FACES IRREPARABLE HARM ABSENT A PARTIAL STAY ...... 13

    B.   PRIMESOURCE HAS A FAIR CHANCE ON THE MERITS .................................... 16

    C.   PUBLIC INTEREST FAVORS GRANTING A PARTIAL STAY THAT WILL NOT SUBSTANTIALLY INJURE THE GOVERNMENT ........................................... 20

# TABLE OF AUTHORITIES

**Cases**

Ala. Assoc. of Realtors v. DHS,
   141 S. Ct. 2485 (2021) ........................................................................................... 18

AM/NS Calvert LLC v. United States,
   Nos. 21-00005, 21-00015, and 21-00027, 2023 Ct. Intl. Trade LEXIS 131 (Sep. 6, 2023) ..... 15

American Axle Manufacturing v. Neapco Holdings LLC,
   977 F.3d 1379 (Fed. Cir. 2020) ......................................................................... 16, 20

Banks v. United States,
   741 F.3d 1268 (Fed. Circ. 2014) ............................................................................. 7

Biden v. Nebraska,
   143 S. Ct. 2355 (2023) ......................................................................................... 17

Cargo of Brig Aurora v. United States,
   11 U.S. 382 (1813) .............................................................................................. 19

Cementos Anahuac Del Golfo, S.A. v. United States,
   13 CIT 981, 727 F. Supp. 620 (1989)............................................................. 3, 5, 10

Cementos Guadalajara, S.A. v. United States,
   13 CIT 975, 727 F. Supp. 614 (1989)................................................................. 3, 4

Cent. Soya Co. v. Geo. A. Hormel & Co.,
   723 F.2d 1573 (Fed. Cir. 1983) ............................................................................... 7

Engel Indus. Inc. v. Lockformer Co.,
   166 F.3d 1379 (Fed. Cir. 1999) ............................................................................... 7

Gonzalez v. Ingersoll Mill. Mach. Co.,
   133 F.3d 1025 (7th Cir. 1998) ................................................................................ 9

Gundy v. United States,
   139 S. Ct. 2116 (2019) ................................................................................... 18, 19

In re A.F. Moore & Assocs., Inc.,
   974 F.3d 836 (7th Cir. 2020) ...................................................................... 6, 7, 9, 10

In re Section 301 Cases,
   __ CIT __, 524 F. Supp. 3d 1355 (2021)........................................................ 10, 14, 15, 16

In re Stumes,
   681 F.2d 524 (8th Cir. 1982) ........................................................................11, 12

In re Time Warner Cable, Inc.,
   470 F. App'x 389 (5th Cir. 2012) ................................................................11, 12

Ins v. Chadha,
   462 U.S. 919 (1983) ............................................................................................ 18

Maple Leaf Fish Co. v. United States,
   762 F.2d 86 (Fed. Cir. 1985) ............................................................................. 17

Mobil Oil Corp. v. United States,
   1993 U.S. App. LEXIS 5581 (Fed. Circuit 1993) ............................................11

Nken v. Holder,
   556 U.S. 418 (2009) ............................................................................................ 16

Otter Prods., LLC v. United States,
   38 CIT 1931, 37 F. Supp. 3d 1306 (2014) ........................................................ 14

PrimeSource Building Products, Inc. v. United States,
   59 F.4th 1255 (Fed. Cir. 2023) ................................................................... 2, 8, 17

Touby v. United States,
   500 U.S. 160 (1991) ............................................................................................ 20

United States v. Curtiss-Wright Export Corp.,
   299 U.S. 304 (1936) ............................................................................................ 18

United States v. Lentz,
   352 F. Supp. 2d 718 (E.D. Va. 2005) ...........................................................11, 12

United States v. Roses, Inc.,
   706 F.2d 1563 (Fed. Cir. 1983) ......................................................................... 15

Util. Air Regul. Grp v. EPA,
   573 U.S. 302 (2014) ............................................................................................ 17

Wayman v. Southard,
   23 U.S. 1, 43 (1825) ............................................................................................ 18

West Viriginia v. EPA,
   142 S. Ct. 2587 (2022) ....................................................................................... 17

Whitehead v. Frawner,
   No. CV 17-275 MV/KK, 2019 WL 4016334 (D.N.M. Aug. 26, 2019) ...............................11, 12

Zivotofsky v. Kerry,
   576 U.S. 1 (2015) ................................................................................................................... 18

**Statutes**

19 U.S.C. § 1862 ................................................................................................. 17, 19, 20

28 U.S.C. § 1581 ..............................................................................................................11

28 U.S.C. § 1585 ................................................................................................................ 9

28 U.S.C. § 2101 ..........................................................................................................1, 2, 3, 11

28 U.S.C. § 2643 ................................................................................................................ 9

**Rules**

S. Ct. R. 23(3) ................................................................................................................... 3

**Constitutional Provisions**

U.S. Const. art. 1 § 8, cls. 1, 3 ........................................................................................ 18

Pursuant to the order from this Court, Plaintiff PrimeSource Building Products, Inc. replies to the opposition by Defendants (the "Government") to PrimeSource's Motion for Partial Stay of the Enforcement of Judgment Pending Appeal.  See Defs.' Opp'n to Pls.' Mot. to Stay Enforcement of the Federal Circuit's Mandate (Aug. 11, 2023), ECF No. 137 ("Gov.'s Resp.")

## ARGUMENT

### I.    THIS COURT DOES NOT LACK JURISDICTION TO GRANT PRIMESOURCE'S MOTION FOR A PARTIAL STAY

The Government wrongly maintains that this Court lacks jurisdiction to grant PrimeSource's motion for a partial stay of the enforcement of judgment pending appeal.  See Gov.'s Resp. at 9-15.  This Court is not statutorily barred from granting PrimeSource's motion for a partial stay because PrimeSource's requested relief does not conflict with the mandate of the U.S. Court of Appeals for the Federal Circuit and instead implicates this Court's inherent discretion in determining the timing of its enforcement of the Federal Circuit's mandate.

### A.    THIS COURT IS NOT STATUTORILY PROHIBITED FROM GRANTING PRIMESOURCE'S MOTION

28 U.S.C. § 2101(f) does not bar this Court from ordering a partial stay of the enforcement of its judgment in slip opinion 23-101.  See Gov.'s Resp. at 12-15.  The Government maintains that this Court lacks jurisdiction to grant PrimeSource's motion for a partial stay because 28 U.S.C. § 2101(f) states that a stay may be granted by a "judge of the court rendering the judgment or decree by justice of the Supreme Court."  Gov.'s Resp. at 12 (quoting 28 U.S.C. § 2101(f)).  The statute's operative clause, however, is that a stay may be granted by "the court rendering the judgment."  28 U.S.C. § 2101(f).  This Court rendered the judgment from which PrimeSource seeks a partial stay.  Although the Government is correct that PrimeSource's petition for writ of certiorari seeks review of the holding of the Federal Circuit that the President lawfully imposed

Section 232 tariffs on steel derivative products in Proclamation 9980, see PrimeSource Building Products, Inc. v. United States, 59 F.4th 1255, 1263 (Fed. Cir. 2023), PrimeSource's motion for a partial stay instead seeks relief from this Court's judgment.  Specifically, this Court ordered that "entries affected by this litigation shall be liquidated in accordance with the decision of the Court of Appeals." Judgment, Slip op. 23-101 at 2 (July 13, 2023), ECF No. 134 ("Judgment") (emphasis added).  While this Court's judgment "is in accordance with" the decision from the Federal Circuit, ultimately the "render{ed} judgment" subject to a partial stay under 28 U.S.C. § 2101(f) is this Court's order to liquidate PrimeSource's entries.   This Court, therefore, is the appropriate venue for PrimeSource to seek a partial stay.

PrimeSource, however, recognizes as discussed below that this Court may lack authority to order a full stay as such relief may conflict with the Federal Circuit's mandate.  As such, PrimeSource's proposed relief specifies that it would pay duties on its future entries following this Court's judgment in slip opinion 23-101 such that the Federal Circuit's mandate can go into full effect.  See Pl. PrimeSource's Mot. for Partial Stay of the Enforcement of J. Pending Appeal at 7 (July 21, 2023), ECF No. 136 ("PrimeSource's Mot.").  PrimeSource's requested relief merely consists of a continuation of the suspension of liquidation of its entries and a partial stay on the payment of duties on its past entries that are fully secured by PrimeSource's bonds.  See id.  This Court can, and should, exercise its inherent discretion over the timing of the implementation of the Federal Circuit's mandate to grant PrimeSource's motion for a partial stay.

Interpreting 28 U.S.C. § 2101(f) as not barring this Court from granting a partial stay of its judgment is consistent with Supreme Court Rule 23.  The Government maintains that the Supreme Court is the "appropriate court" for PrimeSource to seek a partial stay.  Gov.'s Resp. at 9.  The Government, however, ignores that the Supreme Court will not entertain an "application for a stay

2

. . . unless the relief request was first sought in the appropriate court or <u>courts</u> below or from a judge or <u>judges</u> thereof." S. Ct. R. 23(3). The reference by Supreme Court Rule 23(3) to "courts" or "judges" acknowledges that there may be more than one court that can grant a stay prior to seeking such relief from the Supreme Court. In the case of an appeal from the Federal Circuit, this Court is the only other available court to seek relief in the form of a partial stay. Supreme Court Rule 23(3) would be nonsensical if PrimeSource's requested relief was also not available from this Court.

In sum, 28 U.S.C. § 2101(f) does not expressly bar this Court from granting PrimeSource's motion because PrimeSource is not seeking a <u>full</u> stay from the Federal Circuit's mandate but rather a <u>partial</u> stay of the timing of the enforcement of this Court's judgment.

### B. COURT PRECEDENT FROM THIS CIRCUIT DOES NOT SUPPORT DENYING PRIMESOURCE'S MOTION

Past case precedent from the court is distinguishable from this matter and does not support this Court denying PrimeSource's motion for a partial stay. The Government emphasizes that this Court has twice denied Rule 62 motions for a stay pending appeal after the Federal Circuit has issued its mandate. <u>See</u> Gov.'s Resp. at 13 (citing <u>Cementos Guadalajara, S.A. v. United States</u>, 13 CIT 975, 979, 727 F. Supp. 614, 619 (1989) ("<u>Cementos I</u>") and <u>Cementos Anahuac Del Golfo, S.A. v. United States</u>, 13 CIT 981, 986, 727 F. Supp. 620, 624 (1989) ("<u>Cementos II</u>")). Not only is this Court not bound by the court's past decisions, but the holdings in both <u>Cementos I</u> and <u>Cementos II</u> do not prohibit this Court from granting PrimeSource's motion. PrimeSource's motion for a partial stay implicates this Court's inherent discretion over the timing of enforcing the Federal Circuit's mandate through its own judgment. Further, the facts in this case are distinguishable from both <u>Cementos I</u> and <u>Cementos II</u> and, therefore, this Court should not

conclude that these cases represent persuasive authority that this Court is barred from granting a partial stay after the Federal Circuit has issued its mandate.

The holding in Cementos I does not prohibit this Court from granting PrimeSource's motion for partial stay because the Court in Cementos I did not expressly state that it could not grant a stay of the enforcement of its judgment. See Cementos I, 13 CIT at 979, 727 F. Supp. at 618. In Cementos I, the Court held that "it can be argued that the Court is empowered to grant {a motion to stay} to maintain the status quo." Id. While the Court recognized that an "inferior court has no power or authority to deviate from the mandate of the appellate court," it nonetheless noted that it is "well settled that a court retains power to grant injunctive relief to a party to a party to preserve the status quo." Id. (internal citations omitted). Ultimately the Court determined that even if it had the power to grant a stay, the facts of the case were "not the circumstances under which this Court should exercise that power." Id. The Court never expressly denied that it lacked the authority to order a stay but instead determined that the facts in Cementos I did not warrant a stay.

The facts here warrant this Court granting PrimeSource's motion for a partial stay. The Court in Cementos I found that circumstances did not warrant a stay because plaintiff had not sought a similar stay at the Federal Circuit. Id. at 980-81, 727 F. Supp. at 619. PrimeSource, as the Government acknowledges, sought a full stay of the Federal Circuit's mandate. See Gov.'s Resp. at 1. PrimeSource cannot be faulted for not pursuing all avenues of relief. Further, although the Court in Cementos I noted that an appellate court is in the best position to rule on a motion for a stay as its decision will be contested in the petition for certiorari, the Court nonetheless faulted plaintiffs for not "appris{ing} {it} of the basis contemplated for their certiorari petition." Cementos I, 13 CIT at 980, 727 F. Supp. at 619. As a result, the Court concluded that it was "bereft

of any basis" to rule on whether the Supreme Court is reasonably likely to grant certiorari.  Id. PrimeSource not only apprised this Court of the reasoning underlying its petition for certiorari but also established that it met the requirements for this Court to grant its motion.  See PrimeSource's Mot. at 8-30.

In particular, PrimeSource demonstrated that it would suffer irreparable harm absent a partial stay because the liquidation of its entries may moot any potential appeal to the Supreme Court as well as preempt the availability of refunds on PrimeSource's past entries.  See id. at 10-13.  Although the Court in Cementos I ultimately denied plaintiff's motion, it nonetheless recognized that:

> Liquidation of the entries prior to the determination by the Supreme Court of the petition for certiorari would cause irreparable injury to the plaintiffs and deprive them of the relief they are seeking even if the Supreme Court were to rule in their favor.

Cementos I, 13 CIT at 979, 727 F. Supp. at 618.  Here, unlike in Cementos I, PrimeSource demonstrated that it met all of the factors necessary for this Court to grant a partial stay.  As PrimeSource's motion does not suffer from the same procedural flaws as plaintiff's motion in Cementos I, this Court should not be swayed by the Government's argument that Cementos I supports a denial of PrimeSource's motion.

Similarly, this Court's holding in Cementos II does not support this Court denying PrimeSource's motion for a partial stay because the Court in Cementos II recognized that while a lower court may not be able to grant a full stay it maintains some discretion to grant lesser relief. In Cementos II, the court held that it was "appropriate to repeat the conclusion reached in {Cementos I}."  Cementos II, 13 CIT at 986, 727 F. Supp. at 624.  The Court concluded that it could not extend the ongoing injunction "for the entire length of time the plaintiff presumably requires to obtain a writ of certiorari from the Supreme Court."  Id. at 987, 727 F. Supp. at 624

(emphasis added). Nonetheless, unlike in <u>Cementos I</u>, the court found that it could extend the temporary restraining order that was in place for an additional 10 days because plaintiffs established good cause. <u>See</u> <u>Cementos II</u>, 13 CIT at 986, 727 F. Supp. at 624. The Court reasoned that although the "clear implication of the mandate of the Federal Circuit is that the injunction be vacated and the case dismissed," by extending the temporary restraining order the Court recognized that it does maintain some authority to grant partial relief to Plaintiffs. <u>Id.</u> In short, while this Court may not be able to grant a <u>full</u> stay, it nonetheless could grant PrimeSource's motion for a <u>partial</u> stay addressing only the timing of enforcement of one aspect of the Federal Circuit's mandate. By narrowly crafting its motion as a <u>partial</u> stay, as described in detail below, PrimeSource ensured that its request for relief does not conflict with the Federal Circuit's mandate and instead falls under this Court's inherent discretion to control the timing of its judgments.

For these reasons, this Court should reject the Government's arguments that past precedent where the Court has denied Rule 62 motions for stay pending appeal after the Federal Circuit issued its mandate support this Court denying PrimeSource's motion. Not only has the Court not outright concluded that it could not grant partial relief to a plaintiff once the Federal Circuit issued its mandate, but also the facts underlying the Court's reasoning for rejecting the Rule 62 motions in both <u>Cementos I</u> and <u>Cementos II</u> are distinguishable from this action.

## C. PRIMESOURCE'S MOTION DOES NOT CONFLICT WITH THE FEDERAL CIRCUIT'S MANDATE

PrimeSource narrowly crafted its motion for a <u>partial</u> stay to not conflict with the Federal Circuit's mandate. The Government analogizes PrimeSource's motion to the Seventh Circuit denying a similar, but importantly not identical, motion for a <u>full</u> stay in <u>In re A.F. Moore & Assocs., Inc.</u>, 974 F.3d 836 (7th Cir. 2020). <u>See</u> Gov.'s Resp.at 2, 10-11. Like the cases mentioned above, the Seventh Circuit in <u>A.F. Moore</u> never held that 28 U.S.C. § 2101(f) precluded a district

court judge from granting a stay pending a petition for a writ of certiorari. See 974 F.3d at 839. The Seventh Circuit held that it "s{aw} no need to evaluate the district court's interpretation of § 2101(f)." Id. Instead, the Seventh Circuit reversed the district court's stay because it "was in direct opposition to {the court's} mandate." Id. Given that PrimeSource's motion for a partial stay does not conflict with the Federal Circuit's mandate, as set forth below, this Court should reject the Government's assertion that A.F. Moore "presents an identical procedural posture" and "is persuasive authority" supporting a rejection of PrimeSource's motion. Gov.'s Resp. at 11.

The lynchpin to the Seventh Circuit's holding in A.F. Moore that the district court could not grant a motion to stay was that the Seventh Circuit had previously denied plaintiff's request for the same relief by refusing to stay its mandate. See A.F. Moore, 974 F.3d at 841. While this Court cannot act in violation of the Federal Circuit's mandate, the Government is incorrect that PrimeSource's motion for partial stay conflicts with the Federal Circuit's mandate. See Gov.'s Resp. at 9-10.[1] A court must "remain mindful that the interpretation of the scope of a court's mandate may be uncertain" and "both the letter and the spirit of the mandate must be considered." Engel Indus. Inc. v. Lockformer Co., 166 F.3d 1379, 1383 (Fed. Cir. 1999). Here, while the Federal Circuit denied PrimeSource's motion for a stay of its mandate, PrimeSource's motion before this Court does not request a full stay of the mandate but instead a partial stay of this Court's judgment regarding only the timing of implementation of one aspect of the Federal Circuit's mandate.

---

[1] The Federal Circuit has explained that "{t}he mandate rule, encompassed by the broader law-of-the-case doctrine, dictates that 'an inferior court has no power or authority to deviate from the mandate issued by an appellate court.'" Banks v. United States, 741 F.3d 1268, 1276 (Fed. Circ. 2014) (internal citation omitted). The law-of-the-case doctrine, however, was "judicially created to ensure judicial efficiency and to prevent the possibility of endless litigation." Cent. Soya Co. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1580 (Fed. Cir. 1983). Judicial efficiency supports granting PrimeSource's motion to prevent further litigation on the availability of refunds if the Supreme Court reverses the Federal Circuit's decision.

PrimeSource's motion for a partial stay, by focusing on the actions of this Court, meets the "letter and the spirit" of the Federal Circuit's mandate.

The Federal Circuit's mandate in no way dictated the pace at which this Court must order the collection of duties on PrimeSource's entries. Specifically, the Federal Circuit's formal mandate was issued "in accordance with the judgment" of the Federal Circuit. Mandate, PrimeSource, 59 F.4th 1255 (Fed. Cir. 2023) (Fed. Cir. No. 21-2066) at 2, ECF No. 101. In its decision, the Federal Circuit merely held that it "reverse{d} the judgments of the Trade Court and remand{ed} the case for entry of judgment against PrimeSource." PrimeSource, 59 F.4th at 1263. This Court complied with the Federal Circuit's mandate by entering judgment for the United States. See Judgment at 1. PrimeSource acknowledges that the "letter and the spirit of the mandate" requires that this Court cannot continue a stay on PrimeSource's future entries as Proclamation 9980 was found to be lawful and delaying collection of duties on future imports would change the status quo. Consequently, PrimeSource narrowly defined its motion such that it would pay cash deposits on any of its entries going forward from the date of this Court's judgment. See PrimeSource's Mot. at 7.[2] PrimeSource's motion allows for the Federal Circuit's mandate to go into effect for all of PrimeSource's future entries as opposed to PrimeSource's requested relief at the Federal Circuit that would have stayed payment on all of PrimeSource's entries. PrimeSource's requested relief, the continuation of the suspension of liquidation of PrimeSource's entries subject to this litigation and a partial stay on the timing payment of duties on its past entries, does not conflict with the Federal Circuit's mandate. Instead, PrimeSource's motion implicates

---

[2] PrimeSource informs this Court that U.S. Customs and Border Protection ("CBP") has started requiring PrimeSource to pay cash deposits of the Section 232 duties on recent entries.

this Court's inherent discretion over the timing of the implementation of the Federal Circuit's mandate through this Court's own judgment.

PrimeSource's requested relief fails squarely within this Court's inherent discretion to grant necessary relief and to decide the pace of the enforcement of its own judgment. See 28 U.S.C. §§ 2643(c)(1) (authorizing this Court to "order any other form of relief that is appropriate in a civil action"), 1585 (stating that this Court "shall possess all the powers in law and equity of, or as conferred by statute upon, a district court"). In advocating for A.F. Moore supporting the rejection of PrimeSource's motion, the Government ignores that the Seventh Circuit concluded that its mandate "{d}oes not obligate the court to rush to final judgment" as the "district court . . . has broad discretion to decide what the pace should be." 974 F.3d at 841; see also Gonzalez v. Ingersoll Mill. Mach. Co., 133 F.3d 1025, 1030 (7th Cir. 1998) ("District court judges, because of the very nature of the duties and responsibilities accompanying their position, possess great authority to manage their caseload."). Again, PrimeSource's motion for a partial stay merely requests a continuation of the suspension of liquidation of PrimeSource's entries as well as a delay in the payment of duties on PrimeSource's past entries pending resolution of its petition for certiorari at the Supreme Court. The unique circumstances in this case allow for these requests to not conflict with the Federal Circuit's mandate because the Government's interest in duties covering PrimeSource's past entries remains fully secured by PrimeSource's continuous and supersedeas bonds. See PrimeSource's Mot. at 7. As the Government's interest is fully secured, the actual payment of these duties by PrimeSource falls within this Court's inherent discretion to determine the pace of its own judgment.

Finally, the facts leading to the Seventh Circuit reversing a stay granted by the district court in A.F. Moore are distinguishable from this action. The Seventh Circuit faulted the district court

for not examining the likelihood that the Supreme Court would grant certiorari and then reverse the Seventh Circuit's judgment.  See A.F. Moore, 974 F.3d at 841.  By contrast, PrimeSource demonstrated that there is a reasonable probability that the Supreme Court will grant certiorari and a fair chance that PrimeSource will succeed on the merits.  See PrimeSource's Mot. at 15-27. Further, the Seventh Circuit concluded that even if the district court had conducted such analysis, the district's reasoning would be flawed because the "{t}hat analysis is only a step removed from a court declaring that it was right all along and entering the judgment just reversed—the most obvious violation of the mandate rule." A.F. Moore, 974 F.3d at 841.  But here, the burden on this Court to find that PrimeSource's petition is likely to succeed on the merits is significantly lower given the irreparable harm PrimeSource faces if the availability of refunds is mooted out by the liquidation of its entries.   See Cementos II, 13 CIT at 984, 727 F. Supp. at 622 (explaining that "the requisite showing of likelihood of success on the merits is in 'inverse proportion to the severity of the injury the moving party will sustain without injunctive relief.'" (internal citation omitted)). While the existence of a substantial question may be sufficient to grant the stay, at a minimum, where there is a risk of irreparable harm, the bar is lowered to PrimeSource only needing to demonstrate that there is a "fair chance of the merits."  In re Section 301 Cases, __ CIT __, __, 524 F. Supp. 3d 1355, 1367 (2021); see also PrimeSource's Mot. at 15. This lower threshold, thus, obviates the need for this Court to rule that it was right all along (i.e., that PrimeSource is likely to succeed) and instead must just find that PrimeSource has a "fair chance" of success on the merits.

In sum, the Seventh Circuit's judgment in A.F. Moore does not represent persuasive authority that this Court should reject PrimeSource's motion.  Not only are the facts here distinguishable from A.F. Moore, but the Seventh Court did not expressly prohibit a district court

from granting a motion like PrimeSource's to the extent that the motion does not conflict with the Federal Circuit's mandate.

### D. THE IRREPARABLE HARM FACED BY PRIMESOURCE DISTINGUISHES THIS CASE FROM DECISIONS BY OTHER CIRCUITS

PrimeSource acknowledges that other circuit and district courts have found that the plain language of 28 U.S.C. § 2101(f) prevents a district court, such as this Court, from granting a stay pending the resolution of a petition for certiorari after the appellate court has issued its mandate. See Gov.'s Resp. at 14-15 (citing In re Time Warner Cable, Inc., 470 F. App'x 389, 390 (5th Cir. 2012); In re Stumes, 681 F.2d 524, 525 (8th Cir. 1982); United States v. Lentz, 352 F. Supp. 2d 718, 726 (E.D. Va. 2005); Whitehead v. Frawner, No. CV 17-275 MV/KK, 2019 U.S. Dist. LEXIS 145701, at *4 (D.N.M. Aug. 26, 2019)). These cases, however, merely represent persuasive authority. See, e.g., Mobil Oil Corp. v. United States, 1993 U.S. App. LEXIS 5581, *11 (Fed. Circuit 1993) ("A decision of a sister circuit is only persuasive authority, not binding precedent . . . ."). Further, the reasoning underlying these courts' determinations is distinguishable from the unique circumstances in this circuit concerning the irreparable harm facing PrimeSource if its entries liquidate prior to a decision by the Supreme Court.

The exclusive subject matter jurisdiction of this Court distinguishes it from other courts especially where that exclusive jurisdiction presents a unique issue – the potential irreparable harm from the liquidation of a customs entry – that cannot be the subject of other district and circuit courts' decisions. The Government itself has argued in this very case that liquidation of PrimeSource's entries may be final. See PrimeSource's Mot. at 11. Because this Court sits alone as the district court with jurisdiction over customs entries, including the legal effect and finality of liquidation, the persuasive value of other courts' decisions is limited. See 28 U.S.C. § 1581.

The Government is incorrect that PrimeSource's motion seeks for this Court to "sit in judgment of the Federal Circuit."  Gov.'s Resp. at 15.  In its motion to stay the mandate at the Federal Circuit, PrimeSource sought a <u>full</u> stay of the mandate.  Here, PrimeSource only seeks a <u>partial</u> stay on the removal of the suspension of liquidation and payment of duties on its past entries.  By contrast, all the cases cited to by the Defendants concern requests for a full stay.  <u>See</u> <u>Time Warner</u>, 470 F. App'x at 389 (5th Cir. 2012); <u>Stumes</u>, 681 F.2d at 525; <u>Lentz</u>, 352 F. Supp. 2d at 721; <u>Whitehead</u>, 2019 U.S. Dist. LEXIS 145701, *2.  The cases relied on by the Government, therefore, are factually distinguishable from this action.  This Court need not find that it is barred from ordering a stay under 28 U.S.C. 2101(f) when PrimeSource does not seek a <u>full</u> stay of the Federal Circuit's mandate.

Like the seventh circuit in <u>A.F. Moore</u>, other courts have recognized that a district court maintains its inherent discretion over the <u>timing</u> of its enforcement of the appellate court's mandate.  For instance, the Eighth Circuit in <u>Stumes</u> ultimately denied a writ of mandamus seeking a review of the order of the district court to stay the appellate court's mandate.  <u>See</u> <u>Stumes</u>, 681 F.2d at 525.  Although the Eighth Circuit was not convinced that 28 U.S.C. § 2101(f) provided the district court with the authority to stay the mandate of the appellate court, it nonetheless determined that the district court did not "abus{e} its discretion" in "tak{ing} the view that it would be unreasonable to release petitioner, or to require that State begin to try him again, before the Supreme Court has acted on the States petition."  <u>Id.</u>  The Eighth Circuit, thus, recognized that a district court maintains some inherent discretion to order a stay.  <u>See</u> <u>id.</u>; <u>see also</u> <u>Lentz</u>, 352 F. Supp. 2d at 728 (holding that "a district court retains discretion on remand to schedule cases and to set its docket" and the district court may "invoke this discretion to the extent that its exercise is consistent with the letter and the spirt of a court's mandate").  The unique circumstances

surrounding the irreparable harm faced by PrimeSource if its entries liquidate, harm not faced by plaintiffs in other circuits, warrant this Court exercising its discretionary authority to control the timing of its judgment that enforces the Federal Circuit's mandate.

## II. THE GOVERNMENT FAILS TO DEMONSTRATE THAT PRIMESOURCE DID NOT MEET THE REQUIREMENTS TO GRANT A PARTIAL STAY

This Court should not be persuaded by the Government's opposition to PrimeSource's motion for a partial stay because PrimeSource established that it will be irreparably harmed absent a partial stay and PrimeSource's petition for certiorari also has reasonable probability of being granted with a fair chance on the merits at the Supreme Court.

### A. PRIMESOURCE FACES IRREPARABLE HARM ABSENT A PARTIAL STAY

PrimeSource established that it will suffer irreparable harm because liquidation of its entries may moot any appeal before the Supreme Court and the availability of refunds on its past entries. See PrimeSource's Mot. at 9-15. Further, PrimeSource will face significant business disruption to pay back the cash deposits of Section 232 duties on its past entries even though payment may ultimately be unnecessary if the Supreme Court reverses the Federal Circuit's judgment. See id. The Government's arguments that PrimeSource failed to demonstrate that it would be irreparably harmed absent a partial stay fall flat as they contradict the Government's own arguments before this Court and the well-known timing and resources that a company must expend to correct its past entries.

The Government does not dispute that liquidation of PrimeSource's past entries may moot out PrimeSource's appeal but instead maintains that there "would remain a case or controversy as to the validity of Proclamation 9980 given that PrimeSource might continue to import and pay tariffs on subject derivative articles." See Gov.'s Resp. at 22. The Government erroneously

focuses only on future importations which are not the subject of PrimeSource's motion.   Despite faulting PrimeSource's claims regarding the irreparable harm it faces on its past entries as being "speculative," the Government nonetheless presumes that PrimeSource will continue to have imports of derivative steel products.   Gov.'s Resp. at 23.   The Government cannot have it both ways.   It cannot presume that PrimeSource's claim will not be mooted based on its future entries while at the same time questioning the allegedly speculative nature of PrimeSource's arguments. The Government's argument also misses the mark because even if PrimeSource continues to have future imports of derivative steel products, the liquidation of PrimeSource's past entries may "foreclose Plaintiffs' ability to challenge the Government's imposition of duties paid or <u>have those</u> <u>duties returned</u>" on those specific entries.   <u>In re Section 301 Cases</u>, __ CIT __, __, 524 F. Supp. 3d 1355, 1362 (2021) (emphasis added).   The Government's sole focus on PrimeSource's future entries represents an implicit recognition that, at a minimum, PrimeSource may suffer irreparable harm if its past entries liquidate and this Court cannot order refunds of those liquidated duties.

Further, the Government claims that PrimeSource's assertion that the harm it may suffer if its entries liquidate is purely speculative cannot withstand scrutiny when the Government previously made the opposite argument before this Court.   <u>See</u> Gov.'s Resp. at 23 (quoting <u>Otter</u> <u>Prods., LLC v. United States</u>, 38 CIT 1931, 1939, 37 F. Supp. 3d 1306, 1315 (2014)).   The Government itself argued that it would be irreparably harmed due to the liquidation of PrimeSource's entries pending appeal at the Federal Circuit.   <u>See</u> PrimeSource's Mot. at 11.   Unlike in <u>Otter Products</u>, as relied on by the Government, the speculation of harm does not relate to possible monetary damages from future sales or loss of market position but the availability of refunds for PrimeSource's past entries (i.e., products PrimeSource has already sold).   <u>See</u> <u>Otter</u> <u>Prods.</u>, 38 CIT at 1939, 37 F. Supp. 3d at 1315-1316.   The Government recently argued in a

separate action that refunds are not available once an entry liquidates.  See AM/NS Calvert LLC v. United States, Nos. 21-00005, 21-00015, and 21-00027, 2023 Ct. Intl. Trade LEXIS 131, at *21 (Sep. 6, 2023).  Although the Court in AM/NS Calvert held that this Court possesses the right to order reliquidation, the Court concluded that such relief is subject to equitable principles that may not be appropriate in all circumstances and may be limited to claims under the Administrative Procedures Act.  See id. at 37-38.  As the availability of refunds is not guaranteed, consistent with the Government's own argument in this very case, liquidation of PrimeSource's entries is sufficient to establish irreparable harm.  See Section 301 Cases, __ CIT at __, 524 F. Supp. 3d at 1362.

Finally, the Government's claim that PrimeSource failed to submit probative evidence that it will not suffer business disruptions if it is forced to pay back duties on its past entries prior to the Supreme Court ruling on PrimeSource's petition for certiorari is not grounded in the well-established process of liquidation.  See Gov.'s Resp. at 23-24.  The concept of judicial notice allows a court to recognize a fact in the absence of formal proof when the fact is "not subject to reasonable dispute" and when its "generally known within the territorial jurisdiction."  United States v. Roses, Inc., 706 F.2d 1563, 1569 (Fed. Cir. 1983).  The Government itself acknowledges that "CBP intends to order PrimeSource to correct its entry forms."  Gov.'s Resp. at 8.  It is well established within the trade and customs bar that correcting an entry is a time-consuming process especially where the mechanism that PrimeSource will issue payments to CBP is not established given that certain of PrimeSource's entries remain suspended by other injunctions.  Nor are the significant resources that PrimeSource must expend to correct its entries and issue payment to CBP speculative.  The process implemented by CBP in the Transpacific case, covering a mere nine months compared to the years of entries subject to Proclamation 9980, illustrates the significant efforts required by plaintiffs to issue payment to CBP in a similar action.  See PrimeSource's Mot.

at 13-14.  No further facts are necessary for this Court to find that Prime Source will be irreparably harmed absent a partial stay because it will suffer significant business disruptions associated with correcting its past entries to pay the applicable the cash deposits of Section 232 duties.

For these reasons, this Court must reject the contentions by the Government that PrimeSource failed to establish that it will be irreparably harmed absent a partial stay.

### B.  PRIMESOURCE HAS A FAIR CHANCE ON THE MERITS

PrimeSource also demonstrated that it has reasonable probability that the Supreme Court will both grant its petition for certiorari and a fair chance (prospect) that the Supreme Court will reverse the judgment of the Federal Circuit.  See PrimeSource's Mot. at 15-26.[3]  The Government's arguments fail to capture how PrimeSource's questions presented to the Supreme Court are distinguishable from past petitions for certiorari by focusing on the applicable standard of review that when properly applied cannot support the Federal Circuit's expansive interpretation of the President's powers under Section 232.  See Gov.'s Resp. at 16-22.

Contrary to the assertions by the Government, PrimeSource's petition for certiorari is distinguishable from recently rejected petitions also challenging the President's authority to impose tariffs under Section 232.  Although PrimeSource's petition for certiorari also concerns

---

[3] As PrimeSource's motion is for a partial stay is before this Court, PrimeSource addressed the four factors that a district court will examine to grant a stay or preliminary injunction as opposed to the three factors examined by the Federal Circuit in determining whether to stay the mandate. Compare Nken v. Holder, 556 U.S. 418, 438 (2009) with American Axle Manufacturing v. Neapco Holdings LLC, 977 F.3d 1379, 1380 (Fed. Cir. 2020).  These two standards are nonetheless comparable. Under PrimeSource's test, where a movant has demonstrated significant irreparable harm absent a stay, a movant need only show "a fair chance on the merits."  PrimeSource's Mot. at 17 (quoting Section 301 Cases, __CIT at __, 524 F. Supp. 3d at 1367 (emphasis added)).  Under the test argued for by the Government, PrimeSource would need to show "a reasonable probability" that the Supreme Court will grant certiorari and ultimately a "fair prospect" that the Supreme Court will reverse the judgment below.  American Axle, 977 F.3d at 1380 (emphasis added) The Government, therefore, does not disagree with PrimeSource's assertion that applicable standard is either a "fair" chance or prospect for success at the Supreme Court.

separation-of-powers principles, instead of focusing on the non-delegation doctrine as the Government asserts, see Gov.'s Resp. at 16-17, the crux of PrimeSource's question presented to the Supreme Court focuses on the applicable standard of review applied by the Federal Circuit. See PrimeSource's Mot. at 18-19, Attachment 1.  The Federal Circuit applied a highly deferential standard of review that required PrimeSource to establish "a clear misconstruction of the governing statute, a significant procedural violation, or action outside delegated authority." PrimeSource, 59 F.4th at 1260 (quoting Maple Leaf Fish Co. v. United States, 762 F.2d 86, 89 (Fed. Cir. 1985)). This standard, however, cannot be reconciled with the major questions doctrine that the Supreme Court has adopted to protect the Constitution's division of authority between branches.  Under this standard, the Executive's claim of power can prevail only if it can "point to clear congressional authorization." West Viriginia v. EPA, 142 S. Ct. 2587, 2609 (2022).  When the proper standard of review is applied, it is clear that Congress did not intend to allow the President to impose tariffs outside of the mandatory time-constraints present in Section 232.   See PrimeSource's Mot. Attachment 1, pp. 25-30.

Although the Government is correct that the Supreme Court has not addressed the precise legal question concerning the applicability of the major questions doctrine to matters of foreign trade and national security, see Gov.'s Resp. at 18-19, the underlying constitutional considerations are the same. The President's attempts to legislate the terms of international trade in a product deemed essential to national security is a question of "vast economic and political significance." Util. Air Regul. Grp v. EPA, 573 U.S. 302, 324 (2014).  The scope of the delegation is enormous, allowing the President to respond to the perceived threat with whatever "action that, in the judgment of the President, must be taken to adjust imports." 19 U.S.C. § 1862(c)(1)(A)(ii); see also Biden v. Nebraska, 143 S. Ct. 2355, 2373 (2023) (invoking major questions doctrine where

agency claimed "virtually unlimited power to rewrite the Education Act"); Ala. Assoc. of Realtors v. DHS, 141 S. Ct. 2485, 2489 (2021) (calling Government's claim of authority "breathtaking" where only limit was that an agency "deem a measure 'necessary'"). There can be no claim that Congress made the principal policy decisions itself, leaving it to the President to "fill up the details." Wayman v. Southard, 23 U.S. 1, 43 (1825).  The only choice Congress made was to direct the President to make the relevant policy decisions.  Under Section 232, then, significant matters of national trade law are "nothing more than the will of the current President."  Gundy v. United States, 139 S. Ct. 2116, 2135 (2019) (Gorsuch, J., dissenting).  That is the opposite of the liberty-preserving process Congress ordained for the creation of law.  See id. at 2134.

Nor are the Government's arguments persuasive that this case will not serve as a proper vehicle for the Supreme Court to advance its separation-of-powers jurisprudence, and as result there is also not a fair chance that the Supreme Court will reverse, given that Section 232 implicates the President's authority over foreign affairs.  See Gov.'s Resp. at 17-18.  The President's powers over foreign affairs and national security "like every other governmental power, must be exercised in subordination to the applicable provisions of the Constitution."  United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 320 (1936).  Although the branches may comingle, the "powers delegated to the three Branches are functionally identifiable."  INS v. Chadha, 462 U.S. 919, 951 (1983).  Deference to the will of Congress is all the more important here where Congress maintains the exclusive "power to lay and collect {t}axes, {d}uties, {i}mposts and excises" and "to regulate Commerce with foreign nations."  U.S. Const. art. 1 § 8, cls. 1, 3.  The President's powers over foreign affairs must bend to the will of Congress where the statute limits Presidential action to mandatory time constraints.  See Zivotofsky v. Kerry, 576 U.S. 1, 21 (2015) (explaining that "whether the realm is foreign or domestic, it is still the Legislative Branch, not the Executive

Branch, that makes the law").  Here, Congress amended Section 232 to add strict time limits for Presidential action that the President's authority over foreign affairs cannot overcome.

The Government faults PrimeSource's reliance on the dissent in <u>Gundy</u> as supporting the Supreme Court's interest in revisiting its separation-of-powers jurisprudence because the dissenting justice noted that no separation-of-powers concern may exist "if the wide discretion granted in a statute is to be exercised over matters already within the scope of executive power, such as matters related to 'foreign affairs.'"  Gov.'s Resp. at 18 (quoting <u>Gundy</u>, 139 S. Ct. at 2137 (Gorsuch, J., dissenting)).  The facts in this action are distinguishable from the type of case in <u>Gundy</u> that Justice Gorsuch concluded may not raise separation-of-powers concerns.  In <u>Gundy</u>, Justice Gorsuch referred to <u>Cargo of Brig Aurora v. United States</u>, 11 U.S. 382 (1813) as an example of a situation where no separation-of-powers problems may arise where Congress delegates a matter within the executive's discretion.  <u>See</u> <u>Gundy</u>, 139 S. Ct. at 2137 (Gorsuch, J., dissenting).  The application of the statute prescribed in <u>Cargo of Brig Aurora</u> depended "on executive fact-finding" where "if the President found that either Great Britain or France stopped interfering with American trade, a trade embargo would be imposed against the other country." <u>Gundy</u>, 139 S. Ct. at 2136 (Gorsuch, J., dissenting).  The statute in <u>Cargo of Brig Aurora</u>, therefore, required a factual finding by the executive and then placed substantive limits on executive action. By contrast, although a finding of a threat by the Secretary of Commerce is the type of executive-finding consistent with <u>Cargo of Brig Aurora</u>, Section 232 does not prescribe a limitation on the action that the President may take to adjust imports.  <u>See</u> 19 U.S.C. § 1862(c)(1)(A)(ii).  Against such a wide breadth of authority granted to the President, a higher amount of deference must be shown to the procedural protections in Section 232.  The plain text of the statute is clear and straightforward: the President is empowered to take a trade "action" only if, "{w}ithin 90 days

after receiving a report" from the Secretary of Commerce, he "determines the nature and duration of the action" he proposes to take. 19 U.S.C. § 1862(c)(1)(A)(ii). These procedural protections do not couch the President's authority over foreign affairs but instead are particularly important to maintaining the constitutional order. See Touby v. United States, 500 U.S. 160, 166 (1991) (holding that "procedural requirements," including a time requirement, created a lawful delegation because they "meaningfully constrain{ed} the Attorney General's discretion").

In sum, there is a reasonable probability that the Supreme Court will grant PrimeSource's petition for certiorari and a fair chance (prospect) that the Supreme Court will reverse the judgment of the Federal Circuit. The Federal Circuit's judgment cannot square with the applicable standard of review that requires clear congressional authorization before construing Section 232 in ways that expand the President's delegated authority to act outside of mandatory time-constraints. As now construed, the President may legislate tariffs against goods that were not the subject of any investigation or recommendation by the Secretary, years after the initial investigation, through whatever deliberative process he chooses. There is a fair chance that the Supreme Court will reverse the Federal Circuit's interpretation of the authority granted to the President under Section 232 because it strains the separation-of-powers principles central to the Constitution.

### C.  PUBLIC INTEREST FAVORS GRANTING A PARTIAL STAY THAT WILL NOT SUBSTANTIALLY INJURE THE GOVERNMENT

Importantly, the Government does not address that the public interest favors granting a partial stay that will not substantially injure the Government. See PrimeSource's Mot. at 27-30.[4] Nor could the Government respond as PrimeSource's requested relief simply preserves the status

---

[4] Even under the Government's test concerning granting a motion to stay the mandate, "in close cases . . . the Court will balance the equities and weigh the relative harms to the applicant and to the respondent." American Axle, 977 F.3d at 1380

quo pending appeal with respect to PrimeSource's past entries, with no effect on the Federal Circuit's mandate over the collection of 232 duties on future entries.  CBP has begun to collect cash deposits of Section 232 duties on PrimeSource's imports of steel derivative products.  At most, PrimeSource's requested relief delays PrimeSource's potential payment to the Government of any fully secured duties that PrimeSource may ultimately owe on its past entries.  See id. at 27-28.  Where the Government's interests are fully secured by the bonds put in place by PrimeSource, in cooperation with the Government, the public interest can only favor preserving PrimeSource's right to appellate review seeking the preservation of the separation-of-powers principles that serve as the backbone to the Constitution.

## III.    CONCLUSION

For the reasons set forth above, PrimeSource respectfully requests that this Court grants its motion for a partial stay of the enforcement of judgment pending appeal.

Respectfully submitted,

September 12, 2023                    /s/ Jeffrey S. Grimson

Jeffrey S. Grimson
Kristin H. Mowry
Jill A. Cramer
Sarah M. Wyss
Bryan P. Cenko
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Ste. 810
Washington, DC 20015
jsg@mowrygrimson.com
202-688-3610 (ph)

*Counsel for PrimeSource Building Products, Inc.*

21

**CERTIFICATE OF COMPLIANCE**

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Jeffrey S. Grimson, hereby certify that this response complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures.  Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this response is 6,984 words.

Dated: September 12, 2023

/s/ Jeffrey S. Grimson
Jeffrey S. Grimson
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW
Suite 810
Washington, DC 20015
(202) 688-3610
trade@mowrygrimson.com
*Counsel to PrimeSource Building Products, Inc.*

.